## **EXHIBIT 1**

Approved, SCAO

| Original - Court | |
| 1st Copy- Defendant | 2nd Copy - Plaintiff |
| | 3rd Copy -Return |

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 19-009860-CB Hon.Edward Ewell, Jr. |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226        Court telephone no.: 313-224-5195

| **Plaintiff's name(s), address(es), and telephone no(s)** Bridging Communities, Inc.     et. Al | v | **Defendant's name(s), address(es), and telephone no(s).** Hartford Casualty Insurance Company |
|---|---|---|
| **Plaintiff's attorney, bar no., address, and telephone no** Jason J. Thompson 47184 1 Towne Sq Ste 1700 Southfield, MI 48076-3739 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. Attached is a completed case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.     | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 7/23/2019 | Expiration date* 10/22/2019 | Court clerk Carlita McMiller |
|---|---|---|

                                                  Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (1/19)     **SUMMONS**                           MCR 1.109(D), MCR 2.102(B), MCR 2.104, MCR 2.105



**Exhibit 1 - 000001**

| STATE OF MICHIGAN<br>3rd JUDICIAL CIRCUIT<br>COUNTY OF WAYNE | VERIFICATION OF<br>BUSINESS COURT ELIGIBILITY<br>AND NOTICE OF ASSIGNMENT | CASE NO.<br><br>-CB |
|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

| Bridging Communities, Inc., and Gamble Plumbing & Heating, Inc., individually and as the representative of a class of similarly situated persons as assignees of Top Flight Financial, Inc. | v | Defendant(s)<br>Hartford Casualty Insurance Company |
|---|---|---|

I am the attorney for the [check one] ☒ plaintiff ☐ defendant and per *MCR 2.114(B)(2) and MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O),MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

**[Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)]**

1. **Parties**. This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because,

☑ all of the parties are business enterprises

☐ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships

☑ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances

☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

**AND**

2. **Actions**. This business or commercial action as defined by *MCL 600.8031(2)* involves,

☐ information technology, software, or website development, maintenance, or hosting

☐ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers

☐ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements

☐ commercial transaction, including commercial bank transactions

☑ business or commercial insurance policies

☐ commercial real property

☐ other type of business or commercial dispute (explain):

Date   July 23, 2019

Signature

Jason J. Thompson                    **Exhibit 1 - 000001284**
Name (type or print)                    Bar no.

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

BRIDGING COMMUNITIES, INC. )
and GAMBLE PLUMBING & )
HEATING, INC., individually and )
as the representatives of a class of )
similarly situated persons as ) Case No:            -CB
assignees of TOP FLIGHT ) Hon.
FINANCIAL, INC., )
)
              Plaintiff, )
)
     v. )
)
HARTFORD CASUALTY )
INSURANCE COMPANY, )
)
           Defendant. )

---

SOMMERS SCHWARTZ, P.C.
Jason J. Thompson (P47184)
Attorney for Plaintiff
One Towne Square, 17th Floor
Southfield, MI 48076
Tel. (248) 355-0300
Fax. (248) 746-4001

---

## DECLARATORY JUDGMENT COMPLAINT

This is a business case in which all or part of the action
includes a business or commercial dispute under MCL 600.8035.

NOW COME the Plaintiffs, BRIDGING COMMUNITIES, INC. and

GAMBLE PLUMBING & HEATING, INC. ("Plaintiffs"), by and through their

1

**Exhibit 1 - 000003**

attorneys, and complain of the Defendant, HARTFORD CASUALTY INSURANCE COMPANY ("Hartford"), as follows:

## NATURE OF ACTION

1.      This is an action for declaratory relief pursuant to MCR 2.605.

2.      Plaintiff seeks a declaration by this Court concerning the rights and obligations under the commercial general liability insurance policies issued by Hartford to Top Flite Financial, Inc. ("Top Flite").

## JURISDICTION AND VENUE

3.      Jurisdiction is proper pursuant to Michigan Compiled Laws 600.601 and 600.605 because Defendants reside and transact business in Michigan.

4.      Venue is proper in Wayne County pursuant to Michigan Compiled Laws 600.1621 because Hartford is an insurer that transacts business in Wayne County and because Plaintiffs are Michigan corporations with principal places of business in Wayne County.

## PARTIES

5.      Plaintiff Bridging Communities, Inc. ("Bridging") is a Michigan corporation with principal place of business in Detroit, Michigan.

6.      Plaintiff Gamble Plumbing & Heating, Inc. ("Gamble") is a dissolved Michigan corporation that had a principal place of business in Detroit, Michigan.

**Exhibit 1 - 000004**

7.     On information and belief, Hartford is an Indiana domiciled insurance company with its principal place of business in Hartford, Connecticut, and is authorized to issue insurance policies in the State of Michigan.

## THE UNDERLYING LAWSUIT

8.     On December 22, 2009, Bridging instituted a civil class action captioned "*Bridging Communities, Inc. v. Top Flite Financial Corporation, et al.*," Case No. 09-cv-14444, in the United States District Court for the Eastern District of Michigan (the "Underlying Action"). Gamble filed a separate action that was consolidated with the Underlying Action. The Underlying Complaints are attached as Group Exhibit A.

9.     In the Underlying Action, Plaintiff sought relief on behalf of itself and a class of similarly situated plaintiffs who also received unsolicited faxes from Top Flite.

10.     The Underlying Complaint alleged that Top Flite violated the Telephone Consumer Protection Act ("TCPA") by sending unsolicited faxes to Compressor and hundreds of others.

11.     The Underlying Complaint further alleged that Top Flite knew or should have known that Plaintiffs and the other class members had not given express invitation or permission for Defendant or anybody else to fax advertisements about Defendant's goods or services, that Plaintiff and the other class members did not

3

Exhibit 1 - 000005

have an established business relationship, and that the fax transmitted was an advertisement.

12.     The Underlying Complaint further alleged that Top Flite would be liable even if its actions were only negligent.

13.     Top Flite tendered the defense of the Underlying Action to Hartford, and Hartford disclaimed its duty to defend and refused the tender.

14.     Plaintiffs and Top Flite then litigated the Underlying Action for nine years, including three appeals to the Sixth Circuit Court of Appeals.

15.     Discovery in the Underlying Action revealed that Top Flite caused to be sent two fax broadcasts, one on March 20, 2006 and one on March 30, 2006.

16.     Following arms-length negotiations, the parties to the Underlying Action reached a classwide settlement agreement.

17.     On February 5, 2019, the Court in the Underlying Action entered an Order Preliminarily Approving Class Action Settlement ("Preliminary Approval Order"). The Preliminary Approval Order is attached as Exhibit B.

18.     The Court in the Preliminary Approval Order certified a Class defined as "All persons who owned or used a fax machine to which a facsimile transmission was successfully sent in March 2006 referencing 'Top Flite Financial' and offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number."

4

**Exhibit 1 - 000006**

19.     Pursuant to the Settlement Agreement, Top Flite agreed to assign its rights under the Policies to the Class. Furthermore, plaintiff agreed to seek recovery of the portion of the judgment attributable to the March 20, 2006 faxes only from Hartford.

20.     On May 22, 2019, following a fairness hearing, the Court in the Underlying Action entered a Final Approval Order ("Judgment"). The Judgment is attached as Exhibit C.

21.     The Court in the Underlying Action made the following, specific findings in the Judgment:

(a)     Plaintiffs alleged that the faxes at issue violated the TCPA because they were sent without the prior express invitation or permission of the recipients;

(b)     Extensive discovery and significant litigation and appeals have been incurred by the parties over the faxes;

(c)     The settlement was made by Defendant in reasonable anticipation of potential liability that would arise from a finding that Defendant sent thousands of fax advertisements that violated the TCPA;

(d)     The settlement amount is fair and reasonable because it is within the range of statutory liquidated damages that could be awarded against Defendant for the claims made by Plaintiffs and the Class;

(e)     The settlement was entered into in good faith following arm's length negotiations;

(f)     5,971 facsimiles referencing 'Top Flite Financial' offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove

5

Exhibit 1 - 000007

Hotline' telephone number were sent on March 20, 2006, of which 3,757 were successfully sent;

(g)    2,212 facsimiles referencing 'Top Flite Financial' offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number were sent on March 30, 2006, of which 514 were successfully sent;

(h)    Defendant had no intent to injure anyone in this case including the recipients of the fax advertisements sent on March 20, 2006 and March 30, 2006; and

(i)    Defendant's decision to settle is prudent, taking into account the totality of circumstances.

22.    The Court in the Underlying Action entered Judgment in favor of Plaintiffs and the Class and against Top Flite in the total amount of $2,135,500, calculated as $500.00 for each of the 4,271 successful fax transmissions, allocated as follows: (1) $1,878,500 for the 3,757 faxes successfully sent on March 20, 2006, and (2) $257,000.00 for the 514 faxes successfully sent on March 30, 2006.

23.    Top Flite provided a settlement fund to satisfy the portion of the Judgment allocated to the March 30, 2006 faxes, leaving the $1,878,500 allocated to the March 20, 2006 faxes unsatisfied.

## COMPRESSOR'S HARTFORD POLICIES

24.    Upon information and belief, Hartford issued annual Commercial General Liability Insurance policies numbered 35 SBA PG4092 that provided liability coverage to Top Flite (the "Policies"). Upon information and belief, one such policy had effective dates of March 29, 2005 and March 29, 2006 (the "2005-

**Exhibit 1 - 000008**

06 Policy"). The copy of the 2005-06 Policy produced by Top Flite is attached as Exhibit D.

25.     Upon information and belief, another such policy had effective dates of March 29, 2006 and March 29, 2007 (the "2006-07 Policy").

26.     To the extent that discovery in this action establishes that there are additional policies, or that there are different, or additional, terms in the Policies, Plaintiffs reserve the right to amend its Complaint to reflect the new information or evidence.

## COVERAGE FOR THE CLAIMS IN THE UNDERLYING ACTION

27.     Upon information and belief, the Policies offer coverage for damages because of "property damage" and "personal and advertising injury."

**I.      Property Damage**

28.     Upon information and belief, the Policies offer coverage to Top Flite for its liability for property damage "caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period.

29.     Upon information and belief, the Policies define property damage as "a. Physical injury to or destruction of tangible property, including all resulting use of that property. … or b. Loss of use of tangible property that is not physically injured. …"

**Exhibit 1 - 000009**

30.     Upon information and belief, the Policies define "occurrence" in the context of "property damage" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."

31.     Upon information and belief, the Policies define "coverage territory" as including "a. The United States of America…"

32.     Plaintiffs and the other members of the class received unsolicited faxes from Top Flite during the policy periods of the Policies.

33.     The unsolicited faxes were sent by Top Flite and received by Plaintiffs and the other putative class members within the United States.

34.     The unsolicited faxes Plaintiffs and the other putative class members received physically injured or destroyed their personal property, including but not limited to fax toner and paper.

35.     The unsolicited faxes Plaintiffs and the other putative class members received caused them to lose the use of their personal property, including but not limited to the use of their fax machines during the fax transmissions.

36.     To the extent not sent with a specific intent to wrongfully take possession of Plaintiffs' and other class members' property, or to violate the TCPA, the unsolicited faxes meet the policy definition of "accident"—which, on information and belief, the Policies do not define.

8

**Exhibit 1 - 000010**

## II.    Personal and Advertising Injury

37.    Upon information and belief, the Policies offer coverage to Top Flite for its liability for advertising injury "caused by an offense arising out of your business operations" that "was committed in the 'coverage territory' during the policy period."

38.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 31-33.

39.    Upon information and belief, the Policies define "personal and advertising injury" as including "injury … arising out of … [o]ral, written, or electronic publication of material that violates a person's right of privacy."

40.    Top Flite's transmission of unsolicited faxes arose out of its business.

41.    Top Flite's transmission of unwanted unsolicited faxes to Plaintiff and the other class members constitutes the publication of material that violates Plaintiffs' and the other class members' right of privacy.

42.    For the reasons stated herein, Plaintiffs are entitled to a declaration from this Court that the Policies afford coverage for the damages awarded in the Underlying Action and that Hartford had a duty to defend, and has a duty to indemnify Top Flite for the unsatisfied portion of the Judgment awarded in the Underlying Action.

43.    The contentions of Plaintiffs in Paragraph 42 are, on information and belief, denied by Hartford who, in turn, contends that Top Flite was not entitled to

9

Exhibit 1 - 000011

defense and is not entitled to indemnity under the Policies in the Underlying Action. Plaintiff, in turn, denies the contrary contentions of Hartford and each of them.

44.     By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or Order of this Court. This Court has the power to declare and adjudicate the rights and liabilities of the parties.

WHEREFORE, Plaintiffs, Bridging Communities, Inc. and Gamble Plumbing & Heating, Inc., individually and as the representatives of a certified class, pray that this Court enter an order as follows:

A.     Declaring that the Policy required Hartford to defend Top Flite in the Underlying Action;

B.     Declaring that the Policy requires Hartford to indemnify Top Flite for the unsatisfied portion of the Judgment entered against it in the Underlying Action, including post judgment interest; and

C.     Awarding Plaintiffs, individually and on behalf of the class, their costs and such further relief as the Court deems appropriate.

Exhibit 1 - 000012

SOMMERS SCHWARTZ, P.C.

By:    *s/Jason J. Thompson*
Jason J. Thompson (P47184)
Attorneys for Plaintiff
One Towne Square, 17th Fl.
Southfield, Michigan 48076
Tel. (248) 355-0300
Fax. (248) 746-4001
jthompson@sommerspc.com

Jeffrey A. Berman                          Phillip A. Bock
ANDERSON + WANCA                           David M. Oppenheim
3701 Algonquin Road, Suite 760             BOCK, HATCH, LEWIS &
Rolling Meadows, IL 60008                  OPPENHEIM LLC
Telephone: 847/368-1500                    134 N. LaSalle Street, Suite 1000
                                           Chicago, IL 60602
                                           Telephone: 312/658-5500

11

Exhibit 1 - 000013

# Exhibit A

Exhibit 1 - 000014

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

BRIDGING COMMUNITIES, INC., a )
Michigan corporation, individually and as the )
representative of a class of similarly situated )
persons, )
                 )
               Plaintiff, )  No.
                 )
       v. )
                 )
TOP FLITE FINANCIAL, INC., )
                 )
           Defendant. )

## CLASS ACTION COMPLAINT

Plaintiff, BRIDGING COMMUNITIES, INC., a Michigan not profit corporation (herein "Plaintiff"), brings this action on behalf of itself and all other persons similarly situated, through its attorneys, and except as to those allegations that pertain to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant, TOP FLITE FINANCIAL, INC., (herein "Defendant").

## PRELIMINARY STATEMENT

1.     This case challenges Defendant's policy and practice of faxing unsolicited advertisements.

2.     The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits a person or entity within the United States from sending or having an agent send unsolicited faxed advertisements. The TCPA provides a private right of action for violations and provides statutory damages of $500.00 per violation.

3.     Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax also causes the recipient to waste valuable time it

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

**Exhibit 1 - 000015**

would have spent on something else. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipient fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4.      On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5.      Plaintiff seeks an award of statutory damages for each violation of the TCPA.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7.      Venue in this district is proper because Defendant does business here and a significant portion of the events took place here.

**PARTIES**

8.      Plaintiff, BRIDGING COMMUNITIES, INC., is a Michigan non profit corporation which does business within this judicial district.

9.      On information and belief, Defendant, TOP FLITE FINANCIAL, INC., is a Michigan corporation which has its principal place of business in Williamston, Michigan.

**FACTS**

10.      On or about March 20, 2006, Defendant sent by telephone facsimile machine an unsolicited advertisement to Plaintiff's facsimile machine. A copy of the facsimiles are attached hereto and marked as Exhibit A.

**Exhibit 1 - 000016**

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

11.     Defendant did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine.

12.     On information and belief, Defendant has sent similar unsolicited facsimile advertisements to at least 39 other recipients.

13.     There is no reasonable means for Plaintiff (or any other class member) to avoid receiving illegal faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

14.     In accordance with Fed. R. Civ. P. 23, Plaintiff brings this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons that are holders of telephone numbers to which a facsimile transmission was sent on behalf of Defendant advertising or promoting the goods or services of Defendant at any time between four years prior to the date of filing of this suit to and including the present (the "Class Period").

Excluded from the Class are Defendant, its officers, directors, employees, agents, and members of the Judiciary.

15.     Commonality [Fed. R. Civ. P. 23(A)(2)]. Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include but are not limited to the following:

    (a)     Whether Defendant sent unsolicited fax advertisements;

    (b)     Whether Defendant's facsimiles advertised the commercial availability of property, goods or services;

    (c)     The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other unsolicited faxed advertisements;

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

3

**Exhibit 1 - 000017**

(d)     Whether Defendant faxed advertisements without first obtaining the recipients' prior express permission or invitation;

(e)     Whether Defendant sent the faxed advertisements knowingly;

(f)     Whether Defendant violated the provisions of 47 U.S.C. § 227;

(g)     Whether Plaintiff and the other members of the class are entitled to statutory damages; and

(h)     Whether the Court should award treble damages.

16.     Typicality [Fed. R. Civ. P. 23(a)(3)]. Plaintiff's claims are typical of the claims of all class members. Plaintiff received a facsimile sent on behalf of Defendant advertising goods and services of Defendant during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based on the same federal statute. Defendant has acted the same or in a similar manner with respect to Plaintiff and all the class members.

17.     Fair and Adequate Representation [Fed. R. Civ. P. 23(a)(4)]. Plaintiff will fairly and adequately represent and protect the interest of the class. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

18.     Need for Consistent Standards and Practical Effect of Adjudication [Fed. R. Civ. P. 23 (b)(1)]. Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for Defendant, and/or (b) as a practical matter, adjudication of Plaintiff's claims will be dispositive of the interests of class members who are not parties.

19.     Common Conduct [Fed. R. Civ. P. 23 (b)(2)]. Class certification is also appropriate because Defendant has acted and refused to act in the same or similar manner with respect to all class

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

4

Exhibit 1 - 000018

members thereby making injunctive and declaratory relief appropriate. Plaintiff demands such relief as authorized by 47 U.S.C. § 227.

20. <u>Predominance and Superiority [Fed. R. Civ. P. 23(b)(3)]</u>. Common questions of law and fact predominate and a class action is superior to other methods of adjudication.

(a) Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Defendant may assert and prove will come form Defendant's records and will not require individualized or separate inquires or proceedings;

(c) Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d) The amount likely to be recovered by individual class members does not support protested individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based on common proofs;

(e) This case is inherently managed as a class action in that:

(i) Defendant identified persons or entities to receive the fax transmissions, and it is believed that Defendant's computer and business records will enable Plaintiff to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248)355-0300

5

**Exhibit 1 - 000019**

(iv)     A class action will result in an orderly and expeditious administration of claims, and it will foster economics of time, effort and expense;

(v)     A class action will contribute to uniformity of decisions concerning Defendant's practices;

(vi)     As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

21.     The TCPA makes unlawful the "use of any telephone facsimile machine,     computer or other device to send an unsolicited advertisement to a telephone facsimile machine ...." 47 U.S.C. § 227(b)(1).

22.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

23.     The TCPA provides:

> 3. <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C)     Both such actions.

24.     The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members even if its actions were only negligent.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

6

**Exhibit 1 - 000020**

25.     Defendant knew or should have known that (a) Plaintiff and the other class members had not given express invitation or permission for Defendant or anybody else to fax advertisements about Defendant's goods or services, (b) that Plaintiff and the other class members did not have an established business relationship, and (c) that Exhibit A is an advertisement.

26.     Defendant's actions caused damages to Plaintiff and the other class members. Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, Defendant's faxes used Plaintiff's fax machine. Defendant's faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendant's illegal faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendant's faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

27.     Defendant violated 47 U.S.C. § 227 et seq. by transmitting Exhibit A hereto to Plaintiff and the other members of the class without obtaining their prior express permission or invitation.

WHEREFORE, Plaintiff, BRIDGING COMMUNITIES, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, TOP FLITE FINANCIAL, INC., as follows:

A.     That the court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the court award actual monetary loss from such violations or the sum of $500.00 in damages for each violation whichever is greater; and

C.     The court enjoin Defendant from additional violations; and

D.     That the court award costs and such further relief as the court may deem just and proper.

**Exhibit 1 - 000021**

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

BRIDGING COMMUNITIES, INC., individually and as the representative of a class of similarly-situated persons

/s/ Jason J. Thompson (P47184)
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: 248-355-0300
Fax: 248-436-8453
jthompson@sommerspc.com

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501

Phillip A. Bock
BOCK & HATCH, LLC
134 N. La Salle St., Suite 1000
Chicago, IL 60602
Telephone: 312-658-5500
Fax: 312-658-5555

Attorneys for Plaintiff

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

Exhibit 1 - 000022

**EXHIBIT A**
Exhibit 1 - 000023



MY DEAR, WORRYING ABOUT **GETTING A MORTGAGE** IS RUINING OUR PERFECT EVENING!

SIR, PERHAPS YOU SHOULD TRY THE BEST FINANCE COMPANY IN AMERICA !! **TOP FLITE FINANCIAL !!!**

MAYBE I SHOULD HAVE MARRIED THE WAITER?

# Top Flite Financial
## www.teamtopflite.com/residualwealth

# *Mortgages*
# *Purchases / ReFinancing*

## **0 Down, 0 Closing Costs !**
### (some restrictions apply)



★ *Low Cost !!*
★ *Fast Closings !!*
★ *Honest People !!!*





EQUAL HOUSING **LENDER**

### Call Toll Free
# (800) 570-3782, Ext 8830


**BBB**

_____ The above sponsor is not affiliated with, nor endorsed by, any charitable organization _____

### Please Contribute to Reputable American Charities Dedicated to Helping Hurricane Victims

This is a charitable message. We will send faxes only to parties who wish to receive them. If you, or someone acting in your behalf, did not request or allow us, our agents, our customers, or our sponsors, to send faxes to this number, we sent this message in error, and we apologize. To STOP charitable or other faxes, call the "Remove" Hotline (below). To continue to receive, do NOT call the Remove Hotline. This message is the exclusive property of Macaw, SRL, 46 Match Factory St, Sec 5, Buc, Rom, 050183, 40723294564, which is solely responsible for its contents and destinations. Date and time stamp are at the top of this page.

**"Remove" Hotline (800) 991- 9484, ext 399, or (718) 360-0971, ext 283.**
**Complaint Hotline (718) 360-1330, ext 232**

TopFlite3.000024

# Exhibit B

Exhibit 1 - 000025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIDGING COMMUNITIES, INC.,
And GAMBLE PLUMBING &
HEATING INC., individually and as                    Case No. 09-14971
similarly situated persons,
          Plaintiffs,

v.

TOP FLITE FINANCIAL, INC.,                           HON. AVERN COHN
          Defendant.
_____/

## **ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

This matter is before the Court on the parties' Agreed Motion for

Preliminary Approval of Class Action Settlement and Notice to the Class (the "Joint

Motion"). After review and consideration of the Settlement Agreement, and after

hearing statements of the parties' attorneys on February 05, 2019, and having been

fully advised in the premises, IT IS ORDERED:

1. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in light of the

factual, legal, practical, and procedural considerations raised by this case, the

settlement of this action, as embodied in the terms of the Settlement Agreement

attached to the Joint Motion, is preliminarily approved as a fair, reasonable, and

adequate settlement of the case in the best interests of the Settlement Class. The

Settlement Agreement is incorporated by reference into this Order (with capitalized

terms as set forth in the Settlement Agreement) and is preliminarily adopted as an

Order of the Court.

**Exhibit 1 - 000026**

2. Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, by stipulation of the parties, and for the purpose of settlement, the Court certifies the following class (Settlement Class):

> All persons who owned or used a fax machine to which a facsimile transmission was successfully sent in March 2006 referencing 'Top Flite Financial' and offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number.

Excluded from the class are Top Flite Financial, Inc., any of its parents, subsidiaries, affiliates or controlled persons, and its officers, directors, partners, members, agents, servants, and employees of any kind, the immediate family members of such persons, and the Court and its employees and staff.

3. The Court finds that certification for purposes of settlement is appropriate because: (a) the class is so numerous that joinder of all members is impractical; (b) there are questions of law and fact common to the class and they predominate over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the claims of the class; (d) Plaintiff and its attorneys will fairly and adequately protect the interests of the class; and (e) a class action is the superior means of resolving this controversy.

4. The Court appoints Bridging Communities, Inc. and Gamble Plumbing & Heating, Inc. as the representatives of the Settlement Class pursuant to Rule 23(a), and appoints attorneys Jason J. Thompson of Sommers Schwartz, P.C., Phillip A. Bock of Bock & Hatch, LLC, and Brian J. Wanca of Anderson + Wanca as class counsel pursuant to Rule 23(g).

**Exhibit 1 - 000027**

5. The Court finds that the Settlement Agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23(e)(1) of the Federal Rules of Civil Procedure. The plan is approved and adopted. This Court further finds that the Class Notice (attached to the Settlement Agreement as Exhibit 2), and the Claim Form included as part of the Class Notice, comply with Rule 23(e)(1) of the Federal Rules of Civil Procedure, are appropriate as part of the notice plan, and are approved and adopted. The Court orders that the parties notify the Class as proposed.

6. The Court appoints "ClassSettlment.com" as the Settlement Administrator. The Settlement Administrator will issue and administer the Class Notice, assist the class members in completing Claim Forms, receive the Claim Forms by facsimile, by U.S. mail, and electronically through the settlement website, track and provide notice to the Parties for any individual or entity opting out of the Settlement Class, and provide a list to counsel for the parties of approved and rejected claims and the total to be paid to each claimant.

The Settlement Administrator shall send the Class Notice by facsimile to each of the telephone fax numbers, and by U.S. Mail to each of the names and addresses (after updating with the National Change of Address Database), identified in the exhibit to the Declaration of Robert Biggerstaff filed October 15, 2012 (Doc. 47-4). The Class Notice and Claim Form shall also be made available on the claim administrator's website. The Court finds and orders that no other notice is necessary.

Exhibit 1 - 000028

6. The Court sets deadlines and dates for the acts and events set forth in the Settlement Agreement and directs the Parties to incorporate the following deadlines and dates in the Class Notice:

(a) Defendants shall file proof of compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), no later than February 20, 2019;

(b) A request by any class member to opt out of the settlement must be submitted on or before April 20, 2019, or be forever barred;

(c) Objections and motions to intervene (including supporting memoranda) shall be filed with the Court and postmarked and served on class counsel and Defendant's counsel on or before April 20, 2019, or be forever barred; and

(d) The Fairness Hearing, identified in the Class Notice, is scheduled for May 21, 2019, at 11:00 a.m. in Room 218.

SO ORDERED

_s/Avern Cohn_____
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 2/5/2019
Detroit, Michigan

**Exhibit 1 - 000029**

# Exhibit C

Exhibit 1 - 000030

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BRIDGING COMMUNITIES, INC. )
and GAMBLE PLUMBING & )
HEATING, INC., individually and as )
the representatives of a class of )
similarly situated persons, )          No. 09-CV-14971
)
        Plaintiffs, )
)
    v. )
)
TOP FLITE FINANCIAL, INC. )
)
        Defendant. )

## FINAL APPROVAL ORDER

The matter coming before the Court on the request for final approval of the class action settlement by plaintiffs, Bridging Communities, Inc. and Gamble Plumbing & Heating, Inc. ("Plaintiffs"), and defendant Top Flite Financial, Inc. ("Defendant"), due notice given, the parties appearing through counsel, and the Court being fully advised in the premises, **IT IS HEREBY ORDERED**:

1.    This Court has jurisdiction over the parties, the members of the Settlement Class, and the claims asserted in this lawsuit.

2.    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the settlement of this action, as embodied in the terms of the Settlement Agreement, is hereby finally approved as a fair, reasonable, and adequate settlement, in the best interests of the Settlement Class, and in light of the factual, legal, practical and procedural considerations raised by this case.

**Exhibit 1 - 000031**

3.     The Settlement Class is defined as follows: "All persons who owned or used a fax machine to which a facsimile transmission was successfully sent in March 2006 referencing 'Top Flite Financial' and offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number." Excluded from the Settlement Class are Top Flite Financial, Inc., any of its parents, subsidiaries, affiliates or controlled persons, and its officers, directors, partners, members, agents, servants, and employees of any kind, the immediate family members of such persons, and the Court and its employees and staff.

4.     Upon the Declaration of Dorothy Sue Merryman, the Court finds that the notice provided to the Settlement Class Members was the best notice practicable under the circumstances and it satisfied the requirements of due process and Federal Rule 23(e)(1).

5.     Upon the Affidavit of C. Thomas Ludden, the Court finds that notice has been given to the appropriate State and Federal officials in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715.

6.     No objections were received.

7.     No persons validly requested exclusion from the Settlement Class and the settlement.

8.     After due consideration of, among other things, the uncertainty about the likelihood of: (a) the Class's ultimate success on the merits; (b) the range of the Class's possible recovery; (c) the complexity, expense and duration of the litigation; (d) the substance and amount of opposition to the settlement; (e) the state of

2

**Exhibit 1 - 000032**

proceedings at which the settlement was achieved; (f) all written submissions, declarations and arguments of counsel; and (g) after notice and hearing, this Court finds that the settlement is fair, adequate and reasonable. This Court also finds that the financial settlement terms fall within the range of settlement terms that would be considered fair, adequate and reasonable. Accordingly, this Settlement Agreement should be and is APPROVED and shall govern all issues regarding the settlement and all rights of the Parties, including the Class Members. Each Class Member (including any person or entity claiming by or through him, her or it, but except those persons identified above who have previously excluded themselves from the Settlement Class) shall be bound by the Settlement Agreement, including being subject to the Releases set forth in the Settlement Agreement, if applicable to them.

9.      The Court hereby finds that the Agreement is the result of good faith, arm's-length negotiations by the parties thereto, and that it will further the interests of justice. The Settlement Agreement is hereby incorporated into and adopted as part of this Order.

10.     Additionally, based upon the evidence in the record and statements made in open court, the Court finds as follows:

(a)     Plaintiffs alleged that the faxes at issue violated the TCPA because they were sent without the prior express invitation or permission of the recipients;

(b)     Extensive discovery and significant litigation and appeals have been incurred by the parties over the faxes;

(c)     The settlement was made by Defendant in reasonable anticipation of potential liability that would arise from a finding that Defendant sent thousands of fax advertisements that violated the TCPA;

3

**Exhibit 1 - 000033**

(d)    The settlement amount is fair and reasonable because it is within the range of statutory liquidated damages that could be awarded against Defendant for the claims made by Plaintiffs and the Class;

(e)    The settlement was entered into in good faith following arm's-length negotiations;

(f)    5,971 facsimiles referencing 'Top Flite Financial' offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number were sent on March 20, 2006, of which 3,757 were successfully sent;

(g)    2,212 facsimiles referencing 'Top Flite Financial' offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number were sent on March 20, 2006, of which 514 were successfully sent;

(h)    Defendant had no intent to injure anyone in this case including the recipients of the fax advertisements sent on March 20, 2006 and March 30, 2006; and

(i)    Defendant's decision to settle is prudent, taking into account the totality of circumstances.

11.    The Court enters judgment against Defendant in favor of the Settlement Class in the total amount of $2,135,500, calculated as $500.00 for each of the 4,271 successful fax transmissions identified in the Report of Robert Biggerstaff, allocated as follows: (1) $1,878,500 for the 3,757 faxes successfully sent on March 20, 2006, and (2) $257,000.00 for the 514 faxes successfully sent on March 30, 2006.

12.    Defendant has created a settlement fund (the "Settlement Fund") of $257,000.00 in satisfaction of the portion of the judgment allocated to the March 30, 2006 faxes. The Settlement Fund shall be used to pay valid non-duplicative class member claims, class action settlement administration costs, attorney's fees, costs,

Exhibit 1 - 000034

and expenses, and an incentive award to Plaintiffs as determined and awarded by this Court. Unclaimed monies in the Settlement Fund shall revert to Defendant.

13.    As agreed in and subject to the Settlement Agreement, each member of the Settlement Class who received one or more faxes on March 30, 2006, according to the records in the case, and who submits a timely and valid non-duplicative Claim Form will be mailed a check not to exceed $500 for each fax they were sent from the Settlement Fund. The Settlement Administrator shall advise counsel for Plaintiffs and Defendant of the total amount for the valid non-duplicative claims. Defendant will release that amount to the Settlement Administrator from the Settlement Funds and the Settlement Administrator will cause those checks to be mailed after receiving the Settlement Funds. Checks issued to the claiming Settlement Class members will be void 181 days after issuance, and any balance will revert to Defendant. The Settlement Administrator shall issue the check made out to Defendant for the total amount of void checks within 21 business days of the expiration of the 181 day period.

14.    As agreed between the parties, the Court approves Class Counsel's request for attorneys' fees in the total amount of $85,666.67 plus out-of-pocket expenses in the amount of $38,333.33. Those amounts shall be paid from the Settlement Fund when the Final Judgment and Order becomes final as those terms are defined in the Settlement Agreement. Class Counsel may recover additional attorney's fees of one-third of any future recovery on the remaining portion of the Judgment plus expenses not compensated from the Settlement Fund.

15.    As agreed between the parties, the Court approves a $7,500 incentive award to Bridging Communities, Inc. and $5,000 to Gamble Plumbing & Heating,

**Exhibit 1 - 000035**

Inc. for serving as the Class Representatives. In accordance with the Settlement Agreement, those amounts shall be paid from the Settlement Fund when the Final Judgment and Order become final as those terms are defined in the Settlement Agreement. Plaintiffs may apply for additional incentive awards should further litigation result in collection of the remaining portion of the Judgment.

16.     The remaining portion of the Judgment allocated to the March 20, 2006 faxes shall be satisfied only through the proceeds of Defendant's insurance policies. Each Settlement Class member who received a fax on March 20, 2006 according to the records in the case who does not exclude himself will be sent a *pro rata* share of the amount recovered on this portion of the Judgment, after the deductions approved herein. Such payments will be made by checks void 181 days after issuance. Any funds received from Defendant's insurer(s) remaining after payment of all class administration costs, the incentive awards to Plaintiffs, the attorney's fees and costs to Plaintiffs' attorneys, and all payments to the Settlement Class members, shall be paid as a *cy pres* award to a charity or charities approved by this Court at the request of Plaintiffs' attorneys

17.     The Court expressly adopts and incorporates herein all the terms of the Settlement Agreement. The Parties shall carry out their respective obligations under that Agreement.

18.     On entry of this Final Order, Plaintiffs and any Settlement Class member who did not opt out will be forever barred and permanently enjoined from directly, indirectly, representatively or in any other capacity, filing, commencing, prosecuting, continuing, intervening in, participating in as class members or

6

**Exhibit 1 - 000036**

otherwise, or receiving any benefits or other relief from any other lawsuit, any other arbitration, or any other administrative, regulatory, or other proceeding against Defendant and/or any of its parents, subsidiaries, divisions, affiliates, officers, directors, shareholders, partners, members, agents, servants and employees (but not Hartford) of any kind, in any jurisdiction based on or relating in any way whatsoever to the claims and causes of action, or the facts or circumstances relating thereto, in or underlying the Action or the settled claims as defined in the Agreement; and all persons shall be forever barred and permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action against Defendant or its parents, subsidiaries, divisions, affiliates, officers, directors, shareholders, agents, servants, partners, members, and employees of any kind (but not Hartford) (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Settlement Class Members who have not timely excluded themselves from the Settlement Class if such other lawsuit is based on or related to the claims and causes of action or the facts and circumstances relating thereto, in this Action or the settled claims.

19.    Plaintiffs and each Settlement Class Member, and their heirs, executors, administrators, representatives, agents, successors and assigns, and any and all other Persons claiming through or by virtue of them, have covenanted with Defendant and its officers, directors, shareholders and employees not to execute on the Judgment against Defendant, or any of its past or present officers, stockholders, directors, employees of any kind, partners, members, agents, servants, parents, affiliates, subsidiaries or divisions, or any other successors, assigns or legal

7

Exhibit 1 - 000037

representatives thereof, but rather have agreed to pursue collection of the portion of the Judgment allocated to the March 20, 2006 faxes solely against Defendant's insurance policies and Defendant's insurer only. This provision does not release the judgment against Defendant to be entered herein, or the right to enforce the judgment in favor of the Plaintiffs and the Settlement Class against Defendant's insurer only.

20. All claims or causes of action of any kind by any Settlement Class member who received a March 30, 2006 fax or anyone claiming by or through him, her or it brought in this Court or any other forum (other than those by persons who have opted out of this action) are barred pursuant to the Releases set forth in the Settlement Agreement. All persons and entities are enjoined from asserting any claims that are being settled or released herein, either directly or indirectly, against Defendant or its Insurer, in this Court or any other court or forum.

21. The terms of the Agreement and of this Order and the accompanying Final Judgment shall be forever binding on Plaintiffs and all other Settlement Class Members, as well as their heirs, executors and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other proceedings involve settled Claims.

22. If (a) the Settlement Agreement is terminated pursuant to its terms, or (b) the Settlement Agreement or Final Approval Order and Judgment do not for any reason become effective, or (c) the Settlement Agreement or Final Approval Order and Judgment are reversed, vacated or modified in any material or substantive

8

Exhibit 1 - 000038

respect, then any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated. If the settlement does not become final in accordance with the terms of the Settlement Agreement, this Final Approval Order and Judgment shall be void and be deemed vacated.

23. The Court retains jurisdiction for 180 days over this action, Plaintiffs and all members of the Settlement Class, and Defendant, to determine all matters relating in any way to this Final Judgment and Order, the Preliminary Approval Order, or the Settlement Agreement, including but not limited to, their administration, implementation, interpretation or enforcement. The Court further retains jurisdiction to enforce this Order.

24. The Court finds that there is no just reason to delay the enforcement of this Final Approval Order and Judgment.

25. Post-judgment interest shall accrue on the unpaid portion of the Judgment amount attributable to the March 20, 2006 faxes from the date of entry of this Judgment Order.

BY ORDER OF THE COURT

Dated: 5/22/2019        s/Avern Cohn
                        Honorable Judge Avern Cohn

9

Exhibit 1 - 000039

# Exhibit D

Exhibit 1 - 000040

```
THE HARTFORD - PRODUCTION STATUS CENTER
HARTFORD PLAZA,  NP-6-1
HARTFORD, CT  06115
```

```
35 SBA PG4092

THE HARTFORD - SELECT CUSTOMER AGENCY

8711 UNIVERSITY EAST DRIVE

CHARLOTTE                    NC 28213
```

**Exhibit 1 - 000041**



REGIONAL OFFICE INSTRUCTION SHEET

POLICY NUMBER: 35 SBA PG4092  SA

ROUTING INSTRUCTIONS

_SEND TO PSU FOR COMPLETION OF PC-110 - UMBRELLA COVERAGE

_SEND TO RECORDS.  TRANSFER CORR IF APPLICABLE.

Exhibit 1 - 000042

POLICY FACE SHEET

92
40 INSURED:
PG HARTFORD CASUALTY INSURANCE COMPANY
SBA

    POLICY NO. 35 SBA PG4092 SA       RECORDS RETENTION - PERMANENT

DECLARATIONS
ITEMS
1. NAMED INSURED AND             TOP FLITE FINANCIAL, INC.
   MAILING ADDRESS:          123 E. GRAND RIVER
                           WILLIAMSTON, INGHAM
                           MI. 48895

2. POLICY PERIOD:          03/29/05   03/29/06   1
                           INCEPTION  EXPIRATION  YEAR

   AGENT'S CODE: 351668
   AGENT'S NAME: KOROTKIN INSURANCE GROUP

   PREVIOUS POLICY NO.   NEW

3. THE NAMED INSURED IS: CORP

   POLICY STATUS: ACTIVE
   LOB LEVEL OF SUPPORT: SP-S
   MARKET SEGMENTATION:  830
   AGENCY CUSTOMER ID: TOPFL-3

   SELECT CUSTOMER
   DIRECT ACCOUNT BILL NUMBER - 11307081
   DEDUCTIBLE

                           AUTOMATICALLY BOOKED

05834

*0100035PG40920101

TRANS TYPE: NB    CNTL#: 001
POLICY FACE SHEET  TERMINAL ID: R022R89S  PAGE  2
         04/04/05   35 SBA PG4092  SA  (03/29/06)

**Exhibit 1 - 000043**



*SBAPG4092-35200612/31/9999*



*TOP FLITE FINANCIAL, INC.          *



*                              *

**Exhibit 1 - 000044**

92
40
PG
SBA

This **Spectrum Policy** consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the insurance company of The Hartford Insurance Group shown below.

**INSURER:**    HARTFORD CASUALTY INSURANCE COMPANY
          HARTFORD PLAZA, HARTFORD, CT 06115
COMPANY CODE: 3

**Policy Number:**  35 SBA PG4092  SA

## SPECTRUM POLICY DECLARATIONS          COPY

**Named Insured and Mailing Address:**      TOP FLITE FINANCIAL, INC.
(No., Street, Town, State, Zip Code)

123 E. GRAND RIVER
WILLIAMSTON      MI  48895

**Policy Period:**          **From**    03/29/05    **To**    03/29/06    1    YEAR
12:01 a.m., Standard time at your mailing address shown above. **Exception:** 12 noon in Maine, Michigan, New Hampshire, North Carolina.

**Name of Agent/Broker:** KOROTKIN INSURANCE GROUP
**Code:**  351668

**Previous Policy Number:**    NEW

**Named Insured is:** CORPORATION

**Audit Period:** NON-AUDITABLE

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

---

**TOTAL ANNUAL PREMIUM IS:**          $2,436
IN RECOGNITION OF THE MULTIPLE COVERAGES INSURED WITH THE HARTFORD, YOUR POLICY PREMIUM INCLUDES AN ACCOUNT CREDIT.

Countersigned by _____
                 Authorized Representative          Date

**Form SS 00 02 11 93 T**  Printed in U.S.A. (NS)        **Page** 001 (CONTINUED Exhibit 1 PAGE 000045
**Process Date:** 04/04/05                                **Policy Expiration Date:** 03/29/06

UW COPY

## SPECTRUM POLICY DECLARATIONS   (Continued)
**POLICY NUMBER:** 35 SBA PG4092

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 001      **Building:** 001

123 E. GRAND RIVER
WILLIAMSTON        MI   48895

**Description of Business:**
MORTGAGE BROKER

**Deductible:** $  500 PER OCCURRENCE

**BUILDING AND BUSINESS PERSONAL PROPERTY**      **LIMITS OF INSURANCE**

**BUILDING**

REPLACEMENT COST                                $    425,000

**BUSINESS PERSONAL PROPERTY**

**REPLACEMENT COST**                            $    100,000

**PERSONAL PROPERTY OF OTHERS**

**REPLACEMENT COST**                            NO COVERAGE

MONEY AND SECURITIES

INSIDE THE PREMISES                             $    10,000
OUTSIDE THE PREMISES                            $     5,000

Exhibit 1 - 000046

## SPECTRUM POLICY DECLARATIONS  (Continued)
**POLICY NUMBER:** 35 SBA PG4092

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 001        **Building:** 001

**PROPERTY OPTIONAL COVERAGES APPLICABLE          LIMITS OF INSURANCE
        TO THIS LOCATION**

BUILDING STRETCH
FORM: SS 04 52
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

STRETCH PLUS FOR BUSINESS SERVICES
FORM: SS 40 05
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

LIMITED FUNGI, BACTERIA OR VIRUS          $   50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA
EXPENSE COVERAGE FOR:                     30 DAYS

05836

*010035PG40920101

Exhibit 1-A-000047

## SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** 35 SBA PG4092

**PROPERTY OPTIONAL COVERAGES APPLICABLE TO ALL LOCATIONS**       **LIMITS OF INSURANCE**

BUSINESS INCOME AND EXTRA EXPENSE
COVERAGE                                   12 MONTHS ACTUAL LOSS SUSTAINED
COVERAGE INCLUDES THE FOLLOWING
COVERAGE EXTENSIONS:

ACTION OF CIVIL AUTHORITY:                 30 DAYS
EXTENDED BUSINESS INCOME:                  30 CONSECUTIVE DAYS


EQUIPMENT BREAKDOWN COVERAGE
 COVERAGE FOR DIRECT PHYSICAL LOSS
 DUE TO:
  MECHANICAL BREAKDOWN,
  ARTIFICIALLY GENERATED CURRENT
  AND STEAM EXPLOSION

THIS ADDITIONAL COVERAGE INCLUDES
THE FOLLOWING EXTENSIONS
  HAZARDOUS SUBSTANCES                     $   25,000
  CFC REFRIGERANTS                         $   25,000

MECHANICAL BREAKDOWN COVERAGE ONLY
APPLIES WHEN BUILDING OR BUSINESS
PERSONAL PROPERTY IS SELECTED ON
THE POLICY

Exhibit 1 - 000048

# SPECTRUM POLICY DECLARATIONS  (Continued)

**POLICY NUMBER:** 35 SBA PG4092

| BUSINESS LIABILITY | LIMITS OF INSURANCE |
|---|---|
| **LIABILITY AND MEDICAL EXPENSES** | $2,000,000 |
| **MEDICAL EXPENSES - ANY ONE PERSON** | $    10,000 |
| **PERSONAL AND ADVERTISING INJURY** | $2,000,000 |
| **DAMAGES TO PREMISES RENTED TO YOU**<br>   **ANY ONE PREMISES** | $   300,000 |
| **AGGREGATE LIMITS**<br>   **PRODUCTS-COMPLETED OPERATIONS** | $4,000,000 |
| **GENERAL AGGREGATE** | $4,000,000 |

**EMPLOYMENT PRACTICES LIABILITY**
**COVERAGE:** FORM SS 09 01

| | |
|---|---|
| **EACH CLAIM LIMIT** | $     5,000 |
| **DEDUCTIBLE - EACH CLAIM LIMIT**<br>   NOT APPLICABLE | |
| **AGGREGATE LIMIT** | $     5,000 |

**RETROACTIVE DATE:** 03292005

This **Employment Practices Liability Coverage** contains claims made coverage.  Except as may be otherwise provided herein, specified coverages of this insurance are limited generally to liability for injuries for which claims are first made against the insured while the insurance is in force.  Please read and review the insurance carefully and discuss the coverage with your Hartford Agent or Broker.

The Limits of Insurance stated in this Declarations will be reduced, and may be completely exhausted, by the payment of "defense expense" and, in such event, The Company will not be obligated to pay any further "defense expense" or sums which the insured is or may become legally obligated to pay as "damages".

LIMITATION OF COVERAGE TO THE
DESIGNATED PREMISES OR PROJECT
FORM SS 05 62
LIMITATION APPLIES TO THE FOLLOWING
LOCATION: 001  BUILDING: 001

BUSINESS LIABILITY OPTIONAL
COVERAGES

| | |
|---|---|
| HIRED/NON-OWNED  AUTO LIABILITY<br>FORM:  SS 04 38 | $2,000,000 |

UMBRELLA LIABILITY - SEE
SCHEDULE ATTACHED

---

**Form SS 00 02 11 93 T** Printed in U.S.A. (NS)

**Process Date:**  04/04/05

**Exhibit 1 – 000049**

**Policy Expiration Date:** 03/29/06

*0100035PG40920101*    05837

**SPECTRUM POLICY DECLARATIONS** **(Continued)**
**POLICY NUMBER:** 35 SBA PG4092

**Form Numbers of Forms and Endorsements that apply:**

```
SS 00 01 04 93    SS 00 05 06 96    SS 00 07 10 02    SS 00 08 04 01
SS 84 31 03 00    SS 84 32 03 00    SS 01 31 07 01    SS 04 15 10 02
SS 04 19 06 96    SS 04 30 03 00    SS 04 38 06 01    SS 04 39 10 02
SS 04 41 04 01    SS 04 42 03 00    SS 04 44 09 93    SS 04 45 10 96
SS 04 46 10 02    SS 04 47 10 02    SS 04 52 09 01    SS 04 78 04 01
SS 04 80 03 00    SS 04 86 03 00    IH 10 01 09 86    SS 05 03 03 00
SS 05 12 03 92    SS 05 47 09 01    SS 05 48 03 00    SS 05 62 03 00
SS 09 01 09 00    SS 09 09 06 01    SS 09 42 07 99    SS 10 02 03 97
SS 12 03 03 92    SS 40 05 09 01    SS 40 18 03 00    SS 40 93 10 02
SS 50 19 06 03    SS 50 30 06 03    SX 80 01 06 97    SS 83 76 06 03
G-3316-1
```

**Process Date:** 04/04/05

**Exhibit 1 – 000050**

**Policy Expiration Date:** 03/29/06

**Insurer:**  HARTFORD CASUALTY INSURANCE COMPANY
HARTFORD PLAZA, HARTFORD, CT 06115

This Declarations Page, with Policy Provisions Form SX 80 02 and Endorsements, if any, issued to form a part thereof, shall together constitute this Umbrella Liability Supplemental Contract, which in turn forms a part of Policy Number shown below.

None of the provisions of the policy to which this Supplemental Contract is attached applies to the Umbrella Liability Insurance provided hereunder.

Wherever the word "policy" appears in this form or in endorsements attached to or made a part of this Supplemental Contract, it means "Supplemental Contract".

**POLICY NUMBER:** 35 SBA PG4092

# DECLARATIONS

**Named Insured and Mailing Address:**    TOP FLITE FINANCIAL, INC.

123 E. GRAND RIVER
WILLIAMSTON          MI 48895

**Policy Period**          **From:** 03/29/05  **To:** 03/29/06
**12:01 A.M., Standard time at the address of the named insured as stated herein.**

**Premium**                  **$ INCLUDED** ADVANCE PREMIUM

Self Insured Retention          $10,000      each occurrence

The Limits of Insurance subject to all the terms of this policy that apply are:

| | | | |
|---|---|---|---|
| Each Occurrence | $ 1,000,000 | Products-Completed Operations Aggregate Limit | $ 1,000,000 |
| General Aggregate Limit (Other than Products - Completed Operations, Bodily Injury By Disease and Automobile) | $ 1,000,000 | Bodily Injury By Disease Aggregate Limit | $ 1,000,000 |

**Schedule of Underlying Insurance Policies**
        *See Attached "Extension Schedule of Underlying Insurance Policies"*

**Form Numbers of Forms and Endorsements that apply.**

| | | | |
|---|---|---|---|
| SX80120703 | SX80020401 | SX80040300 | SX02030697 |
| SX21040697 | SX21050697 | SX21070697 | SX21090603 |
| SX21270697 | SX21610697 | SX21750697 | SX23480300 |
| SX24010401 | SX24520300 | | |

Countersigned by _____

_____    _____
Authorized Representative                              Date

**Exhibit 1 - 000051**

**Form SX 80 01 06 97 T** Printed in U.S.A. (NS)
**Process Date:** 04/04/05                    **Policy Expiration Date:** 03/29/06



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

Paragraph **A.** of INSURING AGREEMENTS (SECTION **I** COVERAGES) is replaced by the following:

**INSURING AGREEMENTS**

**A. Umbrella Liability Insurance**

1. We will pay those sums that the "insured" becomes legally obligated to pay as "damages":

   a. In excess of the "underlying insurance"; or of

   b. The "self-insured retention" when no "underlying insurance" applies,

   because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies, caused by an "occurrence".  But, the amount we will pay as "damages" is limited as described in SECTION **IV**   LIMITS OF INSURANCE.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION **II** INVESTIGATION, DEFENSE, SETTLEMENT.

2. This insurance applies to:

   a. "Bodily injury" and "property damage" only if the "bodily injury" or "property damage" occurs during the "policy period".

   b. "Personal and advertising injury" caused by an offense arising out your business, but only if the offense was committed during the "policy period".

**Exhibit 1 – 000052**

© 2003, The Hartford

# EXTENSION SCHEDULE OF
# UNDERLYING INSURANCE POLICIES

This extension schedule forms a part of the policy designated in the Declarations.

**Carrier, Policy Number and Policy Period:**

**A.** HARTFORD CASUALTY INSURANCE COMPANY

35 SBA PG4092     03/29/05  TO 03/29/06

| Type of Coverage | Applicable Limits | |
|---|---|---|
| ( X ) Comprehensive Business Liability - including: | Bodily Injury and Property Damage Liability Combined | |
| | $2,000,000 | each occurrence |
| | $4,000,000 | general aggregate |
| Employees as Additional Insureds | | |
| Contractual Liability | | |
| Limited Non-Owned Watercraft | | |
| Non-Owned Snowmobiles | | |
| Additional Insureds | | |
| Damages To Premises Rented To You | Property Damage Liability | |
| | $  300,000 | each occurrence |
| (X ) Personal Injury | $2,000,000 | |
| (X ) Advertising Injury | $2,000,000 | |
| (X ) Products/Completed Operations | $4,000,000 | Prod./Comp. Ops. aggregate |
| (X ) Non-Owned Automobile - Hired Car | $2,000,000 | Limit of Liability |

**B.**

| | | |
|---|---|---|
| ( ) Comprehensive Automobile Liability - Owned Automobiles | Bodily Injury Liability | |
| | | each person |
| | | each accident |
| | Property Damage Liability | |
| ( ) Non-Owned Automobiles | | each accident |
| | Bodily Injury and Property Damage | |
| ( ) Hired Automobiles | Liability Combined | |
| | | each accident |
| ( ) Uninsured Motorist | | each occurrence |

**C.** TWIN CITY FIRE INS CO     76WEGKT3807     09/26/04  TO 09/26/05

| | | |
|---|---|---|
| (X ) Employers' Liability | $  500,000 | each accident* |
| | $  500,000 | each employee by disease* |
| | $  500,000 | total policy by disease* |

**D.**

( ) Liquor Law Legal Liability

An "X" marked in the box indicates the coverage is provided in the Underlying Policies.

**(Note Maintenance of Underlying Insurance Condition SX 80 02.)**

*Except that in any jurisdiction where the amount of Employers Liability Coverage afforded by the underlying insurer is by law unlimited, the limit stated does not apply and the policy of which this extension schedule forms a part shall afford no insurance with respect to Employers Liability in such jurisdiction.

**Form SX 80 04 03 00**  Printed in U.S.A. **(NS)**        **Exhibit 1 – 000053**
**Process Date:** 04/04/05        **Policy Expiration Date:** 03/29/06

UW COPY

05839

*0100035PG40920101

```
           COMMERCIAL LINES AUTOMATION - SPECTRUM DETAIL        PAGE    1

POLICY NUMBER:    35 SBA PG4092   SA          EFFECTIVE DATE:  03/29/05
                                              MARKET SEGMENTATION:   830

COMMISSION:  18.0                                  RATE TIER:   1

LOCATION/BUILDING RATING DETAIL


   TYPE OF POLICY       PROT    HAZ: 01    STAT
     CD DESCRIPTION     CLASS   CONSTR     CODE    TERR  AREA
     7  OFFICE          06      2-MASONRY  61631   009   5000

     YR
   BUILT
   1930

  LOC 001 BLDG 001
                     ACCOUNT MOD: .95
      123 E. GRAND RIVER, WILLIAMSTON, MI. 48895

BUILDING

   (A).230 X (CE).90 X (ID).94 X (G).94 X
   (SD).95 = (P).174 X (Q)425,000 / 100 =                        740.00

BUSINESS PERSONAL PROPERTY        OCCPY CD  4

   (A).770 X (CE).90 X (G).94 X (SB)1.02 X
   (SD).95 = ((P).631 X (Q)100,000 / 100) + ((SX)96 X
   (G).94 X (SD).95) =                                           717.00

UMBRELLA LIABILITY - ZONE 02
   (XM)115 X (BK)1.00 =                                          115.00

BUILDING STRETCH
   (A)75 X (SD).95 =                                              71.00

STRETCH PLUS BUSINESS SERVICES
   (A)375.000 X (SD ).95 =                                       356.00

 COMMON COVERAGE INFORMATION

NON-OWNED AUTOMOBILE/HIRED CAR
   (A)167.00 X (SD).95 =                                         159.00

TERRORISM PREMIUM
   (JS)2,158.00 X (JR).02 =                                       43.00
```

```
A  - BASE RATE                    G  - DEDUCTIBLE FACTOR
P  - FINAL RATE                   Q  - LIMIT OF LIABILITY
BK - OPTIONAL LIMIT FACTOR        CE - CLASS FACTOR
ID - BI DELETION FACTOR           JR - TERRORISM FACTOR
JS - TOTAL POLICY PREMIUM         SB - INCREASED LIABILITY INCREMENT
SD - TOTAL MOD                    SX - ALL RISK LOADING
XM - UMBRELLA CHARGE

 POLICY #   35SBAPG4092   SA            CONTROL #  001  TERM ID  R022R89S
 PROCESS DATE  04/04/05  OPER INITIALS  RDL  AAR PREV POL #    NEW
```

**Exhibit 1 - 000054**

```
           COMMERCIAL LINES AUTOMATION - SPECTRUM DETAIL      PAGE    2
POLICY NUMBER:     35 SBA PG4092   SA      EFFECTIVE DATE:  03/29/05


UMBRELLA LIABILITY MINIMUM PREM DIFF                         235.00

                                       GRAND TOTAL         2,436.00
```



Exhibit 1 - 000055

```
            COMMERCIAL LINES AUTOMATION - SPECTRUM SUMMARY        PAGE    3

   POLICY INFORMATION


   NAMED INSURED:  TOP FLITE FINANCIAL, INC.
   AGENT CODE AND NAME:  351668  KOROTKIN INSURANCE GROUP
   COMPANY CODE AND NAME:  3  HARTFORD CASUALTY INSURANCE COMPANY
   EFFECTIVE DATE:  03/29/05           EXPIRATION DATE:  03/29/06
                                       AUDIT PERIOD:  NON-AUDITABLE

    POLICY AUTOMATICALLY BOOKED

   REPLACEMENT COST COVERAGE APPLIES

    SPECTRUM PROPERTY DEDUCTIBLE:      $500

         COVERAGES                 LIMITS OF LIABILITY      PREMIUMS
   BUILDING                                $425,000          $740.00
   BUSINESS PERSONAL PROPERTY              $100,000          $717.00
   BUSINESS INCOME AND EXTRA EXPENSE                         INCLUDED
   NON-OWNED AUTOMOBILE/HIRED CAR        $2,000,000          $159.00
   BUSINESS LIABILITY                    $2,000,000          INCLUDED
   EMPLOYMENT PRACTICES LIABILITY   $5,000/    $5,000        INCLUDED
   MONEY AND SECURITIES
       INSIDE-PREMISES                     $10,000
       OUTSIDE-PREMISES                     $5,000          INCLUDED
   TERRORISM COVERAGE                                        $43.00
   UMBRELLA LIABILITY                    $1,000,000          $115.00
   UMBRELLA LIABILITY MINIMUM PREM DIFF                      $235.00
   BUILDING STRETCH                                          $71.00
   STRETCH PLUS BUSINESS SERVICES                            $356.00
   FUNGI LIMITED COVERAGE                   $50,000          INCLUDED
   FUNGI LIMITED BUSINESS INTERRUPTION      30 DAYS          INCLUDED

                                          TOTAL          $2,436.00

    DIRECT ACCOUNT BILL NUMBER - 11307081
```

**Exhibit 1 - 000056**

PRODUCER'S   FACT   SHEET

NAMED  INSURED:  TOP  FLITE  FINANCIAL,  INC.


POL #: 35 SBA PG4092   SA


PRODUCER'S  NAME:          PRODUCER'S  CODE:  351668
KOROTKIN  INSURANCE  GROUP

POL  EFF  DATE:  03/29/05     POL  EXP  DATE:  03/29/06

DIRECT  ACCOUNT  BILL  NUMBER - 11307081

TRANSACTION  TYPE:  NEW  BUSINESS

TOTAL  ANNUAL  PREMIUM:        $2,436.00
   INCLUDES  TERRORISM  PREMIUM        $43.00

COMMISSION  BREAKDOWN

ANNUAL  PREMIUM      COMMISSION  PERCENTAGE

SPECTRUM        $2,436.00          18.0
TOTAL          $2,436.00

| FORM | TITLE |
|---|---|
| SS 00 01 04 93 | POLICY FRONT COVER |
| SS 00 02 11 93 | DECLARATIONS |
| SS 00 05 06 96 | COMMON POLICY CONDITIONS |
| SS 00 07 10 02 | SPECIAL PROPERTY COVERAGE FORM |
| SS 00 08 04 01 | BUSINESS LIABILITY COVERAGE FORM |
| SS 84 31 03 00 | BUILDING STRETCH SUMMARY |
| SS 84 32 03 00 | STRETCH PLUS FOR BUSINESS SERVICES SUMMARY |
| SS 01 31 07 01 | MICHIGAN CHANGES |
| SS 04 15 10 02 | ORDINANCE OR LAW COVERAGE |
| SS 04 19 06 96 | BUSINESS INCOME EXTENSION FOR OFF-PREMISES UTILITY SERVICES |
| SS 04 30 03 00 | TRANSIT COVERAGE |
| SS 04 38 06 01 | HIRED AUTO AND NON-OWNED AUTO |
| SS 04 39 10 02 | ACCOUNTS RECEIVABLE |
| SS 04 41 04 01 | COMPUTERS AND MEDIA |
| SS 04 42 03 00 | EMPLOYEE DISHONESTY COVERAGE |
| SS 04 44 09 93 | OUTDOOR SIGNS |
| SS 04 45 10 96 | PERSONAL PROPERTY OF OTHERS |
| SS 04 46 10 02 | TEMPERATURE CHANGE |
| SS 04 47 10 02 | VALUABLE PAPERS AND RECORDS |
| SS 04 52 09 01 | BUILDING STRETCH |
| SS 04 78 04 01 | DEPENDENT PROPERTY: ANCHOR STORE/MAJOR SUPPLIER |
| SS 04 80 03 00 | CRIME COMMON CONDITIONS AND EXCLUSIONS |
| SS 04 86 03 00 | FORGERY COVERAGE |
| IH 10 01 09 86 | PERILS SPECIFICALLY EXCEPTED |
| SS 05 03 03 00 | EXCLUSION - INSPECTION AND APPRAISAL SERVICES |
| SS 05 12 03 92 | ASBESTOS HAZARD EXCLUSION |
| SS 05 47 09 01 | EXCLUSION - NUCLEAR ENERGY LIABILITY |
| SS 05 48 03 00 | EXCLUSION - FINANCIAL SERVICES |
| SS 05 62 03 00 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECTS |
| SS 09 01 09 00 | EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM |
| SS 09 06 01 | MICHIGAN CHANGES |
| SS 09 42 07 99 | EMPLOYMENT PRACTICES - EXCLUSION - PRIOR ACTS |

PRODUCER'S  FACT  SHEET      PAGE  1
04/04/05  35 SBA PG4092   SA  (03/29/06)

**Exhibit 1 - 000057**

PRODUCER'S FACT SHEET (CONTINUED)    POL #: 35 SBA PG4092   SA

```
SS 10 02 03 97      MICHIGAN CHANGES
SS 12 03 03 92      EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON
SS 40 05 09 01      STRETCH PLUS FOR BUSINESS SERVICES
SS 40 18 03 00      OFF PREMISES UTILITY SERVICES - DIRECT DAMAGE
SS 40 93 10 02      LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE
SS 50 19 06 03      CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
SS 50 30 06 03      CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
100722              TOTAL ACCOUNT BILLING SYSTEM
SX 80 01 06 97      UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT -
                    POLICY DECLARATIONS PAGE
SX 80 12 07 03      AMENDMENT OF INSURING AGREEMENT
SX 80 02 04 01      UMBRELLA LIABILITY POLICY PROVISIONS
SX 80 04 03 00      EXTENSION SCHEDULE OF UNDERLYING INSURANCE POLICIES
SX 02 03 06 97      AMENDMENT OF CONDITIONS - MICHIGAN
SX 21 04 06 97      EXCLUSION - CARE, CUSTODY OR CONTROL OF
                    PERSONAL PROPERTY
SX 21 05 06 97      EXCLUSION - CARE, CUSTODY OR CONTROL OF
                    REAL PROPERTY
SX 21 07 06 97      EXCLUSION - INSPECTION SERVICES
SX 21 09 06 03      CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
SX 21 27 06 97      EXCLUSION - SECURITIES TRANSACTIONS
SX 21 61 06 97      EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)
SX 21 75 06 97      ABSOLUTE ASBESTOS EXCLUSION
SX 23 48 03 00      EXCLUSION - FINANCIAL SERVICES
SX 24 01 04 01      FOLLOWING FORM ENDORSEMENT - AUTOMOBILE LIABILITY
SX 24 52 03 00      FOLLOWING FORM-LIMITATION OF COVERAGE TO DESIGNATED
                    PREMISES OR PROJECT.
SS 83 13 01 97      IMPORTANT NOTICE TO OUR POLICYHOLDERS
SS 83 39 06 01      POLICYHOLDER NOTICE-EMPLOYMENT PRACTICES LIABILITY
                    INSURANCE
SS 83 76 06 03      DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF
                    2002
G-3316-1            NOTICE TO MICHIGAN POLICYHOLDERS
```

Exhibit 1 - 000058

# COMMON POLICY CONDITIONS

**Exhibit 1 – 000059**

Copyright, Hartford Fire Insurance Company, 1996

# QUICK REFERENCE - SPECTRUM POLICY

## DECLARATIONS
## and
## COMMON POLICY CONDITIONS

## I.   DECLARATIONS

Named Insured and Mailing Address
Policy Period
Description and Business Location
Coverages and Limits of Insurance

## II.   COMMON POLICY CONDITIONS                    Beginning on Page

A.  CANCELLATION                                                  1
B.  CHANGES                                                       1
C.  CONCEALMENT, MISREPRESENTATION OR FRAUD                       2
D.  EXAMINATION OF YOUR BOOKS AND RECORDS                         2
E.  INSPECTIONS AND SURVEYS                                       2
F.  INSURANCE UNDER TWO OR MORE COVERAGES                         2
G.  LIBERALIZATION                                                2
H.  OTHER INSURANCE - PROPERTY COVERAGE                           2
I.  OTHER INSURANCE - BUSINESS LIABILITY                          2
J.  PREMIUMS                                                      3
K.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US           3
L.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY          4
M.  SUSPENSION IN COVERAGE                                        4

**Form SS 00 05 06 96**  Printed in U.S.A. (NS)

**Exhibit 1 - 000060**

Copyright, Hartford Fire Insurance Company, 1996



# COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

      Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for, within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. Such refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. If the first Named Insured cancels this policy, we will retain no less than $100 of the premium.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized on behalf of all insureds to agree with us on changes in the terms of this policy. If the terms

Copyright, Hartford Fire Insurance Company, 1996

COMMON POLICY CONDITIONS

are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by you at any time as it relates to this policy. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

## D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

## E. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. Such inspections are not safety inspections. We do not undertake any duty to provide for the health or safety of any person. And we do not represent or warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

## F. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## G. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

## H. OTHER INSURANCE - PROPERTY COVERAGE

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## I. OTHER INSURANCE - BUSINESS LIABILITY

If other valid and collectible insurance is available to the insured for a loss we cover under Business Liability Coverage Form, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary, Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of the Business Liability Coverage Form.

When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Copyright, Hartford Fire Insurance Company, 1996

**COMMON POLICY CONDITIONS**

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

  **c.** Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## J. PREMIUMS

**1.** The first Named Insured shown in the Declarations:

  **a.** Is responsible for the payment of all premiums; and

  **b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

  **a.** Paid to us prior to the anniversary date; and

  **b.** Determined in accordance with paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

**1.** Applicable to Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

  **a.** Prior to a loss to your Covered Property.

  **b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

    (1) Someone insured by this insurance;

    (2) A business firm:

      (a) Owned or controlled by you; or

      (b) That owns or controls you; or

    (3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers. This will not restrict your insurance.

**2.** Applicable to Business Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**Exhibit 1 – 000063** of 4

Copyright, Hartford Fire Insurance Company, 1996

COMMON POLICY CONDITIONS

## L. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## M. SUSPENSION IN COVERAGE

This provision is applicable only to the Equipment Breakdown Additional Coverage in the Special Property Coverage Form.

Suspension

When any equipment covered by the Equipment Breakdown Additional Coverage is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance provided by the Equipment Breakdown Additional Coverage against loss or damage to that equipment.

We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located.  Once suspended in this way, your insurance can be reinstated only by written notice from us.  If we suspend your insurance, you will get a pro rata refund of premium.  But the suspension will be effective even if we have not yet made or offered a refund.

Our President and Secretary have signed this policy. The Declarations page has also been countersigned by our duly authorized agent.

Brian S. Becker, Secretary

David Zwiener, President

Form SS 00 05 Printed in U.S.A. 000964 (NS)

Copyright, Hartford Fire Insurance Company, 1996

# SPECIAL PROPERTY COVERAGE FORM

Exhibit 1 - 000065

**Form SS 00 07 10 02**

© 2002, The Hartford

# QUICK REFERENCE

## SPECIAL PROPERTY COVERAGE FORM
## READ YOUR POLICY CAREFULLY

**SPECIAL PROPERTY COVERAGE FORM**　　　　　　　　　　　　**Beginning on Page**

**A.　COVERAGES**　　　　　　　　　　　　　　　　　　　　**1**

　　　Covered Property　　　　　　　　　　　　　　　　　　1
　　　Property Not Covered　　　　　　　　　　　　　　　　1
　　　Covered Causes of Loss　　　　　　　　　　　　　　　2
　　　Limitations　　　　　　　　　　　　　　　　　　　　2
　　　Additional Coverages　　　　　　　　　　　　　　　　3
　　　Coverage Extensions　　　　　　　　　　　　　　　　11

**B.　EXCLUSIONS**　　　　　　　　　　　　　　　　　　　　**13**

**C.　LIMITS OF INSURANCE**　　　　　　　　　　　　　　　**15**

**D.　DEDUCTIBLES**　　　　　　　　　　　　　　　　　　　**16**

**E.　PROPERTY LOSS CONDITIONS**　　　　　　　　　　　　**17**

　　　Abandonment　　　　　　　　　　　　　　　　　　　17
　　　Appraisal　　　　　　　　　　　　　　　　　　　　　17
　　　Duties in the Event of Loss or Damage　　　　　　　　17
　　　Legal Action Against Us　　　　　　　　　　　　　　　17
　　　Loss Payment　　　　　　　　　　　　　　　　　　　17
　　　Recovered Property　　　　　　　　　　　　　　　　　19
　　　Resumption of Operations　　　　　　　　　　　　　　19
　　　Vacancy　　　　　　　　　　　　　　　　　　　　　19

**F.　PROPERTY GENERAL CONDITIONS**　　　　　　　　　　**20**

　　　Control of Property　　　　　　　　　　　　　　　　　20
　　　Mortgage Holders　　　　　　　　　　　　　　　　　　20
　　　No Benefit to Bailee　　　　　　　　　　　　　　　　　20
　　　Policy Period, Coverage Territory　　　　　　　　　　　20

**G.　PROPERTY DEFINITIONS**　　　　　　　　　　　　　　**21**

**Exhibit 1 - 000066**

© 2002, The Hartford



# SPECIAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to the SECTION **G** - PROPERTY DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property as used in this policy, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a. Buildings,** meaning only building(s) and structure(s) described in the Declarations, including:

(1) Completed additions;

(2) Permanently installed:

(a) Fixtures;

(b) Machinery; and

(c) Equipment;

(3) Outdoor fixtures;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Building Glass, meaning glass that is part of a building or structure;

(6) Personal property owned by you that is used to maintain or service the buildings or structures on the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(7) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "scheduled premises", used for making additions, alterations or repairs to the buildings or structures.

**b. Business Personal Property** located in or on the building(s) described in the Declarations at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", including:

(1) Property you own that is used in your business;

(2) Tools and equipment owned by your employees, which are used in your business operations.

(3) Property of others that is in your care, custody or control.

(4) Your use interest in tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove.

(5) Leased personal property for which you have contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

### 2. Property Not Covered

Covered Property does not include:

a. Aircraft, automobiles, motor trucks and other vehicles subject to motor vehicle registration;

**Exhibit 1 - 000067**

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

b. Currency, "money," bullion, numismatic and philatelic property and bank notes or "securities" except as provided in the Additional Coverages or Optional Coverages. Lottery tickets held for sale and postage stamps in current use and having face value are not "securities".

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas, including their lead in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other then those held for sale or sold but not delivered), all except as provided in the:

   (1) Outdoor Property Coverage Extension; or

   (2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. The cost to research, replace or restore the information on "valuable papers and records", except as provided in the Coverage Extensions or Optional Coverages.

h. "Data" and "software" which exists on electronic "media" including the cost to research, replace or restore them, except as provided in the Additional Coverages or Optional Coverages.

g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy.

3. **Covered Causes of Loss**

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

a. Excluded in Section **B., EXCLUSIONS;** or

b. Limited in Paragraph **A.4.** Limitations; that follow.

4. **Limitations**

a. We will not pay for loss of or damage to:

   (1) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does apply to the Additional Coverage for "Money" and "Securities".

(2) Property that has been transferred to a person or to a place outside the "scheduled premises" on the basis of unauthorized instructions.

(3) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   (a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   (b) The loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

b. Pets and animals are covered only if:

   (1) They are inside the building; and

   (2) They are owned by others and boarded by you, or owned by you and held for sale or sold but not delivered.

And then we will pay **only if** they are killed; or their destruction is made necessary by any of the "specified causes of loss" or they are stolen.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

   (1) $2,500 for furs, fur garments and garments trimmed with fur;

   (2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item; and

   (3) $2,500 for patterns, dies, molds and forms.

   (4) $500 for stamps, lottery tickets held for sale and letters of credit.

d. Unless specifically provided under a separate endorsement and with a specific Limit of Insurance indicated in the Declarations, we will not pay for loss or damage to "perishable stock" caused by or resulting from:

   (1) A change in temperature or humidity resulting from"

      (a) Mechanical breakdown or failure of:

         (i) Stationary heating plants; or

© 2002, The Hartford

**Exhibit 1 – 000068**

**Form SS 00 07 10 02**

SPECIAL PROPERTY COVERAGE FORM

**(ii)** Refrigerating, cooling, or humidity control apparatus or equipment;

**(b)** Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires; or

**(c)** Complete or partial failure or electric power on your "scheduled premises".

**(2)** Contamination by refrigerant.

## 5. Additional Coverages

### a. Accounts Receivable

**(1)** This additional coverage applies only when a Limit of Insurance for Business Personal Property is shown in the Declarations.

We will pay up to $10,000 in any one occurrence, to cover:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss of or damage to your records of accounts receivable at the "scheduled premises".

**(2)** Paragraph **A.3.,** Covered Causes of Loss, and Section **B.,** Exclusions, do not apply to this Additional Coverage except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard; and

**(c)** Paragraph **B.1.f.,** War and Military Action.

**(3)** Additional Exclusions

**(a)** Dishonest acts by you, anyone else with an interest in the records of accounts receivable, or your or their employees or authorized representatives, or anyone entrusted with the records of accounts receivable, whether or not acting alone or in collusion with other persons or occurring during the hours of employment.

But this exclusion does not apply to a carrier for hire.

**(b)** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money," "securities," or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(c)** Bookkeeping, accounting or billing errors or omissions.

**(d)** Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct loss or damage caused by lightning.

**(e)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(f)** Unauthorized instructions to transfer property to any person or to any place.

**(4)** We will not pay for loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

### b. Collapse

**(1)** With respect to Buildings:

**(a)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building cannot be occupied for its intended purpose;

**(b)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

**(c)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

**(d)** A building that is standing or any part of a building that is standing is

© 2002, The Hartford

**Exhibit 1 - 000069**
Page 3 of 22

**SPECIAL PROPERTY COVERAGE FORM**

not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

(2) We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

(a) The "specified causes of loss" or breakage of building glass, all only as insured against in this policy;

(b) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(c) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(d) Weight of people or personal property;

(e) Weight of rain that collects on a roof; and

(f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

(3) We will not pay for loss of or damage to the following types of property, if otherwise covered in this policy, under items **(b)**, **(c)** **(d)**, **(e)** and **(f)** unless the loss or damage is a direct result of the collapse of a building:

awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

The criteria set forth in Paragraphs **(1)(a)** through **(2)(a)** do not limit the coverage otherwise provided under this Additional Coverage for the Causes of Loss listed in Paragraph **(2)(a)**, **(2)(d)**, and **(2)(e)**

(4) If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if

(a) the collapse was caused by a cause of loss listed in Paragraph **(2)(a)** through **(2)(f)** of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph **(3)** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(4)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(5) This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this policy.

**c. Debris Removal**

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical loss or damage; or

(b) The end of the policy period.

(2) The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct loss of or damage to Covered Property; plus

(b) The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

(3) This Additional Coverage does not apply to costs to:

(a) Extract "pollutants" from land; or

(b) Remove, restore or replace polluted land or water.

**Exhibit 1 – 000070**

© 2002, The Hartford

**Form SS 00 07 10 02**

SPECIAL PROPERTY COVERAGE FORM

**d. Equipment Breakdown**

We will pay for loss or damage caused by or resulting from risks of direct physical loss due to:

(1) Mechanical Breakdown, including rupture or bursting caused by centrifugal force.

(2) Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

(3) Explosion of steam boilers, steam piping, steam engines or steam turbines owned or leased by you, or operated under your control.

(4) Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such boilers or equipment.

(5) Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

Coverage Limitation

The following coverage limitation applies only to loss or damage caused by or resulting from **(1)** through **(5)** above:

Hazardous Substances

We will pay for the cost, not to exceed $25,000, to repair or replace Covered Property because of contamination by a hazardous substance. This includes the expenses to clean up or dispose of such property. Hazardous substance means any substance other than ammonia that has been declared by a government agency to be hazardous to health.

Cost in this limitation means those beyond what would have been required had no hazardous substance been involved.

This limit is part of and not in addition to the limits of insurance for Covered Property.

**Coverage Extensions**

The following coverage extension applies only to loss or damage caused by or resulting from **(1)** through **(5)** above:

**(1) CFC Refrigerants**

We will pay for the additional costs, up to $25,000, to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances.

This means the additional expense to do the least expensive of the following:

(a) Repair the damaged property and replace any lost CFC refrigerant;

(b) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(c) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

**(2) Defense**

If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control directly caused by Equipment Breakdown we will either:

(a) Settle the claim or "suit"; or

(b) Defend you against the claim or "suit," but keep for ourselves the right to settle it at any point.

**(3) Supplementary Payments**

We will pay, with respect to any claim or "suit" we defend:

(a) All expenses we incur;

(b) The cost of bonds to release attachments, but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds;

(c) All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings up to $100 a day because of time off from work;

(d) All costs taxed against you in any "suit" we defend;

(e) Prejudgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

(f) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or

**Exhibit 1 – 000071**

deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declarations.

These payments will not reduce the Limit of Insurance shown in the Declarations.

**(4) Business Income and Extra Expense Extension**

The Business Income and Extra Expense Additional Coverage is extended to provide coverage for a tenant who has a loss of income from the lack of heating, cooling or power as a result of equipment breakdown to mechanical, electrical or pressure equipment of the building owner.

**Additional Condition**

Bankruptcy

The bankruptcy or insolvency of you or your estate will not relieve us of any obligation under this Additional Coverage.

**Additional Definition** "Suit" means a civil proceeding and includes:

**(1)** An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

**Jurisdictional Inspections:**

If any boiler or pressure vessel requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**e. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $15,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**f. Fire Extinguisher Recharge**

We will pay to cover your expenses for recharge of your hand fire extinguishers when they are emptied while fighting fire.

**g. Forgery**

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent. This includes written instruments required in conjunction with any credit, debit, or charge card issued to you or any "employee" for business purposes.

**(2)** If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable expenses that you incur and pay in that defense.

**(3)** We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(a)** Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

**(b)** Counterfeit United States or Canadian paper currency.

**(1)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $5,000, unless a higher Limit of Insurance is shown in the Declarations.

**h. Glass Expense**

We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing replacing window displays.

**i. Increased Cost of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the

© 2002, The Hartford

**Exhibit 1 – 000072**
Form SS 00 07 10 02

increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in paragraphs (3) through (9) of this Additional Coverage.

**(3)** The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with

**(5)** Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this policy, is $10,000.   If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage for each damaged building is $10,000.

The amount payable under this Additional Coverage is additional Insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as possible after the loss or damage, not to exceed two years.   We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such terms would conflict with the provisions of this Additional Coverage.

**(9)** The Costs addressed in the Loss Payment Property Loss Condition do not include the increased cost attributable to enforcement of an ordinance or law.  The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**j.  Lock and Key Replacement**

We will pay up to $1,000 in any one occurrence for the re-keying of locks or the repair or replacement of locks at "scheduled premises" following the theft or the attempted theft of keys by burglars.

**k.  Money and Securities**

**(1)** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises", or in transit between any of these places, resulting directly from:

**(a)** Theft, meaning any act of stealing;

**(b)** Disappearance; or

**(c)** Destruction.

**(2)** In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

**(a)** Resulting from accounting or arithmetical errors or omissions;

**SPECIAL PROPERTY COVERAGE FORM**

    (b) Due to the giving or surrendering of property in any exchange or purchase; or

    (c) Of property contained in any "money"-operated device unless a continuous recording instrument in the device records the amount of "money" deposited in it.

    **(3)** The most we will pay for loss in any one occurrence is:

        (a) The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

            (i) In or on the "scheduled premises"; or

            (ii) Within a bank or savings institution; and

        (b) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

    **(4)** All loss:

        (a) Caused by one or more persons; or

        (b) Involving a single act or series of related acts;

    is considered one occurrence.

    **(5)** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**l.** **Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the "scheduled premises" if the discharge, dispersal, seepage, migration, release or escape of the 'pollutants' is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

    **(1)** The date of direct physical loss or damage; or

    **(2)** The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**m.** **Preservation of Property**

If it is necessary to move Covered Property from the "scheduled premises" to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

    **(1)** While it is being moved or while temporarily stored at another location; and

    **(2)** Only if the loss or damage occurs within 10 days after the property is first moved.

**n.** **Theft Damage to Building**

This Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for such damage.

We will pay for loss or damage directly resulting from theft, burglary or robbery (except loss by fire or explosion) to a building:

    **(1)** You occupy, including personal property that is used to maintain or service the building; or

    **(2)** Containing covered personal property if you are legally liable for such loss or damage.

But we will not pay for such loss of or damage to property that is away from the "scheduled premises".

**o.** **Water Damage, Other Liquid, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage except as provided in the Equipment Breakdown Additional Coverage. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

    **(1)** Results in discharge of any substance from an automatic fire protection system; or

    **(2)** Is directly caused by freezing.

**p.** **Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary

© 2002, The Hartford

**Exhibit 1 - 000074**
**Form SS 00 07 10 02**

suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from any Covered Cause of Loss.

We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

Business Income means the:

(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

(2) Continuing normal operating expenses incurred, including payroll.

**q. Extra Expense**

We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

Extra Expense means expense incurred:

(1) To avoid or minimize the suspension of business and to continue "operations":

(a) At the "scheduled premises"; or

(b) At replacement premises or at temporary locations, including:

(i) Relocation expenses; and

(ii) Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.

(2) To minimize the suspension of business if you cannot continue "operations".

(3) (a) To repair or replace any property; or

(b) To research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **k.**, Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**Limitation:** This Extra Expense Coverage does not apply to:

(1) Any deficiencies in insuring building or business personal property; or

(2) Any expense related to any recall of products you manufacture, handle or distribute.

**r. Civil Authority**

(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "Scheduled Premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "Scheduled Premises".

(2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:

(a) When access is permitted to your "Scheduled Premises"; or

(b) 30 consecutive days after the order of the civil authority.

**s. Extended Business Income**

(1) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

Ends on the earlier of:

(a) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in **(1)(a)** above.

Loss of Business Income must be caused by direct physical loss or damage at the "scheduled premises" caused by or resulting from any Covered Cause of Loss.

**Exhibit 1 - 000075**

© 2002, The Hartford

**SPECIAL PROPERTY COVERAGE FORM**

(2) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; and

(b) That a part or all of the "scheduled premises" is rendered untenantable as a result of a covered cause of loss.

t. **Business Income to Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume"operations", in whole or in part, by using any other available:

(a) Source of Materials; or

(b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent Property means property owned by others whom you depend on to:

(a) Deliver materials or services to you or to others for your account.  But services does not include:

(i) Water, communication, or power services; or

(ii) Any type of web site, communication or Internet service.

(b) Accept your products or services;

(c) Manufacture your products for delivery to your customers under contract for sale; or

(d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) The coverage period for Business Income under this Additional Coverage:

(a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

(b) Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(6) The Business Income coverage period, as stated in Paragraph **(5)**, does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects "pollutants."

(7) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

u. **Tenant Glass**

The Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for such damage.

We will cover loss to glass, which is in your care, custody or control and for which the lease holds you responsible.  The glass must be part of a building described in the Declarations or at a location that would be included in Coverage Extension **b.** Newly Acquired or Constructed Property.

The most that we will pay for each location under this Additional Coverage is $25,000.

v. **Leasehold Improvements**

If your lease is cancelled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property at the location in which you are a tenant, and you

**Exhibit 1 – 000076**
**Form SS 00 07 10 02**

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

cannot legally remove Tenant Improvements and Betterments we will extend Business Personal Property coverage to apply to the unamoritized value of Tenants Improvement and Betterment that remains and you were forced to abandon.

The most we will pay in any one occurrence for loss under this Additional Coverage is $25,000.

**w. Lease Assessment**

Your Business Personal Property is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical damage caused by or resulting from a Covered Cause of Loss to building property as agreed to in your written lease agreement.

We will pay no more than $2,500 in any one occurrence for this Additional Coverage.

**6. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises".

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows:

**a. Arson Reward**

In the event that a covered fire loss was the result of an act of arson, we will reimburse you up to $10,000 for rewards you pay for information leading to convictions for that act of arson.

This is additional insurance. The deductible does not apply to these reimbursements.

**b. Data and Software**

We will pay up to $10,000 in any one occurrence to cover your costs to research, replace or restore "data" or "software" which exists or existed on electronic or magnetic "media" that is lost or damaged as a result of direct physical loss or damage to "computer equipment" at the "scheduled premises".

**c. Garages, Storage Buildings and Other Appurtenant Structures**

You may extend the insurance that applies to Building to apply to garages, storage buildings and other appurtenant structures, except outdoor fixtures and paved surfaces, at the "scheduled premises".

The most we will pay for loss or damage under this Extension is 10% of the Limits of Insurance for Building shown in the Declarations but not more than $50,000 at each "scheduled premises".

You may extend the insurance that applies to Business Personal Property in garages, storage buildings and other appurtenant structures at the "scheduled premises".

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance for Business Personal Property shown in the Declarations but not more than $5,000 at each "scheduled premises".

**d. Newly Acquired or Constructed Property**

(1) You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the "scheduled premises"; and

(b) Buildings you acquire at locations other than the "scheduled premises", intended for:

(i) similar use as the Building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than $500,000 at each premises.

(2) You may extend the insurance that applies to Business Personal Property to apply to:

(a) property at any premises you acquire or construct;

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed building; or

(c) Business Personal Property that you newly acquire, located at the "scheduled premises".

This extension does not apply to:

(a) Personal Property that you temporarily acquire in the course of installing or performing work on such property;

(b) Personal property of others that you temporarily acquire in the course of your wholesaling activity.

© 2002, The Hartford

**Exhibit 1 - 000077**
**Page 11 of 22**

**SPECIAL PROPERTY COVERAGE FORM**

The most we will pay for loss or damage under this Extension is $250,000 at each premises.

**(3)** You may extend the insurance that applies to Business Income and Extra Expense to apply to newly acquired or constructed locations.

The most we will pay under this Extension is $50,000.

**(4)** If Covered Property is moved to a new premises endorsed onto this policy, from a "scheduled premises" being endorsed off this policy, the Limit of Insurance applicable to that vacated premises will apply proportionately to both premises as the property is moved. This coverage applies to up to 90 days after the move begins or upon completion of the move, whichever is sooner.

**(5)** Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 90 days after you acquire or begin to construct the property, or

**(c)** You report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

**e. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor:

**(1)** Fences, signs (other than signs attached to buildings), trees, shrubs and plants including debris removal expense, caused by or resulting from any of the following causes of loss:

**(a)** Fire;

**(b)** Lightning;

**(c)** Explosion;

**(d)** Riot or Civil Commotion; and

**(e)** Aircraft.

The most we will pay for loss or damage under this Extension is $10,000 but not more than $1,000 for any one tree, shrub or plant.

**(2)** Radio and television antennas (including satellite dishes) including debris removal expense, caused by or resulting from any of the following causes of loss:

**(a)** Fire;

**(b)** Lightning;

**(c)** Windstorm;

**(d)** Ice, Snow, Sleet or Hail;

**(e)** Explosion;

**(f)** Riot or Civil Commotion; and

**(g)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,000.

**f. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners, or your employees.

The most we will pay for loss or damage under this Extension is $2,500 at each "scheduled premises".

**g. Property Off Premises**

**(1)** You may extend the insurance that applies to Building to apply to such property that is temporarily at a location you do not own, lease or operate. This Extension applies only if loss or damage is caused by a Covered Cause of Loss. This Extension does not apply to property in course of transit.

The most we will pay under this is $5,000.

**(2)** You may extend the insurance that applies to Business Personal Property to apply to such property, other than "money" and "securities" while:

**(a)** In the course of transit and more than 1,000 feet from the "scheduled premises". Property must be in or on, but not permanently attached or installed in, a motor vehicle you own, lease or operate while between points in the coverage territory; or

**(b)** Temporarily at a premises you do not own, lease or operate.

**(c)** At a premises owned, leased, operated or used by you and the Business Personal Property is a vending machine.

**(d)** In or on, but not permanently attached to or installed in, motor vehicles operated by your employees in the course of your business operations.

**(e)** On temporary public display, or while being used at fairs, exhibitions, expositions, or trade

© 2002, The Hartford

**Exhibit 1 - 000078**
**Form SS 00 07 10 02**

**SPECIAL PROPERTY COVERAGE FORM**

shows or while in transit to and from these temporary sites.

The most we will pay under this Extension is $2,500.

**h. Valuable Papers and Records - Cost of Research**

You may extend the insurance that applies to Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged "valuable papers and records", for which duplicates do not exist. The most we will pay under this Extension is $10,000 at each "scheduled premises". For "valuable papers and records" not at the "scheduled premises", the most we will pay is $5,000.

**B. EXCLUSIONS**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

except as otherwise provided under the Additional Coverage **A.5.h.**, Increased Cost of Construction

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay

for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if loss or damage by fire or volcanic action results, we will pay for that resulting damage.

Volcanic action means direct loss or damage resulting from the eruption of a volcanic when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust, or particulate matter; or

**(c)** Lava flow.

**(d)** All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust, or particulate matter. That does not cause direct physical loss or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination however caused.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

**e. Power Failure**

The failure of power or other utility service supplied to the "scheduled premises", however caused, if the failure occurs away from the "scheduled premises". Failure includes lack of sufficient capacity and reduction in supply necessary to maintain normal operations.

But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**f. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign

© 2002, The Hartford

**Exhibit 1 - 000079**

**SPECIAL PROPERTY COVERAGE FORM**

or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.  Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mud flow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

**h.  Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

2.  We will not pay for loss or damage caused by or resulting from:

**a.  Consequential Losses:** Delay, loss of use or loss of market.

**b.  Smoke, Vapor, Gas:** Smoke, vapor or gas from agricultural smudging or industrial operations.

**c.  Miscellaneous Types of Loss:**

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, mold, spore or other animals;

(6) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

**d.  Frozen Plumbing:** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

**e.  Dishonesty:** Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

**f.  False Pretense:** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**g.  Exposed Property:** Rain, snow, ice or sleet to personal property in the open, except as provided in the Coverage Extension for Outdoor Property.

**h.  Collapse:** Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the "scheduled premises", we will pay for that resulting loss or damage.

**i.  Pollution:** We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss"

© 2002, The Hartford

**Exhibit 1 - 000080**
**Form SS 00 07 10 02**

SPECIAL PROPERTY COVERAGE FORM

results, we will pay for the resulting loss or damage caused by the "specified cause of loss."

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

 a. **Weather conditions:** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the loss or damage.

 b. **Acts or Decisions:** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

 c. **Negligent Work:** Faulty, inadequate or defective:

 (1) Planning, zoning, development, surveying, siting;

 (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

 (3) Materials used in repair, construction, renovation or remodeling; or

 (4) Maintenance of part or all of any property on or off the "scheduled premises".

4. **Business Income and Extra Expense Exclusions**. We will not pay for:

 a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

 (1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

 (2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

 b. Any other consequential loss.

5. **Equipment Breakdown Exclusions**

 We will not pay for loss or damage caused by or resulting from:

 a. Breakdown of any structure, foundation, cabinet, compartment or air supported structure or building;

 b. Breakdown of any insulating or refractory material;

 c. Breakdown of any sewer piping, any underground vessels or piping, any piping forming a part of a sprinkler system or water piping other than boiler feed water piping, boiler condensate, return piping or water piping forming a part of a refrigerating or air conditioning system;

 d. Breakdown of any vehicle, dragline, excavation or construction equipment;

 e. Breakdown of any equipment manufactured by you for sale;

 f. Any of the following tests:

 (a) A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

 (b) An insulation breakdown test of any type of electrical equipment.

C. **LIMITS OF INSURANCE**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $5,000 per sign in any one occurrence.

3. The limits applicable to:

 a. Coverage Extensions; and

 b. The following Additional Coverages:

 (1) Accounts Receivable,

 (2) Fire Department Service Charges,

 (3) Fire Extinguisher Recharge, and

 (4) Pollutant Clean Up and Removal

 are in addition to the Limits of Insurance.

4. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

 a. Preservation of Property; or

 b. Debris Removal; but if:

 (1) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

 (2) The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage.

 We will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

5. **Building Limit - Automatic Increase**

 a. The Limit of Insurance for Building(s) will automatically increase annually by 4%.

 b. The amount of increase will be:

**SPECIAL PROPERTY COVERAGE FORM**

(1) The Limit of Insurance for Building that applied on the most recent of the policy inception date, policy anniversary date, or any other policy change amending the Building limit, times

(2) The percentage of annual increase shown above, expressed as a decimal (.04); times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Building, divided by 365.

Example: The applicable Limit of Insurance for Building is $100,000. The annual percentage increase is 4%. The number of days since the beginning of policy period (or last policy change) is 146.

The amount of increase is:

$100,000 X .04 X 146 divided by 365 = $1,600

6. **Business Personal Property Limit - Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if all Limits of Insurance shown in the Declarations for Business Personal Property is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

**D. DEDUCTIBLES**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. A $250 deductible applies to the following Glass Coverages:

a. Building Glass

b. Glass Expense

c. Tenant Glass

3. Except as listed below, the deductible applicable to Coverage Extensions and

Additional Coverages in the Special Property Coverage form is $100.

a. No deductible applies to the following Coverage Extensions and Additional Coverages:

(1) Fire Extinguisher Recharge;

(2) Preservation of Property;

(3) Fire Department Service Charge;

(4) Business Income, Extra Expense, Civil Authority and Extended Business Income;

(5) Arson Reward; and

(6) Lock and Key Replacement

b. The deductible applicable to the following Additional Coverages is $250:

(1) "Money" and "Securities"; and

(2) Personal Effects

c. The deductible applicable to the following Additional Coverages is the policy deductible which is shown in the Declarations of this policy

(1) Equipment Breakdown;

(2) Increased Cost of Construction; and

(3) Leasehold Improvements unless a separate Deductible is shown in the Declarations.

4. The deductible applicable to the following coverages is $100 whether the coverage is provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a STRETCH endorsement;

a. Accounts Receivable;

b. Employee Dishonesty;

c. Outdoor Signs;

d. Glass;

e. Temperature Change; and

f. "Valuable Papers and Records"

unless a separate Deductible is shown in the Declarations.

5. No Deductible is applicable to the following coverages whether the coverage is provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a STRETCH endorsement:

a. ERISA - Employee Dishonesty

b. Fine Arts.

6. Each deductible shall be applied separately but only to the coverage specified, and the total deductible for all losses in any one occurrence

© 2002, The Hartford

**Exhibit 1 - 000082**

**SPECIAL PROPERTY COVERAGE FORM**

shall be the highest deductible amount that applies to this occurrence.

## E. PROPERTY LOSS CONDITIONS

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss.

If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

You must see that the following are done in the event of loss of or damage to Covered Property:

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the loss or damage. Include a description of the property involved.

**c.** As soon as possible, give us description of how, when and where the loss or damage occurred.

**d.** Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limits of Insurance.

**e.** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**f.** Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

**g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

**h.** Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**i.** Cooperate with us in the investigation or settlement of the claim.

**j.** Resume part or all of your "operations" as quickly as possible.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

**a.** At our option we will either:

**(1)** Pay the value of lost or damaged property, as described in paragraph **d.** below;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, plus any reduction in value of repaired items;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

**b.** We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We will determine the value of Covered Property as follows:

**(1)** At replacement cost (without deduction for depreciation), except as provided in **(2)** through **(7)** below.

**(a)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost

**Exhibit 1 – 000083**

**SPECIAL PROPERTY COVERAGE FORM**

basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(b) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

(c) We will not pay more for loss or damage on a replacement cost basis than the least of:

(i) The cost to replace, on the same premises, the lost or damaged property with other property of comparable material and quality and used for the same purpose; or

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(2) If the **Actual Cash Value - Buildings** option applies, as shown in the Declarations, paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

(a) Manuscripts;

(b) Works of art, antiques or rare articles, including etchings, pictures, statuary, objects of marble, bronzes, porcelains and bric-a-brac.

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and Betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing, if others pay for repairs or replacement.

(6) "Valuable Papers and Records", at the cost of:

(a) Blank materials for reproducing the records; and

(b) Labor to transcribe or copy the records.

(7) "Money" and "Securities":

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

The value of United States Government Internal Revenue taxes and custom duties and refundable state and local taxes paid or fully determined on the following property held for sale will not be considered in determining the value of Covered Property:

(a) Distilled spirits;

(b) Wines;

(c) Rectified products; or

(d) Beer.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of

© 2002, The Hartford

**Exhibit 1 – 000084**
Form SS 00 07 10 02

SPECIAL PROPERTY COVERAGE FORM

lost or damaged property if other than you. If we pay the owners, such payment will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn statement of loss, if:

**(1)** You have complied with all of the terms of this policy; and

**(2) (a)** We have reached agreement with you on the amount of loss, or

**(b)** An appraisal award has been made.

**h.** The following condition applies to any loss payment for Extra Expense:

We will deduct from the total Extra Expense to be paid:

**(1)** The salvage value that remains of any property bought for temporary use during the Period of Restoration, once business operations are resumed;

and

**(2)** Any Extra Expense that is paid for by other insurance.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**7. Resumption of Operations**

In the event of loss or damage at the "scheduled premises" you must resume all or part of your "operations" as quickly as possible.

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "scheduled premises" or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**9. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**a.** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(1)** Vandalism;

**(2)** Sprinkler leakage, unless you have protected the system against freezing;

**(3)** Building glass breakage;

**(4)** Water damage;

**(5)** Theft; or

**(6)** Attempted theft.

**b.** With respect to Covered Causes of Loss other than those listed in **a.(6)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**Exhibit 1 – 000085**

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

## F.   PROPERTY GENERAL CONDITIONS

### 1.   Control of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### 2.   Mortgage Holders

**a.**   The term mortgage holder includes trustee.

**b.**   We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.**   The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.**   If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

(1)   Pays any premium due under this policy at our request if you have failed to do so;

(2)   Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

(3)   Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this policy will then apply directly to the mortgage holder.

**e.**   If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1)   The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2)   The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event,

your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.**   If we cancel this policy, we will give written notice to the mortgage holder at least:

(1)   10 days before the effective date of cancellation if we cancel for your non payment of premium; or

(2)   30 days before the effective date of cancellation if we cancel for any other reason.

**g.**   If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

### 3.   No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### 4.   Policy Period, Coverage Territory

Under this form:

**a.**   We cover loss or damage commencing:

(1)   During the policy period shown in the Declarations; and

(2)   Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

But we do not cover loss or damage that is also covered by a preceding policy.

**b.**   The coverage territory is:

(1)   The United States of America (including its territories and possessions);

(2)   Puerto Rico; and

(3)   Canada.

### 5.   Additional Conditions

The following conditions apply to paragraph **A.5.u.**, Forgery Additional Coverage:

**a.**   We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**b.**   You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**c.**   The Coverage Territory is revised to cover loss you sustain anywhere in the world.

**Exhibit 1 - 000086**

© 2002, The Hartford

Form SS 00 07 10 02

## G. PROPERTY DEFINITIONS

1. "Computer" means a programmable electronic device that can store, retrieve and process "data".

2. "Computer Equipment" means "computers", "peripheral devices", "media", and manuals that are purchased to be used in conjunction with hardware and "software".

3. "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

4. "Data" means information or facts stored in a "computers" memory, on "software" or on "media".

5. "Finished Stock" means stock you have manufactured.

   "Finished Stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

6. "Manager" means a person serving in a directorial capacity for a limited liability company.

7. "Media" means the magnetic material used solely with the "computer" or "peripheral device" upon which "software" or "data" is stored, such as tapes or disks.

8. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

9. "Money" means:

   a. Currency, coins and bank notes whether or not in current use; and

   b. Travelers checks, registered checks and money orders held for sale to the public.

10. "Operations" means the type of your business activities occurring at the "scheduled premises" and tenantability of the "scheduled premises".

11. "Period of Restoration" means the period of time that:

    a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the "scheduled premises", and

    b. Ends on the date when the property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

    "Period of Restoration" does not include any increased period required due to enforcement of any law that:

    a. Regulates the construction, use or repair, or required the tearing down of any property; or

    b. Regulates the prevention, control, repair, clean up or restoration of environmental damage.

       The expiration date of this policy will not cut short the "period of restoration".

12. "Peripheral Device" means any physical unit used to operate the "computer' that cannot be used for purposes other than as part of the computers system, such as tape or disk drives, printers, or modems.

13. "Perishable Stock" means personal property:

    a. Maintained under controlled conditions for its preservation; and

    b. Susceptible to loss or damage if the controlled conditions change.

14. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

15. "Scheduled Premises" means any premises listed by location address in the Scheduled Premises section of the Declarations.

16. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets except Lottery Tickets, revenue and other non-postage stamps whether or not in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue;

    but does not include "money."

17. "Software" means instructions or programs that are stored on "media" and which instruct the hardware as to how to process "data".

18. "Specified Causes of Loss" means the following:

    Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the

**Exhibit 1 – 000087**

**Page 21 of 22**

© 2002, The Hartford

**SPECIAL PROPERTY COVERAGE FORM**

action of water on limestone or dolomite. It does not include the cost of filling sinkholes.

**b.** Falling objects does not include loss of or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

**19.** "Suspension" means:

**a.** The partial or complete cessation of your business activities; and

**b.** That a part or all of the "scheduled premises" is rendered untenantable as a result of a covered cause of loss.

**20.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" and "securities", "data" and "software" or the materials on which the "data" and "software" is recorded.

Exhibit 1 – 000088

Form SS 00 07 10 02

© 2002, The Hartford

# BUSINESS LIABILITY COVERAGE FORM

Exhibit 1 – 000089

# QUICK REFERENCE
# BUSINESS LIABILITY COVERAGE FORM
# READ YOUR POLICY CAREFULLY

**BUSINESS LIABILITY COVERAGE FORM**                     **Beginning on Page**

**A.   COVERAGES**                                                    1
       Business Liability                                             1
       Medical Expenses                                              1
       Professional Services Coverages                               2
       Incidental Malpractice Coverage                               2
       Coverage Extension - Supplementary Payments                   3

**B.   EXCLUSIONS**                                                   4

**C.   WHO IS AN INSURED**                                            9

**D.   LIABILITY AND MEDICAL EXPENSES**
**      LIMITS OF INSURANCE**                                        12

**E.   LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**           13

       **1.**   Bankruptcy                                           13

       **2.**   Duties in The Event of Occurrence, Claim or Suit     13

       **3.**   Financial Responsibility Laws                        14

       **4.**   Legal Action Against Us                              14

       **5.**   Separation of Insureds                               14

       **6.**   Unintentional Failure To Disclose Hazards            14

       **7.**   Other Insurance – Primary Additional Insured         14

**F.   OPTIONAL COVERAGES**                                          15

       Additional Insureds                                           15

**G.   LIABILITY AND MEDICAL EXPENSES DEFINITIONS**                  17

**Exhibit 1 - 000090**



# BUSINESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the stock insurance company member of THE HARTFORD providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **C.** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** - Liability And Medical Expenses Definitions.

In consideration of the payment of the premium when due, and:

**a.** In reliance upon the statements made in the Declarations; and

**b.** Subject to the Limits Of Insurance, Exclusions, Definitions, Conditions and all other terms of this policy, including those modified, replaced by or added by endorsements we issue forming a part of this policy,

we agree with you as follows:

## A. COVERAGES

1. **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

   **Insuring Agreement**

   **a.** We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

   We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **D.** - Liability And Medical Expenses Limits Of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses to which this insurance applies.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

   **b.** This insurance applies to:

   **(1)** "Bodily injury" and "property damage" only if:

   **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   **(b)** The "bodily injury" or "property damage" occurs during the policy period.

   **(2)** "Personal and advertising injury" caused by an offense arising out of your business, but only if the offense is committed in the "coverage territory" during the policy period.

   **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **MEDICAL EXPENSES**

   **Insuring Agreement**

   **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

**Exhibit 1 - 000091**

© 2001, The Hartford

**BUSINESS LIABILITY COVERAGE FORM**

    **(3)** Because of your operations; provided that:

      **(a)** The accident takes place in the "coverage territory" and during the policy period;

      **(b)** The expenses are incurred and reported to us within three years of the date of the accident; and

      **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    **(1)** First aid administered at the time of an accident;

    **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**3. PROFESSIONAL SERVICES COVERAGES**

When your operations include:

**a.** Optical or hearing aid establishments, Exclusion **j. (7)** in Section **B. - EXCLUSIONS** does not apply.

**b.** Retail druggist or drugstore, Exclusion **j. (10)** in Section **B. - EXCLUSIONS** does not apply.

**c.** Funeral director or funeral parlors, the following professional services coverage is added:

    **(1)** The Business Liability Coverage applies to damages arising out of professional services by you or your "employees" in the course of your mortician or funeral parlor business. Subject to the Limits of Insurance stated in Section **D.** of this form, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages for "bodily injury" including mental anguish, and "property damage" because of any:

      **(a)** Professional malpractice, error or omission in the

        **(i)** Removal;

        **(ii)** Handling;

        **(iii)** Disposition;

        **(iv)** Cremation;

        **(v)** Burial;

        **(vi)** Embalming; or

        **(vii)** Disinterment, of any "deceased human body";

        **(viii)** Conduct of any memorial service even though no "deceased human body" actually be present; and

        **(ix)** Injury to, destruction of or interference with the right of burial of a "deceased human body".

      **(b)** Professional service by any insured as a member of a:

        **(i)** Formal accreditation board; or

        **(ii)** A similar professional board or committee.

    **(2)** This insurance also applies to damages for "property damage" caused by an "occurrence" to:

      **(a)** Urns;

      **(b)** Caskets, linings or fittings;

      **(c)** Casket cases;

      **(d)** Crypts or mausoleums; or

      **(e)** Other facilities belonging to others that are in the care, custody or control of the insured and used for the purpose of burying or caring for a "deceased human body".

    **(3)** Only Exclusions **d., e., f.** and **k.** in Section **B. - EXCLUSIONS** apply to this coverage.

    **(4) Additional Definition**

"Deceased human body" includes any part of a human body severed therefrom and ashes of a deceased human body after legal cremation.

**4. INCIDENTAL MALPRACTICE COVERAGE**

**a.** The definition of "bodily injury" in Section **G. - LIABILITY AND MEDICAL EXPENSES DEFINITIONS** is amended to include injury arising out of the rendering or failure to render medical or paramedical services to persons by any physician, dentist, nurse, emergency medical technician or paramedic who is employed by you to provide such services.

**Exhibit 1 – 000092**

Form SS 00 08 04 01

b. Paragraph **2.a.(1)(d)** in Section **C.** - WHO IS AN INSURED does not apply to nurses, emergency medical technicians or paramedics referred to in **a.** above.

c. Paragraph **(1)** of Exclusion **e.** in Section **B.** - EXCLUSIONS does not apply to injury to the emotions or reputation of a person arising out of such services.

This Incidental Malpractice Coverage does not apply if you are engaged in the business or occupation of providing any services referred to in **a.** above.

## COVERAGE EXTENSION - SUPPLEMENTARY PAYMENTS

1. We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation of the claim or defense of the "suit", including actual loss of earnings up to $500 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   Any amounts paid under **a.** through **g.** above will not reduce the Limits of Insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

   So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

**Exhibit 1 – 000093**

Not withstanding the provisions of paragraph **1.b.(b)** of Section **B.** – EXCLUSIONS, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

## B. EXCLUSIONS

**1. Applicable to Business Liability Coverage**

This insurance does not apply to:

**a. Expected or Intended Injury**

**(1)** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

**(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

**b. Contractual Liability**

**(1)** "Bodily injury" or "property damage"; or

**(2)** "Personal and advertising injury"

for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages because of:

**(a)** "Bodily injury", "property damage" or "personal and advertising injury" that the insured would have in the absence of the contract or agreement; or

**(b)** "Bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the

execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for an indemnitee are deemed to be damages because of "bodily injury" or "property damage" provided:

**(i)** Liability to such indemnitee for, or for the cost of, that indemnitee's defense has also been assumed in the same "insured contract", and

**(ii)** Such attorney fees and litigation expenses are for defense of that indemnitee against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business, or

**Exhibit 1 - 000094**

Form SS 00 08 04 01

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**Exhibit 1 – 000095**

**Page 5 of 20**

Form SS 00 08 04 01

**BUSINESS LIABILITY COVERAGE FORM**

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or

rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** An aircraft that is:

**(a)** Hired, chartered or loaned with a paid crew; but

**(b)** Not owned by any insured;

**(2)** A watercraft while ashore on premises you own or rent; or

**(3)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons for a charge.

This provision **(3)** applies to any person who, with your expressed or implied consent either uses or is responsible for use of a watercraft.

Provisions under paragraphs **(1)** and **(3)** of this Exclusion **g.** do not apply if the insured has any other insurance for "bodily injury" or "property damage" liability that would also be covered under those provisions, whether the other insurance is primary, excess, contingent or on any other basis. In that case, provisions **(1)** and **(3)** above do not provide any insurance.

**(4)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(5)** Liability assumed under any "insured contract" for the ownership, maintenance, or use of aircraft or watercraft; or

**(6)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraphs **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

**Exhibit 1 - 000096**
Form SS 00 08 04 01

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incidental to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;

**(3)** Supervisory, inspection, architectural or engineering activities;

**(4)** Medical, surgical, dental, x-ray or nursing services or treatment;

**(5)** Any health service or treatment;

**(6)** Any cosmetic or tonsorial service or treatment;

**(7)** Optical or hearing aid services including prescribing, preparation, fitting, demonstration, or distribution of ophthalmic products or hearing aid devices;

**(8)** Optometric services including but not limited to examination of the eyes and prescribing of ophthalmic lenses and exercises;

**(9)** Ear piercing services;

**(10)** Services in the practice of pharmacy.

**(11)** Computer consulting, design or programming services, including web site design.

Paragraphs **(4)** and **(5)** of this exclusion do not apply to Incidental Malpractice coverage afforded under paragraph **4.** in Section **A. - COVERAGE.**

**k. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Section **D. - LIMITS OF INSURANCE.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to the use of elevators.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(4)** of this exclusion does not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

**BUSINESS LIABILITY COVERAGE FORM**

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l.  Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.  Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**  "Your product";

**(2)**  "Your work"; or

**(3)**  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.  "Personal and Advertising Injury":**

**(1)**  Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)**  Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

**(3)**  Arising out of a criminal act committed by or at the direction of the insured;

**(4)**  Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

**(5)**  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(6)**  Arising out of the wrong description of the price of goods, products or services;

**(7)**  Arising out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of

**(a)** Copyright;

**(b)** Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

**(c)** Title of any literary or artistic work;

**(8)**  Arising out of an offense committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of web sites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to paragraphs **a.**, **b.** and **c.** under the definition of "personal and advertising injury" in Section **G. – LIABILITY AND MEDICAL EXPENSES DEFINITIONS.**

For the purposes of this exclusion, placing an "advertisement" for or linking to others on your web site, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**Exhibit 1 – 000098**
**Form SS 00 08 04 01**

(9) Arising out of an electronic chat room or bulletin board you host, own, or over which you exercise control;

(10) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers;

(11) Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

(12) Arising out of:

(a) An "advertisement" for others on your web site;

(b) Placing a link to a web site of others on your web site; or

(c) Content from a web site of others displayed within a frame or border on your web site. Content includes information, code, sounds, text, graphics or images;

(13) Arising out of a violation of any anti-trust law; or

(14) Arising out of the fluctuation in price or value of any stocks, bonds or other securities.

Exclusions **c.** through **i., k., l., m. and n.** do not apply to damage by fire, lightning or explosion to premises rented to you. A separate Limit of Insurance applies to this coverage as described in Section **D. - LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE.**

2. **Applicable to Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included with the "products-completed operations hazard".

g. **Business Liability Exclusions**

Excluded under Business Liability Coverage.

h. **War**

Due to war, whether or not declared, or any act or condition incidental to war. War includes civil war, insurrection, rebellion or revolution.

## C. WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your manager.

d. An organization other than a partnership or joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

**BUSINESS LIABILITY COVERAGE FORM**

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

**e.** Any "employee" of the insured while acting in the scope of his/her duties as a retail pharmacist, or optician or optometrist.

**f. Additional Insureds by Contract, Agreement or Permit**

Any person or organization with whom you agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this Business Liability Coverage Form, but only with respect to your operations, "your work" or facilities owned or used by you.

However, coverage under this provision does not apply:

**(1)** Unless the written contract or agreement has been executed or a permit has been issued prior to the "bodily injury", "property damage" or "personal and advertising injury".

**(2)** To any person or organization included as an insured under provision **g.** (Broad Form Vendors).

**(3)** To any other person or organization shown in the Declarations as an Additional Insured.

**Coverage under this provision includes the following:**

**(1)** When an **engineer**, **architect** or **surveyor** becomes an insured under provision **2.f.**, the following additional exclusion applies:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you including:

**(a)** The preparing, approving, or failure to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; and

**(b)** Supervisory, inspection, architectural or engineering activities.

**(2)** When a **lessor of leased equipment** becomes an insured under provision **2.f.**, the following additional exclusions apply:

**Exhibit 1 – 000100**

Form SS 00 08 04 01

**(a)** To any "occurrence" which takes place after the equipment lease expires; or

**(b)** To "bodily injury" or "property damage" arising out of the sole negligence of the lessor.

**(3)** When **owners or other interests from whom land has been leased** become an insured under provision **2.f.**, the following additional exclusions apply:

**(a)** Any "occurrence" which takes place after you cease to lease that land; or

**(b)** Structural alterations, new construction or demolition operations performed by or on behalf of the owners or other interests from whom land has been leased.

**(4)** When **managers or lessors of premises** become an insured under provision **2.f.**, the following exclusions apply:

**(a)** Any "occurrence" which takes place after you cease to be a tenant in that premises; or

**(b)** Structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessors of the premises.

**g. Additional Insured - Broad Form Vendors**

Any person or organization with whom you agreed, because of a written contract or agreement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

**(1)** The insurance afforded the vendor does not apply to:

**(a)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**(b)** Any express warranty unauthorized by you;

**(c)** Any physical or chemical change in product made intentionally by the vendor;

**(d)** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(e)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**(f)** Demonstration, installation, servicing or repair operations except such operations performed at the vendor's premises in connection with the sale of the product;

**(g)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

**(2)** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**(3)** This provision **g.** does not apply to any vendor included as an insured by an endorsement issued by us and made a part of this Coverage Part.

**(4)** This provision **g.** does not apply if "bodily injury" or "property damage" included within the "products-completed operation hazard" is excluded either by the provisions of the Coverage Part or by endorsement.

**h. Broad Form Named Insured**

Any subsidiary and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

**Exhibit 1 - 000101**

**BUSINESS LIABILITY COVERAGE FORM**

The insurance afforded herein for any subsidiary not shown in the Declarations as a named insured does not apply to injury or damage with respect to which an insured under this insurance is also an insured under another policy or would be an insured under such policy but for its termination or upon the exhaustion of its limits of insurance.

**i.  Newly Formed or Acquired Organizations**

Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(2)** Coverage under this provision does not apply to:

**(a)** "Bodily injury" or "property damage" that occurred; or

**(b)** "Personal and advertising injury" arising out of an offense

committed before you acquired or formed the organization.

**j.  Additional Insured – Volunteer Workers**

Your "volunteer workers", but only while performing duties related to the conduct of your business.

**(1)** However, no "volunteer workers" are insureds for:

**(a)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of rendering or the failure to render professional services.

**(b)** "Bodily injury" or "personal and advertising injury":

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), your other "volunteer workers" or to your "employees" arising out of and in the course of their duties for you;

**(ii)** To the spouse, child, parent, brother or sister of your "volunteer workers" or your "employees" as a consequence of paragraph **(1) (a)** above; or

**(c)** "Property damage" to property:

**(i)** Owned, occupied or used by,

**(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your other "volunteer workers", your "employees", your partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

**3.  Additional Insured - Mobile Equipment**

With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**Exhibit 1 - 000102**
Form SS 00 08 04 01

**2. Aggregate Limits**

The most we will pay for:

**a.** Injury or damages under the "products-completed operations hazard" arising from all "occurrences" during the policy period is the Products-Completed Operations Aggregate Limit shown in the Declarations.

**b.** All other injury or damages, including medical expenses, arising from all "occurrences" during the policy period is the General Aggregate Limit shown in the Declarations.

This General Aggregate Limit applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway or right-of-way of a railroad.

This aggregate limit does not apply to "property damage" to premises rented to you arising out of fire, lightning or explosion.

**3.** Subject to item **2.** above, the most we will pay for the sum of all damages because of all "bodily injury", "property damage" and medical expenses arising out of any one "occurrence" is the Liability and Medical Expenses Limit shown in the Declarations.

The most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

**4.** Subject to item **2.** above, the most we will pay for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization is the Personal and Advertising Injury Limit shown in the Declarations.

**5.** The most we will pay under Business Liability Coverage for damages because of "property damage" to premises rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner, is the Damage To Premises Rented To You Limit shown in the Declarations.

The Damage to Premises Rented To You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of the three.

If more than one limit of insurance under this policy and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this policy and the endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit". However, this paragraph does not apply to the Medical Expenses limit set forth in paragraph **3.** above.

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under the policy.

**2. Duties in The Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified promptly of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place; and

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

This condition applies only when the "occurrence" or offense is known to:

**(1)** You, if you are an individual;

**(2)** A partner, if you are a partnership; or

**(3)** A manager if you are a limited liability company;

**(4)** An "executive officer" or insurance manager, if you are a corporation; or

**(5)** Any elected or appointed official, if you are a political subdivision or public entity.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**Exhibit 1 - 000103**

Form SS 00 08 04 01

**Page 13 of 20**

**BUSINESS LIABILITY COVERAGE FORM**

**(2)** Notify us as soon as practicable.

You must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

But this condition will not be considered breached unless the breach occurs after such claim or "suit" is known to anyone listed in **2 .a. (1)** through **(5)** above.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Financial Responsibility Laws**

**a.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

**b.** With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this coverage form:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this coverage form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom a claim is made or "suit" is brought.

**6. Unintentional Failure to Disclose Hazards**

It is agreed that based on our reliance on your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we shall not deny any coverage under this Coverage Form because of such failure.

**7. Other Insurance  - Primary Additional Insured**

If the written contract or agreement or permit requires this insurance to be primary for any person or organization with whom you agree to include in WHO IS AN INSURED, this Other Insurance Provision is applicable.

If other valid and collectible insurance is available for a loss we cover under this Business Liability Coverage Form, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary.  We will not seek contributions from other insurance available to the person or organization with whom you agree to include in WHO IS AN INSURED, except when **b.** applies.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**Exhibit 1 – 000104**

**Form SS 00 08 04 01**

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **A. – Coverages.**

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

This provision provides such insurance as is afforded under this coverage form, but only with respect to your operations, "your work" or facilities owned or used by you.

## F. OPTIONAL COVERAGES

If listed or shown as applicable in the Declarations, one or more of the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to Business Liability Coverage in this policy, except as provided below:

**1. Additional Insured - Designated Person or Organization**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person or organization shown in the Declarations, but only with respect to liability arising out of your operations or premises owned by or rented to you.

**2. Additional Insured - Managers or Lessors of Premises**

**a.** WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) shown in the Declarations; but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Declarations and subject to the following additional exclusions:

**b.** Additional Exclusions

This insurance does not apply to:

**(1)** Any "occurrence" which takes place after you cease to be a tenant in that premises; or

**(2)** Structural alterations, new construction or demolition operations performed by or for that person or organization.

**3. Additional Insured - Grantor of Franchise**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) shown in the Declarations, but only with respect to their liability as grantor of franchise to you.

**4. Additional Insured - Lessor of Leased Equipment**

**a.** WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) shown in the Declarations, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s).

**b.** Additional Exclusions:

This insurance does not apply:

**(1)** To any "occurrence" which takes place after the equipment lease expires; or

**(2)** To "bodily injury" or "property damage" arising out of the sole negligence of the lessor.

**5. Additional Insured - Owners or Other Interests From Whom Land Has Been Leased**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person or organization shown in the Declarations, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you and shown in the Declarations and subject to the following additional exclusion:

This insurance does not apply to:

**a.** Any "occurrence" that takes place after you cease to lease that land; or

**b.** Structural alterations, new construction or demolition operations performed by or for the person or organization shown in the Declarations.

**6. Additional Insured - State or Political Subdivision - Permits**

**a.** WHO IS AN INSURED under Section **C.** is amended to include as an insured the state or political subdivision shown in the Declarations, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

**b.** Additional Exclusions

This insurance does not apply to:

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or political subdivision; or

**(2)** "Bodily injury" or "property damage" included in the "product-completed operations" hazard.

**7. Additional Insured - Vendors**

**a.** WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) (referred to below as vendor) shown in the Declarations, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

**b.** Additional Exclusions

**(1)** The insurance afforded the vendor does not apply to:

**(a)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**(b)** Any express warranty unauthorized by you;

**(c)** Any physical or chemical change in the product made intentionally by the vendor;

**(d)** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(e)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**(f)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(g)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

**(2)** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**(3)** This Provision **7.** does not apply to any vendor included as an insured by an endorsement issued by us and made a part of this Coverage Form.

**Exhibit 1 – 000106**
Form SS 00 08 04 01

**(4)** This Provision **7.** does not apply if "bodily injury" or "property damage" included within the "products-completed operations hazard" is excluded either by the provisions of this Coverage Form or by endorsement.

**8. Additional Insured – Controlling Interest**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) shown in the Declarations but only with respect to their liability arising out of:

**a.** Their financial control of you; or

**b.** Premises they own, maintain or control while you lease or occupy these premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**9. Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization.**

WHO IS AN INSURED under Section **C.** is amended to include as insured the person or organization shown in the Declarations, but only with respect to liability arising out of your ongoing operations performed for that insured.

**10. Additional Insured – Co-Owner of Insured Premises**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or Organization(s) shown in the Declarations, but only with respect to their liability as co-owner of the premises shown in the Declarations.

## G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS

**1.** "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

**a. (1)** Radio;

**(2)** Television;

**(3)** Billboard;

**(4)** Magazine;

**(5)** Newspaper;

**b.** The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or

**c.** Any other publication that is given widespread public distribution.

However, "advertisement" does not include:

**a.** The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

**b.** An interactive conversation between or among persons through a computer network.

**2.** "Advertising idea" means any idea for an "advertisement".

**3.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

**5.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above;

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

**6.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**7.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**Exhibit 1 - 000107**

8. "Hostile fire" means one which becomes un-controllable or breaks out from where it was intended to be.

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement:

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement;

    d. Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement; or

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of municipality in connection with work performed for a municipality) under which you assume the liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

    Paragraph f. does not include that part of any contract or agreement

    (1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

        (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    (2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (1) above and supervisory, inspection, architectural or engineering activities.

11. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

12. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

13. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, on which are permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

**Exhibit 1 - 000108**
Form SS 00 08 04 01

e. Vehicles not described in **a.**, **b.**, **c.**, or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a.**, **b.**, **c.**, or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

Paragraphs **(a)**, **(b)** and **(c)** above do not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. "Personal and advertising Injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral, written or electronic publication of material that violates a person's right of privacy;

f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

(1) Not done intentionally by or at the direction of:

(a) The insured; or

(b) Any executive officer, director, stockholder, partner or member of the insured; and

(2) Not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured.

This paragraph **h.** does not apply in the States of Nebraska and Kansas.

16. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. "Products-completed operations hazard";

a. Includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

**Exhibit 1 - 000109**

Form SS 00 08 04 01

**Page 19 of 20**

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

**18.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

Computerized or electronically stored data, programs or software are not tangible property.

**19.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**20.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**21.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**22.** "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

**23.** "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

**Exhibit 1 - 000110**



# BUILDING STRETCH SUMMARY

**SUMMARY OF COVERAGE LIMITS**

This is a summary of the Coverages and the Limits of Insurance provided by the building BUILDING STRETCH Coverage form SS 04 52 which is included in this policy. No coverage is provided by this summary. Refer to coverage form SS 04 52 to determine the scope of your insurance protection.

| Coverage | Limit |
| --- | --- |
| Backup of Sewer or Drain Water Damage | Included |
| Claims Expense | $ 5,000 |
| Debris Removal | $ 25,000 |
| Lessor's – Tenant Move Back Expenses | $ 10,000 |
| Lessor's – Lease Cancellation | $ 10,000 |
| Newly Acquired or Constructed Property - Building | $1,000,000 |
| Newly Acquired or Constructed<br>- Business Personal Property | $ 500,000 |
| Off Premises Service – Direct Damage | $ 10,000 |
| Ordinance or Law | |
| - Undamaged Part | Included |
| - Demolition Cost | $ 50,000 |
| - Increased Cost of Construction | $ 50,000 |
| Outdoor Property ( $1000 limit per item) | $25,000 aggregate |
| Outdoor Signs | Included |

The following changes apply only if Business Income and Extra Expense are covered under this policy.

| | |
| --- | --- |
| Business Income Extension for Off Premises Service | $ 25,000 |
| Business Income at Newly Acquired Premises | $ 250,000 |

Exhibit 1 - 000111

© 2000, The Hartford

# STRETCH PLUS FOR BUSINESS SERVICES SUMMARY

**SUMMARY OF COVERAGE LIMITS**

This is a summary of the Coverages and the Limits of Insurance provided by the STRETCH PLUS FOR BUSINESS SERVICES SUMMARY form SS 40 05 which is included in this policy.  No coverage is provided by this summary. Refer to coverage form SS 40 05 to determine the scope of your insurance protection.

| Coverage | Limit |
|---|---|
| Accounts Receivable | $ 100,000 |
| Backup of Sewer or Drain Water Damage | Included |
| Brands and Labels | Included |
| Claims Expense | $ 5,000 |
| Computer and Media | $50,000 |
| Consequential Loss to Stock | Included |
| Debris Removal | $ 25,000 |
| Employee Dishonesty (including ERISA) | $ 25,000 |
| Fine Arts | $ 50,000 |
| Fire Department Service Charge | $ 25,000 |
| Forgery | $ 25,000 |
| Ordinance or Law | |
|      Undamaged Part | Included |
|      Demolition Cost | $25,000 |
|      Increased Cost | $25,000 |
| Newly Acquired or Constructed Property - Building | $1,000,000 |
| Newly Acquired or Constructed - Business Personal Property | $ 500,000 |
| Off Premises Service – Direct Damage | $ 25,000 |
| Outdoor Property ( $1000 limit per item) | $ 25,000 aggregate |
| Outdoor Signs | Included |
| Personal Effects | $ 50,000 |
| Personal Property of Others | $ 50,000 |
| Precious Metals Exception | $ 25,000 |
| Property at Other Premises | $ 50,000 |
| Property Off Premises | $ 50,000 |
| Salespersons' Samples | $ 5,000 |
| Temperature Change | $ 25,000 |
| Theft of Molds | BPP Limit |
| Transit Coverage | $ 25,000 |
| Underground Water Storage | $ 10,000 |
| Valuable Papers and Records | $ 100,000 |
| Valuation Changes | Included |

The following changes apply only if Business Income and Extra Expense are covered under this policy.

| | |
|---|---|
| Business Income Extension for Off Premises Service | $ 50,000 |
| Business Income at Newly Acquired Premises | $ 250,000 |
| Business Income – Extended | 120 Days |
| Dependent Properties – Anchor Stores and Major Suppliers | $ 50,000 |



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES

This endorsement modifies insurance provided under the following:

**COMMON POLICY CONDITIONS**
**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**
**BUSINESS LIABILITY COVERAGE FORM**

**A.** The following is added to the:

   **1.** LOSS PAYMENT Condition; and

   **2.** MORTGAGE HOLDERS Condition:

     If a municipality has elected to apply the provisions of Michigan Public Act 495 of 1980, a part of our payment for fire or explosion loss or damage to your covered real property in that municipality will be withheld if the loss or damage is subject to the provisions of the Act. The withheld amount will be paid either to the municipality or to you and the mortgage holder, if any, according to the provisions of Public Act 495.  We will notify you, any mortgage holder and the municipality of any loss subject to the provisions of Public Act 495.

**B.** The paragraph relating to prejudgment interest in the Business Liability Coverage Form is replaced by the following:

   Prejudgment interest awarded against the insured on that part of the judgment we pay.

**C.** The following apply to the LIABILITY AND MEDICAL EXPENSES GENERAL CONDITION - Duties in the Event of Occurrence, Offense, Claim or Suit of the Business Liability Coverage Form:

   **1.** Paragraph **E.2.b.** is replaced by the following:

     **b.** If a claim is made or "suit" is brought against any insured, you must:

       **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

       **(2)** Notify us as soon as practicable.

       You must see to it that we receive notice of the claim or "suit" as soon as practicable.
       Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

   **2.** Paragraph **E.2.d.** is replaced by the following:

     **d.** Failure to:

       **(1)** Give us notice of an "occurrence", offense, claim or "suit" as soon as practicable; or

       **(2)** Immediately send us copies of demands, notices, summons or legal papers received in connection with the claim or "suit";

     shall not invalidate the claim made by you if it shall be shown that it was not reasonably possible to give us notice as soon as practicable or to immediately send us copies, and that you gave us notice and sent us copies as soon as was reasonably possible.

   **3.** The following is added to paragraph **E.2.:**

     **e.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Form SS 01 31 07 01

© 2001, The Hartford

Exhibit 1 - 000113
Page 1 of 2

4. The **Appraisal** Loss Condition in the Standard Property Coverage Form and in the Special Property Coverage form is replaced by the following:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and independent appraiser.   The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.

The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Exhibit 1 ss 00 34 01 01



# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage is subject to the provisions applicable to Standard or Special Property Coverage Form including the deductible, except as provided below.

**A. Ordinance or Law - Undamaged Part**

If a Covered Cause of Loss occurs to covered Building property shown in the Declarations, we will pay for loss to the undamaged portion of the Building caused by enforcement of any ordinance or law that:

1. Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

2. Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

3. Is in force at the time of loss.

This coverage is included within the Limit of Insurance applicable to the covered Building property shown in the Declarations. This is not additional insurance.

**B. Demolition Cost**

If a Covered Cause of Loss occurs to covered Building property shown in the Declarations with a Limit of Insurance for Demolition Cost, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

**C. Increased Cost of Construction**

If a Covered Cause of Loss occurs to covered Building property shown in the Declarations with a Limit of Insurance for Increased Cost of Construction, we will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

However, we will not pay for the Increased Cost of Construction if the Building is not repaired or replaced.

**D. Additional Exclusions:**

The following additional exclusions apply to the coverage afforded by this endorsement. We will not pay for:

1. The enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread of any activity of "fungi", wet or dry rot, bacteria or virus; or

2. The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot, bacteria or virus.

3. Loss caused by, resulting from, contributed to or aggravated by earthquake or volcanic eruption.

4. Loss due to an ordinance or law that:

    a. You were required to comply with before the loss even if the building was undamaged; and

    b. You failed to comply with.

**E. Applicable to Ordinance or Law - Undamaged Part:**

1. If Replacement Cost applies and the property is repaired or replaced on the same or another premises, we will not pay more for loss of or damage to designated Building property, including loss caused by enforcement of an ordinance or law, than the lesser of:

    a. The amount you actually spend to repair, rebuild or reconstruct the Building, but not for

Form SS 04 15 10 02

Exhibit 1 – 000115
Page 1 of 2

© 2002, The Hartford

more than the amount it would cost to restore the Building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

   **b.** The Limit of Insurance applicable to the covered Building property.

**2.** If the Building(s) Full Value Endorsement applies and the property is repaired or replaced, on the same or another premises, we will not pay more for loss of or damage to designated Building property, including loss caused by enforcement of an ordinance or law, than the lesser of:

   **a.** The amount you actually spend to repair, rebuild or reconstruct the Building, but not for more than the amount it would cost to restore the Building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

   **b.** The amount payable under the Building(s) Full Value Endorsement.

**3.** **a.** If Replacement Cost or the Building(s) Full Value Endorsement applies and the property is not repaired or replaced; or

   **b.** If actual cash value applies;

We will not pay more for loss or damage to designated Building property, including loss caused by enforcement of an ordinance or law, than the lesser of:

   **(1)** The actual cash value of the Building at the time of loss; or

   **(2)** The Limit of Insurance applicable to the covered Building property.

**F. Applicable to Demolition Cost:**

We will not pay more than the lesser of:

**1.** The amount actually spent to demolish and clear the site of the described premises; or

**2.** The applicable Demolition Cost Limit of Insurance shown in the Declarations.

**G. Applicable to Increased Cost of Construction:**

**1.** We will not pay under Increased Cost of Construction:

   **a.** Until the property is actually repaired or replaced, at the same or another premises; and

   **b.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**2.** If the Building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay is the lesser of:

   **a.** The increased cost of construction at the same premises; or

   **b.** The applicable Increased Cost of Construction Limit of Insurance shown in the Declarations.

**3.** If the ordinance or law requires relocation to another premises, the most we will pay is the lesser of:

   **a.** The increased cost of construction at the new premises; or

   **b.** The applicable Increased Cost of Construction Limit of Insurance shown in the Declarations.

**H.** The following definition is added to Paragraph **G.,** Property Definitions:

**1.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Exhibit 1 SS 04 45 10 02

©2002, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME EXTENSION FOR OFF-PREMISES UTILITY SERVICES

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This insurance applies only when Business Income and Extra Expense Optional Coverage is shown in the Declarations as applicable.  Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. BUSINESS INCOME EXTENSION FOR OFF-PREMISES UTILITY SERVICES**

This Coverage Extension applies only when the Business Income Additional Coverage is included in this policy.

We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on described premises:

1. "Water Supply Services";

2. "Communication Supply Services"; or

3. "Power Supply Services".

**B. WAITING PERIOD**

We will only pay for loss you sustain after the first 8 consecutive hours following the direct physical loss of or damage to the off-premises property to which this endorsement applies. We will not pay for any reduction in business income or extra expense after electricity, steam or gas has been restored to the described premises.

**C. LIMIT OF INSURANCE**

The most we will pay for loss under this extension is $25,000 at each described premises.

**D. ADDITIONAL DEFINITIONS**

1. **"Water Supply Services"**, meaning the following types of property supplying water to the describes premises:

   **a.** Pumping stations; and

   **b.** Water mains.

2. **"Communication Supply Services"**, meaning property supplying communication services, including telephone, radio, microwave or television services, including overhead transmission lines to the described premises, such as:

   **a.** Communication transmission lines, including optic fiber transmission lines;

   **b.** Coaxial cables; and

   **c.** Microwave radio relays except satellites.

3. **"Power Supply Services"**, meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the described premises:

   **a.** Utility generating plants;

   **b.** Switching stations;

   **c.** Substations;

   **d.** Transformers; and

   **e.** Transmission Lines.

**Form SS 04 19 06 96**  Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1996  **Exhibit 1 – 000117**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRANSIT COVERAGE

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement the terms and conditions of the policy and of the Special Property Coverage Form apply to the insurance stated below.

**A.** With respect to this Transit Coverage only, the following changes are made to the Special Property Coverage Form:

1. Under **A.4.** Limitations, subparagraph **e.(3)** which limits coverage for patterns, dies, molds and forms, is deleted.

2. Under **B.** Exclusions

   **a.** Exclusions **1.b.** (Earth Movement) and **1.g.** (Water) do not apply to property in transit.

   **b.** Exclusions **2.e.** (Dishonesty) and **2.g.** (Exposed Property) do not apply to property in custody of a carrier for hire.

   **c.** Exclusion **2.f.** (False Pretense) does not apply to loss or damage caused by your good faith acceptance of false bills of lading or shipping receipts.

   **d.** The following Exclusion is added:

   We will not pay for loss or damage caused by or resulting from poor or insufficient packaging or packing.

**B. Transit Coverage**

1. The insurance that applies to your Business Personal Property and Personal Property of Others is extended to apply to shipments of that property while in transit at your risk, by motor vehicle, railroad car or aircraft between points within the Coverage Territory.  This includes property you have sold and your responsibility continues until it is delivered.

2. The Transit Coverage also applies to:

   **a. Expenses to Inspect, Repackage and Reship Damaged Shipments**

   The necessary additional expenses you incur to inspect, repackage and reship Covered Property which is damaged as a result of a Covered Cause of Loss.

   **b. Expenses to Protect Covered Property from Spoilage or Change in Temperature**

   The necessary additional expense you incur to temporarily store Covered Property in a temperature controlled environment in order to avoid or minimize loss or damage to such property from spoilage or change in temperature.  Such temporary storage must be made necessary by the sudden and accidental breakdown of heating or refrigeration unit(s) on transporting conveyances.

   This additional expense will not include:

   **(1)** Expenses to repair or replace heating or refrigeration unit(s);

   **(2)** Costs or penalties due to detention or delay of any vehicles, trailers, conveyances or containers; or

   **(3)** Costs for additional wages, room, board or meals.

   **c. F.O.B. Shipments**

   Outgoing shipments where the risk of loss or damage is transferred to the buyer when such property leaves your premises.

   You must use all reasonable means to collect the amount due you from the buyer before making a claim under this Transit Coverage.

**Exhibit 1 - 000118**

Form SS 04 30 03 00

Page 1 of 2

© 2000, The Hartford

We will not make payment until you grant us the right of recovery against the buyer.

**d.  Loading and Unloading**

Shipments during loading or unloading and within 500 feet of any transporting conveyance.

**e.  Return Shipments**

Outgoing shipments which have been rejected by the consignee or are not deliverable, while:

**(1)** In due course of transit, being returned to you; or

**(2)** Up to 10 days after delivery or attempted delivery awaiting return shipment to you.

Payment under paragraphs **a., b., c., d. and e.** above will not increase the Transit Coverage Limit of Insurance.

**C.  Under this Transit Coverage, we will not pay for:**

**1.** Property in the care, custody or control of your salespersons.

**2.** Mail shipments in the custody of the U.S. Postal Service.

**3.** Property of Others for which you are responsible as a:

**a.** Carrier for hire; or

**b.** Carloader, consolidator, broker, freight forwarder, shipping association, or other arranger of transportation.

**4.** Property in or on a motor vehicle you own, lease or operate.

**D.  Limit of Insurance**

The Limit of Insurance shown in the Declarations for Transit Coverage is the most we will pay for all loss or damage in any one occurrence to property insured under this endorsement.

**E.  Deductible**

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $250. We will then pay the amount of loss or damage in excess of $250 up to the applicable Limit of Insurance.

**F.  Additional Conditions**

**1.** Valuation

Property Loss Condition **E.6.** is deleted and replaced by the following:

**a.** Valuation

**(1)** Property You Own

The value of Covered Property will be the amount of invoice plus accrued charges, prepaid charges and charges since shipment; or

**(2)** In the absence of an invoice, the value of Covered Property will be its actual cash value, with proper deduction for depreciation, at the point of destination on the date of expected arrival.

**b.** Property of Others

The most we will pay for Covered Property owned by others is the lesser of:

**(1)** Your legal liability for direct physical loss or damage to such property; or

**(2)** What we would pay if you had owned the property.

**2.** Impairment of Rights of Recovery

We will not pay for loss or damage, if you impair our rights to recover damages from any carrier for hire. But you may accept from carriers for hire bills of lading, receipts or contracts of transportation which contain a limitation of value.

**Exhibit 1 - 000119**

Form SS 04 30 03 00



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

**A.** Under **B., EXCLUSIONS, 1. Applicable to Business Liability Coverage,** exclusion **g.** does not apply to any "auto" that is a "non-owned auto".

A "non-owned auto" is an "auto" you do not own including but not limited to:

**1.** An "auto" that you lease, hire, rent or borrow;

**2.** A customer's "auto" that is in your care, custody or control for service; and

**3.** An "employee's" "auto" while used in your business or personal affairs.

This does not include a long-term leased "auto" that you insure as an owned "auto" under any other auto liability insurance policy or a temporary substitute for an "auto" you own that is out of service because of its breakdown, repair, servicing or destruction.

This includes "autos" owned by your "employees" or partners or members of their households but only while used in your business or your personal affairs.

**B.** With respect to the operation of a "non-owned auto", **WHO IS AN INSURED** is replaced by the following:

The following are "insureds":

**a.** You.

**b.** Your "employee" while using with your permission:

(1) An "auto" you hire or borrow; or

(2) An "auto" you don't own, hire or borrow in your business or personal affairs; or

(3) An "auto" hired or rented by your "employee" on your behalf and at your direction.

**c.** Anyone else while using with your permission a "non-owned auto" except:

(1) The owner or anyone else from whom you hire or borrow a "non-owned auto".

(2) Someone using a "non-owned auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(3) Anyone other than your "employees", partners, a lessee or borrower or any of their "employees", while moving property to or from a "non-owned auto".

(4) A partner of yours for a "non-owned auto" owned by him or her or a member of his or her household.

**d.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**C.** With respect to the operation of a "non-owned auto":

**1.** **B. EXCLUSIONS, 1.e.** does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

**2.** **B. EXCLUSIONS, 1.f.** is replaced by the following:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto".

Form SS 04 38 06 01

**Exhibit 1 - 000120** Page 1 of 2

© 2001, The Hartford

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive, or dispose of such "pollutants"; and

**(2)** The "bodily injury" and "property damage" does not arise out of the operation of any equipment listed in paragraphs **13.b.** and **13.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**3.** Coverage does not apply to "bodily injury" to any fellow "employee" of the "insured" arising out of the operation of an "auto" owned by the "insured" in the course of the fellow "employee's" employment.

**4.** Coverage does not apply to "property damage" involving property owned or transported by the "insured" or in the "insured's" care, custody or control.

**D.** With respect to the operation of a "non-owned auto", the following additional conditions apply:

**1. OTHER INSURANCE**

**a.** Except for any liability assumed under an "insured contract" the insurance provided by this Coverage Form is excess over any other collectible insurance.

However, if your business is the selling, servicing, repairing, parking or storage of "autos", the insurance provided by this endorsement is primary when covered "bodily injury" or "property damage" arises out of the operation of a customer's "auto" by you or your "employee".

**b.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**2. TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

If the Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**Exhibit 1 - 000121**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ACCOUNTS RECEIVABLE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** When shown in the Declarations as applicable, the Limit of Insurance stated in paragraph **(1)** of the Additional Coverage entitled Accounts Receivable is replaced by the Limit of Insurance for Accounts Receivable shown in the Declarations. All other terms and conditions of Accounts Receivable Additional Coverage apply to this Optional Coverage.

**B.** With respect to this Optional Coverage, Coverage Extension **A.5.g.,** Property Off-Premises in the Standard Property Coverage Form and Coverage Extension **A.6.g.,** Property Off-Premises in the Special Property Coverage Form are replaced by the following:

The most we will pay for loss or damage under this Coverage Extension is 25% of the Limit of Insurance shown in the Declarations for Accounts Receivable but not more than $2,500.

**C. Limit of Insurance**

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Declarations for Accounts Receivable.

**D. Deductible**

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in paragraph **D.4.** of the Standard Property Coverage Form and the Special Property Coverage Form, whichever form applies to this policy. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**E. Additional Conditions**

**(1)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage the following method will be used:

**(a)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurred; and

**(b)** Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(2)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(a)** The amount of the accounts for which there is no loss or damage;

**(b)** The amount of the accounts that you are able to re-establish or collect;

**(c)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(d)** All unearned interest and service charges.

**Exhibit 1 - 000122**

Form SS 04 39 10 02

© 2002, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMPUTERS AND MEDIA

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A. COMPUTER EQUIPMENT**

1. We will pay for direct physical loss of or damage, to "computer equipment", subject to the Limit of Insurance shown in the Declarations for Computers And Media while anywhere within the policy territory, and while in transit, but only if:

   **a.** Owned by you; or

   **b.** Owned by others but in your care, custody and control regardless of whether you use it for personal or business needs.

2. "Computer Equipment" as used in this Optional Coverage means:

   **a.** "Computers";

   **b.** "Peripheral devices";

   **c.** "Media"; and

   **d.** Manuals that are purchased to be used in conjunction with hardware and "software".

3. "Computer Equipment" does not include:

   **a.** "Data" or "software".

   **b.** Source documents, other than manuals purchased with hardware or "software";

   **c.** Worksheets and printouts;

   **d.** Property held for sale or lease;

   **e.** Property leased or rented to others; or

   **f.** Currency, "money", deeds, notes, "securities" or other financial instruments, including such instruments in electronic form.

4. Direct physical loss or damage to "Computer Equipment" is extended to include the following:

   **a.** Electromagnetic injury caused by:

   **(1)** Blackout or brownout;

   **(2)** Transients, spikes, surges and other power failure; and

   **(3)** Airport security check, and radio or telephone line interference;

   **b.** Headcrash, meaning physical damage to disks, tapes or hardware caused by a contact of electromagnetic heads (which read or write information) with such disks or tapes; and

   **c.** Damage caused by a "computer virus".

   **d.** Theft of "computer equipment". Theft means an act of stealing or an attempt to steal. Theft includes loss of property from a known place when it is likely that the property has been stolen.

5. **DEDUCTIBLE**

   We will not pay for loss or damage in any one occurrence to "computer equipment" until the amount of loss or damage exceeds $250.

**B. DATA AND SOFTWARE**

1. We will pay to research, replace or restore lost or damaged "data" or "software" subject to the Limit of Insurance shown in the Declarations for Computers And Media while anywhere within the policy territory, and while in transit, but only if:

   **a.** Owned by you; or

   **b.** Owned by others but in your care, custody and control regardless of whether you use it for personal or business needs.

Form SS 04 41 04 01

**Exhibit 1 - 000123**

© 2001, The Hartford

However, this coverage is provided only when such loss or damage is caused by one or more of the following:

**a.** Direct physical loss or damage to "computer equipment" for which coverage is provided by this endorsement.

**b.** Electrical or magnetic injury to, or disturbance or erasure of covered "data" or "software" which results from power failure originating at your premises or within 1000 feet from the building containing the "data" and "software".

**c.** Loss of or damage to "data" or "software" caused by a "computer virus".

**2.** We will not pay to research, replace or restore lost or damaged "data" or "software" which is licensed, leased or rented to others.

**C. Additional Coverage**

**1.** Unless Business Income Coverage has been deleted from this policy, the Additional Coverage in the Standard or Special Property Coverage Form for Business Income, Extra Expense, Civil Authority and Extended Business Income apply to the "computer equipment", "data" and "software" which are covered in this endorsement. However, the Additional Coverage for Business Income is subject to the following:

**a. Waiting Period**

We will not pay for any covered Business Income loss you sustain under this provision due to loss or damage to "data", or "software" caused by a computer virus which results in the necessary suspension (slowdown or cessation) of your business described in the Declarations during the first 12 hours that immediately follow the start of such suspension.

**b.** Such Waiting Period applies independent of the deductible applicable to Computer Equipment.

**c.** The Limit of Insurance for Computers And Media shown in the Declarations.

**2.** When this endorsement is attached to the Special Property Coverage Form, the Additional Coverage for Equipment Breakdown applies.

**3.** When this policy provides Earthquake Coverage, the Limit of Insurance for Computers and Media is in addition to the Limit of Insurance shown in the Declarations for Earthquake Coverage.

**D.** The provisions of this endorsement do not override or in any way affect the application of the Exclusion Of Certain Computer Related Losses if such exclusion is endorsed to or otherwise made a part of this policy. That exclusion addresses the inability of a computer system to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

**E.** Paragraph **A.3.** Covered Causes of Loss, and Section **B.**, Exclusions, do not apply to coverage provided by this endorsement, except for:

**1.** Paragraph **B.1.b.,** Earth Movement; and

**2.** Paragraph **B.1.c.,** Governmental Action;

**3.** Paragraph **B.1.d.,** Nuclear Hazard;

**4.** Paragraph **B.1.f.,** War and Military Action;

**5.** Paragraph **B.1.g.,** Water.

**F. Additional Exclusions**

We will not pay for loss or damage caused by or resulting from:

**1.** Input, programming or processing errors;

**2.** Mechanical breakdown or failure, however headcrash will not be considered as a mechanical breakdown or failure. This exclusion does not apply to coverage provided under the Additional Coverage provisions of this endorsement;

**3.** Faulty construction, materials or workmanship;

**4.** Error, omission or deficiency in design;

**5.** Short circuit blowout or other electrical disturbance within the computer system. This exclusion does not apply to coverage provided under the Additional Coverage provisions of this endorsement;

**6.** Rust, corrosion, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**7.** Dryness or dampness of atmosphere; changes in or extremes of temperature;

**8.** Wear and tear, marring or scratching,

**9.** Insects, birds, rodents, or other animals

**10.** Obsolescence;

**11.** Dishonest or criminal acts by you, any of your partners, employees, trustees, authorized representatives or anyone to whom you entrust the property for any purpose, whether acting alone or in collusion with others;

**12.** Unexplained disappearance, however we cover theft of "computer equipment" as provided in provision **A.4.d**.

Exhibit 1 – 000124

© 2001, The Hartford

**13.** Unlawful trade, or seizure by orders of governmental authority.

**14.** Delay or loss of market; and

**15.** Theft of laptop, palmtop or similar portable property while in transit as checked baggage.

**G.** Exclusion **F.5.** does not apply to short circuits or the internal electromagnetic damage by an electromagnetic disturbance outside the system.

**H. Limit of Insurance**

The most we will pay for loss or damage in any one occurrence is the Limits of Insurance for Computers And Media shown in the Declarations.

**I. Loss Payment**

This Loss Payment condition is applicable to the "computer equipment", "data", and "software" coverage provided by this endorsement. We will determine the value of Covered Property as follows:

**1.** "Computers," "peripheral devices," "media" and manuals at the full cost of repair or replace the property subject to the Limit of Insurance. However, we will not pay more for loss or damage on a replacement cost basis than the lesser of and the following:

   **a.** The amount necessary to replace the item with similar property possessing the minimum characteristics necessary to perform the same functions when replacement with identical property is not possible or practical.

   **b.** The amount necessary to repair or replace the item with one substantially identical to the lost or damaged item. In the event of a covered total loss to one or more items, we will allow up to 20% over the current replacement cost as described in this provision, as an Optional Upgrade Allowance for the purchase of new property with upgraded processing or performance characteristics. This Optional Upgrade Allowance will, at our option, be payable after you have purchased the replacement property and have provided us with written proof of such purchases; or

   **c.** If the item is not repaired or replaced, we will pay not more than the actual cash value of the item at the time of loss or damage. If you elect this option, you have the right to make further claim within 180 days after loss for any additional payment on a replacement cost basis.

**2.** In the event of loss or damage to "data" or "software", we will pay the reasonable amount you actually spend to reproduce, restore, or replace the lost or damaged "data" or "software". This includes the cost of computer consultation services for restoration and the cost of research to reconstruct lost or damaged information. But we will not pay more than the Limit of Insurance for Computers And Media specified in the Declarations.

**3.** In the event of loss or damage to any part of "computer equipment", "data" or "software", we will pay only what it would cost to replace, reproduce, or restore the lost or damaged part.

**J. Additional Definitions**

**1.** "Computer Virus" means a program, which is intentionally created to cause damage or disruption in the computer operations of a party using or coming in contact in any way with the program.

**2.** "Computer Equipment" means "computers", "peripheral devices", "media", and manuals that are purchased to be used in conjunction with hardware and "software".

© 2001, The Hartford

Exhibit 1 000125   Form 99 0145 04 01



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE DISHONESTY COVERAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**The following is added to Additional Coverages:**

**A. COVERAGE**

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Causes of Loss.

**1. Covered Property**

Covered Property means "money", "securities", and other tangible property of intrinsic value and not otherwise excluded.

**2. Covered Causes of Loss**

Covered Causes of Loss means dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you, with the manifest intent to:

**a.** Cause you to sustain loss; and also

**b.** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions or other employee benefits earned in the normal course of employment) for:

**(1)** The "employee"; or

**(2)** Any person or organization intended by the employee" to receive that benefit.

**3. Additional Coverages**

**a. Employees Temporarily Outside Coverage Territory**

We will pay for loss caused by any "employee" while temporarily outside the Coverage Territory for a period of not more than 90 days.

**b. Employees at Client or Customer Premises**

We will pay for any loss caused by your "employee" while at the premises of your client or customer.

Any claim for loss sustained by any client or customer and covered by this policy may only be made by you in your Proof of Loss.  No third party has a direct right against this insurance and no third party may make a direct claim against us as the writer of your insurance.

**c. Welfare and Pension Plan ERISA Compliance**

In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA):

**(1)** "Employee" also includes any natural person who is:

**(a)** A trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare of Pension Benefit Plan (hereafter called Plan) insured under this insurance, and

**(b)** Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.

**(2)** If any Plan is insured jointly with any other entity under this

Form SS 04 42 03 00

© 2000, The Hartford

**Exhibit 1 – Page 26 of 2**

insurance, you or the Plan Administrator must select a Limit of Insurance under this Employee Dishonesty Coverage Form that is sufficient to provide an amount of insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) If the insured first named in the Declarations is an entity other than a Plan, any payment we make to that insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

(4) If two or more Plans are insured under this insurance, any payment we make for loss:

(a) Sustained by two or more plans or

(b) Of commingled funds or other property of two or more Plans

that arises out of one Occurrence, is to be shared by each Plan sustaining loss in the proportion that the amount of insurance required for each such Plan under ERISA provisions bears to the total of those amounts.

(5) The Deductible provision does not apply to loss sustained by any Plan subject to ERISA which is insured under this insurance.

## B. EXCLUSIONS

The following Exclusions apply in addition to the Exclusions in the Crime Common Conditions and Exclusions.

**1. Employee Terminated Under Prior Insurance**

We will not pay for loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been terminated and not reinstated since the last such termination.

**2. Insurance Operations**

We will not pay for direct or indirect loss resulting from contractual or extra-contractual liability sustained by you in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

**3. Inventory Shortages**

We will not pay loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

a. An inventory computation; or

b. A profit and loss computation.

**4. Partners**

We will pay only for loss, caused by any partner or member of a limited liability corporation, that is in excess of the sum of:

**a.** Any amounts you owe that partner or member; and

**b.** The value of that partner's or member's ownership interest determined by the closing of you organization's books on the date of discovery of the loss by anyone in your organization not involved in the Employee Dishonesty; and

**c.** Any applicable deductible amount.

**5. Trading Loss**

We will not pay for loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

## C. ADDITIONAL CONDITIONS

The following conditions apply.

**Termination As To Any "Employee"**

This insurance is terminated as to any "employee":

**1.** Immediately upon discovery by;

**a.** You; or

**b.** Any of your partners, officers or directors not in collusion with the "employee";

of any dishonest act committed by that "employee" whether before or after becoming employed by you.

**2.** On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing.

The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

## D. LIMIT OF INSURANCE

The most we will pay for each Occurrence of loss under this Endorsement is the Employee Dishonesty Limit of Insurance stated in the Declarations.

The Additional Coverages are included in this Limit of Insurance.

## E. OCCURRENCE DEFINITION

As used in this Endorsement, **Occurrence** means all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.

**Exhibit 1 - 000127**
Form SS 04 42 03 00



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OUTDOOR SIGNS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations.  The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

    **(1)** Owned by you; or

    **(2)** Owned by others but in your care, custody and control.

**B.** Paragraph **A.3.**, Covered Causes of Loss, and Section **B.**, Exclusions, do not apply, to this Optional Coverage, except for:

    **(1)** Paragraph **B.1.c.**, Governmental Action;

    **(2)** Paragraph **B.1.d.**, Nuclear Hazard; and

    **(3)** Paragraph **B.1.f.**, War and Military Action.

**C.** **Additional Exclusion**

We will not pay for loss or damage caused by or resulting from:

    **(1)** Wear and tear;

    **(2)** Hidden or latent defect;

    **(3)** Rust;

    **(4)** Corrosion; or

    **(5)** Mechanical breakdown.

**D.** **Limit of Insurance**

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

**E.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**Form SS 04 44 09 93**   Printed in U.S.A.  (NS)

**Exhibit 1 – 000128**

Copyright, Hartford Fire Insurance Company, 1993



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY OF OTHERS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

We will pay, on replacement cost basis, for direct physical loss or damage by the Covered Causes of Loss to Personal Property of Others that is in your care, custody and control.
The most we will pay for loss or damage in any one occurrence is the Limit of Insurance applicable to Personal Property of Others shown in the Declarations.

**Form SS 04 45 10 96** Printed in U.S.A. (NS)

**Exhibit 1 – 000129**

Copyright, Hartford Fire Insurance Company, 1993



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEMPERATURE CHANGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** We will pay for direct physical loss of or damage to "perishable stock" at the described premises caused by or resulting from:

1. A change in temperature or humidity resulting from:

    **(a)** Mechanical breakdown or failure of:

       **(1)** Stationary heating plants; or

       **(2)** Refrigerating, cooling or humidity control apparatus or equipment;

       But only while such plants, equipment or apparatus are at the described premises.

    **(b)** Complete or partial failure of electric power, either on or away from your described premises. Such failure of power must be due to conditions beyond your control; or

2. Contamination by a refrigerant.

**B. SELLING PRICE**

We will determine the value of finished "perishable stock" in the event of loss or damage at:

1. The selling price, as if no loss or damage had occurred;

2. Less discounts and expenses you otherwise would have had.

**C.** We will not pay for loss or damage to "perishable stock" located:

1. On buildings;

2. In the open; or

3. In vehicles.

**D.** Exclusions

1. The following exclusions under paragraph **B.1.** of SECTION **B** - EXCLUSIONS are deleted:

**(a)** Ordinance or Law;

**(b)** Power Failure; and

**(c)** Mechanical Breakdown in the Standard Property Coverage Form.

2. The following exclusions are added:

We will not pay for loss or damage caused by or resulting from:

**(a)** The disconnecting of any of the following systems from the source of power:

   **(1)** Refrigerating;

   **(2)** Cooling; or

   **(3)** Humidity control.

**(b)** The loss of electrical power caused by the shutting off of any switch or other device used to control the flow of electric power or current.

**(c)** The inability of an electrical utility company, your stationary heating plant or any other power source to provide sufficient heat or power due to:

   **(1)** Lack of fuel;

   **(2)** Lack of capacity to make enough heat or power; or

   **(3)** Order of the government.

**(d)** Breaking of any glass that is a permanent part of refrigerating, cooling or humidity control unit.

**E.** Deductible

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in paragraph **D.4.** of the Standard Property Coverage Form or the Special Property Coverage Form., unless a different deductible is stated in the Declarations for Temperature Change. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

© 2002, The Hartford

**F.** Limit of Insurance

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Temperature Change shown in the Declarations.

**G.** Additional Conditions

1. We will pay for loss or damage under this Optional Coverage only when:

   (a) Such loss or damage is not covered elsewhere in this policy or any other policy that insures the "perishable stock" at the described premises; and

   (b) This Temperature Change coverage is shown as a specific item of insurance in the Declarations.

2. In the event of loss or damage, none of the other coverage under this policy or any other policy will share in its payment unless there are similar to the provisions of this Optional Coverage.

3. But in no event will we pay more than the Limit of Insurance shown in the Declarations for the Temperature Change.

**H.** Additional Definitions

For the purpose of this insurance:

1. "Mechanical breakdown" means:

   (a) Breaking or separation of any mechanical part(s) other than gas pipes or lines; or

   (b) Burning out of any electrical motor servicing such unit; and

   requiring replacement of the damaged parts to become functional.

   But "mechanical breakdown" does not mean faulty operation or failure of equipment which results in temperature change but does not require replacement of broken parts.

   We will not pay for loss or damage to "perishable stock" caused by such faulty operation or failure of equipment.

2. "Perishable stock" means personal property:

   (a) Maintained under controlled conditions for its preservation; and

   (b) Susceptible to loss or damage if the controlled conditions change.

**Exhibit 1 - 000131**

Form SS 04 46 10 02



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VALUABLE PAPERS AND RECORDS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** We will pay for direct physical loss of or damage to the following types of property at the described premises that is your property or property of others in your care, custody or control:

Valuable Papers and Records, meaning inscribed, printed or written:

**(1)** Documents;

**(2)** Manuscripts; or

**(3)** Records including patient records ; or

**(4)** X-Rays

including abstracts, books, deeds, drawings, films, maps or mortgages.

**But Valuable Papers and Records does not include:**

**(1)** Property that cannot be reproduced, replaced or restored.

**(2)** "Money" and "Securities",

**(3)** Converted data; or

**(4)** Programs or instructions used in your data processing operations, including the material on which the data is recorded.

**B. Limit of Insurance**

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Valuable Papers and Records shown in the Declarations.

**C. Deductible**

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in paragraph **D.4.** of the Standard Property Coverage Form or the Special Property Coverage Form, whichever form applies to this policy. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**D.** Under this Optional Coverage we will not pay for property:

**(1)** Held as samples or for delivery after sale;

**(2)** In storage away from the premises shown in the Declarations; or

**(3)** If such property can not be replaced with other property of like kind and quality.

**E.** With respect to this Optional Coverage, Coverage Extension **A.5.g.**, Property Off-Premises in the Standard Property Coverage Form and Coverage Extension **A.6.g.**, Property Off-Premises in the Special Property Coverage Form are replaced by the following:

You may apply the insurance provided under this Optional Coverage to Valuable Papers and Records while such property is not at the described premises, including while in transit. The most we will pay for loss or damage under this Coverage Extension is 25% of the Limit of Insurance shown in the Declarations for Valuable Papers and Records but not more than $5,000.

This coverage does not apply to property in storage.

**F.** The Valuable Papers and Records Coverage Extension, paragraph **A.5.h.** in the Standard Property Coverage Form and paragraph **A.6.h.** in the Special Property Coverage Form., do not apply to any premises where this Optional Coverage applies.

**G.** With respect to coverage provided by this endorsement, paragraph **E.5.d.(6)** in the Standard Property Coverage Form and in the Special Property Coverage Form are replaced by the following:

**(6)** We will determine the value of "Valuable Papers and Records" at the cost of:

a. Blank materials for reproducing the records; and

© 2002, The Hartford

**b.** The reasonable cost to research, replace or restore the lost information.

**H.** Paragraph **A.3.**, Covered Causes of Loss, and **Section B.**, Exclusions, do not apply to this Optional Coverage except for:

**(1)** Paragraph **B.1.c.**, Governmental Action;

**(2)** Paragraph **B.1.d.**, Nuclear Hazard; and

**(3)** Paragraph **B.1.f.**, War and Military Action.

**I.** **Additional Exclusions**

We will not pay for loss or damage caused by or resulting from any of the following:

**(1)** Dishonest acts by:

    **(a)** You, or your employees or authorized representatives;

    **(b)** Anyone else with an interest in the property, or their employees or authorized representatives; or

    **(c)** Anyone else to whom the property is entrusted.

    This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

But this exclusion does not apply to a carrier for hire.

**(2)** Errors or omissions in processing or copying.

But we will pay for direct loss or damage caused by resulting fire or explosion.

**(3)** Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct loss or damage caused by lightning.

**(4)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(5)** Unauthorized instructions to transfer property to any person or to any place.

**Exhibit 1 - 000133**

Form SS 04 47 10 02



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUILDING STRETCH

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**
**STANDARD PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A.** The following changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

**1. Back Up of Sewer or Drain Water Damage.**

The following Additional Coverage is added:

We will pay for loss or damage to Covered Property solely caused by water that backs up from a sewer or drain.

This coverage is included within the Covered Property Limits of Insurance.

**THIS IS NOT FLOOD INSURANCE**

We will not pay for water or other materials that back up from any sewer or drain when it is caused by any flood. This applies regardless of the proximity to the flood. Flood means the overflow of surface water, streams or other bodies of water, or their spray, all whether driven by wind or not.

**2. Claim Expenses**

The following Additional Coverage is added:

In the event of covered loss or damage we will pay up to $5,000 as an additional Limit of Insurance to cover reasonable expenses incurred by you at our specific request to assist us in:

**a.** The investigation of a claim or suit; or

**b.** The determination of the amount of loss, such as taking inventory, or auditing business records.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**3. Debris Removal**

The following Additional Coverage is added:

In Limits of Insurance, **C.4.b.**, the additional limit of insurance for the Debris Removal Additional Coverage is increased to $25,000. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**4. Lessor's - Tenant Move Back Expenses**

The following Additional Coverage is added:

In the event that your tenants must temporarily vacate the covered Building property due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay up to $10,000 as a Limit of Insurance at each described premises to cover the sum of all expenses you incur to move those tenants back into your covered Building.

**a. Covered Expenses**

We will only pay for the following expenses:

**(1)** Packing, transporting and unpacking the tenants' Business Personal Property, including the cost of insuring the move back and any necessary assembly or setup of furniture and equipment, and

**(2)** The net cost to re-establish the tenants' utility and telephone services, after any refunds due the tenants.

**b. Time Limitation**

We will only pay for Covered Expenses that you incur within 60 days of the date that the damaged building has been repaired or rebuilt.

**Form SS 04 52 09 01**

© 2001, The Hartford

**Exhibit 1 – 000130** Page 1 of 3

**5. Lessor's - Lease Cancellation**

The following Additional Coverage is added:

In the event that your tenants cancel their leases in covered Building property due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay up to $10,000 as a Limit of Insurance at each described premises to cover the loss of rental income that you would have received from such leases. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**a. Income Not Covered**

We will not pay for the following:

**(1)** Prepaid rent;

**(2)** Security and other deposits made by tenants; and

**(3)** Insurance, taxes or other payments you made on behalf of the tenants.

**b. Time Limitation**

We will only pay for loss of rental income that you sustain after tenantability is restored and until the earlier of:

**(1)** The date you lease the premises to another tenant;

**(2)** 12 months immediately following the "period of restoration"; or

**(3)** The normal expiration date of the cancelled leases.

**6. Off-Premises Utility Services - Direct Damage**

The following Additional Coverage is added:

We will pay up to $10,000 as a Limit of Insurance to apply at each described premises to cover direct physical loss or damage to Covered Property caused by the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Off-Premises Utility Services - Direct Damage, Form SS 40 18, with the exception of the Utility Services Limit of Insurance contained in that form. Off-Premises Utility Services – Direct Damage, Form SS 40 18 is made a part of this policy, whether or not Off-Premises Utility Services – Direct Damage coverage is indicated in the Declarations.

**7. Ordinance or Law**

The following Additional Coverage is added:

If a covered Cause of Loss occurs to covered Building property, we will pay the following at each described premises that are caused by enforcement of any ordinance or law:

**a.** For loss to the undamaged portion of the Building, within in the Building Limit of Insurance;

**b.** Up to $50,000 as a Limit of Insurance to cover demolition costs; and

**c.** Up to $50,000 as a Limit of Insurance to cover increased costs.

This additional coverage is subject to the provisions of Ordinance or Law, Form SS 04 15, which is attached to this policy.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**8. Outdoor Signs**

The following Additional Coverage is added and supercedes any other coverage for signs in this policy:

This Additional Coverage is in addition to any recoverable Limits of Insurance applicable to Building or Business Personal Property.

We will pay up to full value of outdoor signs at each described premises to cover direct physical loss or damage to outdoor signs.

This Additional Coverage is subject to the provisions of Outdoor Signs, Form SS 04 44, with the exception of the Limit of Insurance provision and paragraph **E.** of that form. Outdoor Signs, Form SS 04 44 is made a part of this policy whether or not Outdoor Signs coverage is indicated in the Declarations.

**B.** The following changes apply to the Standard Property Coverage Form, Coverage Extensions, **A.5.**, or to the Special Property Coverage Form, Coverage Extensions, **A.6.**:

**1. Newly Acquired or Constructed Property**

The following changes are made to Newly Acquired or Constructed Property:

**a. Building**

The most we will pay in subparagraph **(1)** is increased to $1,000,000 at each premises.

**b. Business Personal Property**

The most we will pay in subparagraph **(2)** is increased to $500,000 at each premises.

**Exhibit 1 – 000135**

**2. Outdoor Property**

In the Outdoor Property Coverage Extension, the most we will pay is increased to $25,000, but not more than $1,000 for any one tree, shrub or plant.

**C.** The following changes apply only if Business Income and Extra Expenses are covered under this policy. These changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

**1. Business Income at Newly Acquired Premises**

The following Additional Coverage is added:

**Business Income at Newly Acquired Premises**

We will pay up to $250,000 as a Limit of Insurance to apply to Business Income and Extra Expense to cover at any location you acquire, other than fairs or exhibitions. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**a.** This policy expires;

**b.** 90 days expire after you acquire or begin to construct the property, or

**c.** You report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

**2. Business Income Extension for Off-Premises Utility Services**

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to apply at each described premises to cover loss of Business Income and Extra Expense caused by the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Business Income Extension For Off-Premises Utility Services, Form SS 04 19, with the exception of the Limit of Insurance provision contained in that form. Business Income Extension For Off Premises Utility Services, Form SS 04 19 is made a part of this policy whether or not Business Income Extension For Off-Premises Utility Services coverage is indicated in the Declarations.

**Exhibit 1 - 000136**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEPENDENT PROPERTIES - ANCHOR STORES AND MAJOR SUPPLIERS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of this policy apply to the insurance stated below

**The following is added to Additional Coverages:**

**Dependent Properties**

**1. Coverage**

Your Business Income and Extra Expense coverages are extended to apply to covered loss at your described premises, caused by direct physical loss or damage by a Covered Cause of Loss to the Dependent Properties stated in the Declarations.

Dependent Properties means property operated by others that you depend on to:

**a.** Deliver materials or services to you or to others for your account.   This does not include:

**(1)** Water, communication, power supply or any other utility service; or

**(2)** Any type of web site or internet service.

**b.** Accept your products or services;

**c.** Manufacture products for delivery to your customers under contract of sale; or

**d.** Attract customers to your business premises.

**2. Additional Conditions**

The following conditions also apply:

**a.** Coverage provisions respecting direct physical loss or damage will apply separately to each Dependent Property premises.

**b.** This Additional Coverage will end when the Dependent Property should be rebuilt or replaced with reasonable speed and similar quality.

**3. Limit of Insurance**

The most we will pay for each occurrence of loss under this Additional Coverage is the Limit of Insurance for this coverage stated in the Declarations.

Form SS 04 78 04 01

© 2001, The Hartford

Exhibit 1 - 000139 Page 1 of 1



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CRIME COMMON CONDITIONS AND EXCLUSIONS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

The following conditions are added the **Standard Property Coverage Form** and the **Special Property Coverage Form**.

**A.  CRIME COMMON CONDITIONS**

**1.  Consolidation - Merger**

If through consolidation or merger with, or purchase of assets of, some other entity:

**a.** Any additional persons become "employees"; or

**b.** You acquire the use and control of any additional premises;

any insurance afforded for "employees" or premises also applies to those additional "employees" and premises, but only if you:

**(1)** Give us written notice within 60 days thereafter; and

**(2)** Pay us an additional premium.

**2.  Discovery Period for Loss**

We will pay only for covered loss discovered no later than one year from the end of the policy period.

Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this policy has been, or may be incurred even though the exact amount or the details of the loss may not then be known.

Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts, which if true, would be a covered loss under this policy.

**3.  Joint Insured**

**a.** If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance.  If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

**b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

**d.** If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

**e.** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**4.  Legal Action Against Us**

The following replaces the Legal Action Against Us in the Property Loss Conditions:

No one may bring a legal action against us under this Coverage Part unless:

**a.** There has been full compliance with all of the terms of this Coverage Part; and

**b.** The action is brought within 2 years after the date on which you discover the loss .

© 2000, The Hartford

**Exhibit 1 - 000158**

5. **Loss Sustained During Prior Insurance**

   a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

      (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

      (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

   b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

      (1) This insurance as of its effective date; or

      (2) The prior insurance had it remained in effect.

6. **Non-Cumulation of Limit of Insurance**

   Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

7. **Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate**

   If any loss is covered under this policy and under any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest, we will not pay more that the highest single Limit of Insurance.  We will settle such claim as follows:

   a. We will first pay the Limit of Insurance applicable under this policy subject to this policy's applicable deductible; then

   b. If the Limit of Insurance under that prior policy is equal to or less than the Limit of Insurance under this policy, we will make no further payment; or

   c. If the Limit of Insurance under that prior policy is higher than the Limit of Insurance under this policy, we will then pay for any remaining part of the loss.

      But in no event will our total payment for loss be more than would be payable under the policy with the highest Limit of Insurance.

We will also apply any deductible under that prior policy to the extent it exceeds the deductible under this policy.

8. **Ownership of Property, Interests Covered**

   The property covered under this insurance is limited to property:

   a. That you own or hold; or

   b. For which you are legally liable.

   However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

9. **Policy Period**

   a. The Policy Period is stated in the Declarations.

   b. Subject to the Loss Sustained During Prior Insurance condition, **A.5.** above, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

10. **Recoveries**

    The following replaces the Recovered Property in the Property Loss Conditions:

    a. Any recoveries less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

       (1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

       (2) Then to us, until we are reimbursed for the settlement made;

       (3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

    b. Recoveries do not include any recovery:

       (1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

       (2) Of original "securities" after duplicates of them have been issued.

B. **CRIME COMMON EXCLUSIONS**

   The following are Exclusions replace the Exclusions in Section B:

   1. **Governmental Action**

      We will not pay for loss resulting from seizure or destruction of property by order of governmental authority.

**2. Indirect Loss**

We will not pay for loss that is an indirect result of any act or occurrence covered by this insurance including, but not limited to, loss resulting from:

**a.** Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

**b.** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**c.** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**3. Legal Expenses**

We will not pay for expenses related to any legal action.

**4. Nuclear Hazard**

We will not pay for loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**5. War and Similar Actions**

We will not pay for loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

**C. CRIME COMMON DEFINTIONS**

The following is added to Definitions

**"Employee"** means:

**1.** Any natural person:

**a.** While in your service (and for 60 days after termination of service); and

**b.** Whom you compensate directly by salary, wages or commissions; and

**c.** Whom you have the right to direct and control while performing services for you;

**2.** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises;

**3.** Any natural person who is your partner or member of a limited liability corporation.

**4.** Any natural person, whether or not compensated, while performing services for you as the chairman or a member of any committee;

**5.** Any natural person who is a non-compensated officer;

**6.** Any natural person who is a director or trustee while acting as a member of any of your elected or appointed committees or while acting within the scope of the usual duties of an "employee";

**7.** Any natural person who is a non-compensated volunteer, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee";

**8.** Any natural person who is a former employee, director, partner, member, representative or trustee retained as a consultant while performing services for you;

**9.** Any natural person who is a student intern who is pursuing studies or acting within the scope of the usual duties of an "employee";

**10.** Any natural person, who is a student enrolled in your facility, while handling or has possession of property or funds in connection with sanctioned student activities;

**11.** The spouses of and children over 18 years old who reside with any "employee" who is a building manager, superintendent or janitor.

Each family is deemed to be, collectively, one "employee" for the purposes of this insurance, except that any Termination Condition applies individually to the spouse and children.

**"Employee"** does not mean:

**(1)** An agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any manager, director, partner, member or trustee, except while acting within the scope of the usual duties of an "employee".



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FORGERY COVERAGE
### (Including Credit Cards, Currency and Money Orders)

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**The following is added to Additional Coverages:**

**A. FORGED OR ALTERED INSTRUMENTS COVERAGE**

**1. Covered Property**

Covered Property means the following instruments:

**a.** Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you;

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn; and

**b.** Written instruments required in conjunction with any credit, debit or charge card issued to you or any "employee" for business purposes.

**2. Covered Causes of Loss**

Covered Causes of Loss means forgery or alteration.

**3. Legal Expense Additional Coverage**

If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we

will pay for any reasonable legal expenses that you incur and pay in that defense. This payment is in addition to the applicable Limit of Insurance. The Deductible does not apply to this Coverage Extension.

**4. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Crime Common Conditions and Exclusions Form.

**a.** We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**b.** You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**c.** The Coverage Territory is revised to cover loss you sustain anywhere in the world.

**5. Exclusion**

The following Exclusion applies in addition to the Exclusions in the Crime Common Conditions and Exclusions.

We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, or trustees:

**a.** Acting alone or in collusion with other persons; or

**b.** While performing services for you or otherwise.

**Form SS 04 86 03 00**

© 2000, The Hartford

Exhibit 1 – Page 144 of 2

**B. COUNTERFEIT CURRENCY AND MONEY ORDERS COVERAGE**

**1. Covered Property**

Covered Property means the following:

We will pay for loss directly resulting from

**a.** Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

**b.** Counterfeit United States or Canadian paper currency.

**2. Covered Causes of Loss**

Covered Causes of Loss means the acceptance of Covered Property in good faith, in exchange for merchandise, money or services, during the regular course of business.

**3. Exclusions**

The following Exclusion applies in addition to the Exclusions in the Crime Common Conditions and Exclusions.

**a.** We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

**(1)** Acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise.

**b.** We will not pay for loss resulting from the giving or surrendering of property in any exchange or purchase.

**c.** We will not pay for loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**C DEDUCTIBLE**

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**D. LIMIT OF INSURANCE**

The most we will pay for each Occurrence of loss under this Endorsement is the Forgery Limit of Insurance stated in the Declarations.

The Additional Coverages are included in this Limit of Insurance.

**E. OCCURRENCE DEFINITION**

**1.** For Forged or Altered Instruments Coverage, **Occurrence** means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments of Covered Property.

**2.** For Counterfeit Currency and Money Order Coverage, **Occurrence** means an:

**a.** Act or series of related acts involving one or more persons; or

**b.** Act or event, or series of related acts or events not involving any person.

Exhibit 1 - 000142
Form SS 04 86 03 00



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERILS SPECIFICALLY EXCEPTED

As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are **SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:**

A. **ACTS, ERRORS OR OMISSIONS** by you or others in:

1. Planning, zoning, developing, surveying, testing or siting property;

2. Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;

3. The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:

   a. Land or buildings or other structures;

   b. Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or

   c. Other improvements or changes in or additions to land or other property.

4. The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or

5. The maintenance of any of such property or facilities.

This exception A. applies whether or not the property or facilities described above are:

1. Covered under this policy; or

2. On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

1. If this policy is written to cover the risk of loss from specifically named causes. "Covered Peril" means any Peril specifically named as covered; or

2. If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B. **COLLAPSE, "CRACKING" OR "SHIFTING"** of buildings, other structures or facilities, or their parts, if the collapse, "cracking" or "shifting":

1. Occurs during "earth movement," "volcanic eruption" or "flood" conditions or within 72 hours after they cease; and

2. Would not have occurred but for "earth movement," "volcanic eruption" or "flood."

But if loss or damage by a covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, "cracking" or "shifting" of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

1. Earthquake;

2. Flood;

3. Volcanic action;

4. Volcanic eruption; or

5. Sinkhole collapse,

this exception B. will not reduce that coverage.

As used in this exception B.:

**Form IH 10 01 09 86**  Printed in U.S.A.

**Exhibit 1 - 000143** Page 43 of 2

Copyright, Hartford Fire Insurance Company, 1986

1. "Cracking" means cracking, separating, shrinking, bulging, or expanding;

2. "Shifting" means shifting, rising, settling, sinking, or lateral or other movement;

3. "Earth movement" means any earth movement, including but not limited to "earthquake," landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other "shifting" of earth; all whether or not combined with "flood" or "volcanic eruption." It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;

4. "Earthquake" means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or "shifting" of rock beneath the surface of the ground from natural causes. An "Earthquake" includes all related shocks and after shocks;

5. "Volcanic eruption" means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;

6. "Flood" means:

   a. Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

   b. Release of water held by a dam, levy or dike or by a water or flood control device;

   c. Water that backs up from a sewer or drain; or

   d. Water under the ground surface pressing on, or flowing, leaking or seeping through:

      (1) Foundations, walls, floors or paved surfaces;

      (2) Basements, whether paved or not; or

      (3) Doors, windows or other openings.

Copyright, Hartford Fire Insurance Company, 1986



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - INSPECTION AND APPRAISAL SERVICES

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" for which the insured may be held liable because of the rendering or failure to render professional services in the performance of any claim, investigation, adjustment, engineering, inspection, appraisal, survey or audit services.

**Form SS 05 03 03 00**

**Page 1 of 1**

© 2000, The Hartford

**Exhibit 1 - 000145**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS HAZARD EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to any damages, judgments, settlements, loss, costs or expenses that:

1.  May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2.  Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos hazard; or

3.  Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**Form SS 05 12 03 92**   Printed in U.S.A.  (NS)

© 1992, The Hartford

Exhibit 1 - 000146



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - NUCLEAR ENERGY LIABILITY

**1.** This insurance does not apply:

 **a.** To any injury or damage:

 **(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

 **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

 **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

 **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

 **b.** Under any Medical Payments or Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

 **c.** To any injury or damage resulting from the "hazardous properties" of "nuclear material"; if:

 **(1)** The "nuclear material":

 **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

 **(b)** Has been discharged or dispersed therefrom;

 **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

 **(3)** The injury or damage arises out of the furnishing by any insured of any "technology services" in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; or

 **(4)** The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(4)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this exclusion:

 **a.** "Byproduct material", "source material" and "special nuclear material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

 **b.** "Hazardous properties" include radioactive, toxic or explosive properties.

 **c.** "Nuclear facility" means:

 **(1)** Any "nuclear reactor";

 **(2)** Any equipment or device designed or used for:

© 2001, The Hartford

**Exhibit 1 – 000147** Page 1 of 2

(a) Separating the isotopes of uranium or plutonium;

(b) Processing or utilizing "spent fuel"; or

(c) Handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

d. "Nuclear material" means "byproduct material", "source material" or "special nuclear material".

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f. Injury or damage and "property damage" include all forms of radioactive contamination of property.

g. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

h. "Technology services" means:

(1) Consulting, analysis, design, installation, training, maintenance, support and repair of or on: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

(2) Integration of systems;

(3) Processing of, management of, mining or warehousing of data;

(4) Administration, management, operation or hosting of: another party's systems, technology or computer facilities;

(5) Manufacture, sale, licensing, distribution, or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

(6) Design and development of: code, software or programming; or

(7) Providing software application: services, rental or leasing.

i. "Waste" means any waste material:

(1) Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

(2) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

**Exhibit 1 - 000148**
**Form SS 05 47 09 01**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - FINANCIAL SERVICES

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others.  For the purpose of this exclusion, financial services include but are not limited to:

1. Planning, administering, managing or advising on:

    a. Any:

        (1) Investment;

        (2) Pension;

        (3) Trust;

        (4) Annuity;

        (5) Savings;

        (6) Checking;

        (7) Individual retirement; or

        (8) Loan or Mortgage

        plan, fund or account.

    b. The issuance or withdrawal of any bond, debenture, stock or other securities;

    c. The trading of securities, commodities or currencies; or

    d. Any acquisitions or mergers;

2. Acting as a dividend disbursing agent, exchange agent, redemption or subscription agent, warrant or scrip agent, fiscal or paying agent, tax withholding agent, escrow agent, clearing agent, or electronic funds transfer agent;

3. Lending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities or interbank transfers;

4. Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors;

5. Checking or reporting of credit;

6. Maintaining of financial accounts or records;

7. Tax planning, tax advising or the preparation of tax returns; or

8. Selling or issuing travelers checks, letters of credit, certified checks, bank checks or money orders.

© 2000, The Hartford

**Exhibit 1 – 000149**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1.  The ownership, maintenance or use of the premises shown in the Declarations and operations necessary or incidental to those premises; or

2.  The project shown in the Declarations.

Form SS 05 62 03 00

Exhibit 1 - 000150 Page 1 of 1

© 2000, The Hartford



# EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
# (CLAIMS MADE)

**THE INSURANCE AFFORDED BY THIS COVERAGE IS CLAIMS MADE COVERAGE. THIS COVERAGE, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED TO US AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 60 DAYS AFTER THE END OF THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED. CLAIMS EXPENSES SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND SHALL BE INCLUDED IN THE DEDUCTIBLE.**

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine your rights, duties and what is and is not covered. Please discuss the coverage provided by this policy with your insurance agent or broker.

Throughout this policy the words **you** and **your** refer to the **Named Insured** in the Declarations. The words **we, us** and **our** refer to the stock insurance company member of THE HARTFORD shown on the Declarations Page.

The word **Insured** means any person or organization qualifying as such under the definition of **Insured** as defined in **DEFINITIONS (SECTION II)**

Other words and phrases that appear in **bold** are defined in **DEFINITIONS (SECTION II)** of this Coverage Part.

In consideration of, and subject to, the payment of the premium by **you** and in reliance upon the accuracy and completeness of the **Application**, including but not limited to the statements, attachments and exhibits contained in and submitted with the **Application**, **we** agree with **you**, subject to all terms, exclusions and conditions of this coverage form, as follows:

## I.   INSURING AGREEMENT

A.   **We** will pay on behalf of the **Insured** all **Damages** which the **Insured** becomes legally obligated to pay as a result of a **Wrongful Act** alleged in any **Claim**, if the **Claim** is first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased, and reported to **us** as soon as practicable but in no event later than 60 days after the end of the **Policy Period** or the **Extended Reporting Period**, if purchased.

For the purposes of this coverage, a **Claim** shall be deemed first made against the **Insured** when the **Claim** is received by the **Insured**, not when the **Claim** is filed or initiated by the party or parties asserting the **Claim**.

B.   **We** shall have the right and duty to defend any such **Claim** to which this insurance may apply, even if the allegations of the **Claim** are groundless, false or fraudulent. The duty to defend provided by this coverage form will end when **we** have used up the applicable limit of insurance for the payment of **Damages** or **Claims Expenses.**

C.   **We** shall select defense counsel with the consent of the **Insured**, which consent shall not be unreasonably withheld. The **Insured** shall cooperate fully with **our** investigation and defense of any **Claim** as provided in **SECTION VIII.** below.

D.   **We** shall investigate the **Claim** and, with written consent of the **Insured**, shall settle or compromise any **Claim** as **we** deem appropriate. If the **Insured** refuses to consent to any settlement or compromise recommended by **us** and acceptable to the claimant, then **our** liability to pay **Damages** and **Claims Expenses** shall not exceed the amount which **we** would have paid for **Damages** and **Claim Expenses** at the time the **Claim** could have been settled or compromised, less any deductible.

E.   This insurance applies only if on or before the effective date of this coverage, the **Insured** had no knowledge of any circumstances involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, which could reasonably be expected to result in a **Claim** made against **you**, any **Insured** or any **Subsidiary** under this insurance.

**Exhibit 1 – 000151**

Form SS 09 01 09 00

© 2000, The Hartford

**Page 1 of 9**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

## II. DEFINITIONS

When the following terms are used in this coverage form in boldface type, whether in singular or in plural, they shall have the meanings indicated.

A. **Application** means the written application and the proposal or application for any policy in an uninterrupted series of policies issued by **us** of which this coverage form is a renewal or replacement.

B. **Claim** means:

(1) any written demand received by the **Insured** which seeks monetary relief from the **Insured** for a **Wrongful Act** and which has been received within the Coverage Territory set forth in Section VI;

(2) any civil proceeding or lawsuit received by the **Insured**, whether through service or otherwise, which seeks monetary relief from the **Insured** for a **Wrongful Act** and which has been filed within the Coverage Territory set forth in Section VI;

(3) any investigative order or notice of charge received by the **Insured** relative to an administrative or regulatory proceeding initiated before the Equal Employment Opportunity Commission or a similar state agency, which alleges a **Wrongful Act** committed by the **Insured** and which has been filed within the Coverage Territory set forth in Section VI; and

(4) any written notice received by the **Insured** of an arbitration, mediation or other form of alternative dispute resolution proceeding, which seeks monetary relief from the **Insured** for a **Wrongful Act** and which has been commenced within the Coverage Territory set forth in Section VI;

however, **Claim** shall not include any organized labor or grievance proceeding or arbitration subject to a collective bargaining agreement.

C. **Claim Expenses** means:

(1) the reasonable and necessary fees charged by any lawyer designated by **us** or by the **Insured** with **our** written consent in defending the **Insured** in connection with any **Claim**; and

(2) all other reasonable and necessary fees, costs and expenses incurred on behalf of the **Insured** by **us** or by the **Insured** with **our** written consent in the investigation, adjustment, defense and appeal of any **Claim**;

however, **Claim Expenses** shall not include **Damages**, salaries, wages, remuneration, overhead or benefit expenses associated with any **Insured** or any of the employees or officials of any **Insured**.

D. **Damages** means all sums which the **Insured** is legally obligated to pay solely as a result of a **Claim** insured by this coverage form, including judgments, settlements, damages (including back pay, front pay and other damages for loss of future earnings), attorneys' fees, costs or expenses awarded to a prevailing claimant or plaintiff, pre-judgment interest and post-judgment interest;

however, **Damages** shall not include:

(1) matters deemed uninsurable under the law pursuant to which this Policy is construed;

(2) taxes, civil or criminal fines or penalties imposed by law;

(3) punitive, exemplary or liquidated damages or the portion of any multiplied damages award which exceeds the amount that was multiplied, unless these damages are included within **Damages** by an endorsement attached to this coverage form and are insurable under the law pursuant to which this Policy is construed;

(4) the costs associated with any form of non-monetary relief awarded against **you** or any **Insured**; or

(5) judgments, awards, or settlements or any other amounts owed to any claimant's domestic partner, spouse, child, parent or sibling.

E. **Insured** means:

(1) **you**;

(2) any **Subsidiary** of **yours**;

(3) if **you** are a corporation or an organization other than a partnership or a joint venture, any past, present or future directors and officers of **yours** or any **Subsidiary** of **yours**, but only for acts within the scope of their capacity as **your** director or officer or **your Subsidiary's** director or officer;

(4) if **you** are a partnership or joint venture, any general or limited partner of **yours**, but only for acts within the scope of **your** partnership or joint venture;

(5) if **you** are a limited liability company, any member or manager of **yours**, but only for acts within the scope of their capacity as **your** member or managers;

**Exhibit 1 - 000152**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

(6) any past, present or future employee, whether such employee was or is in a supervisory, co-worker, subordinate, part-time, seasonal and/or temporary position, of **yours** or any **Subsidiary** of **yours**, but only for acts within the scope of their employment by **you** or **your Subsidiary**; however independent contractors are not employees and are not **Insureds**;

(7) any individual who is a leased or loaned employee to **you** or any **Subsidiary** of **yours**, provided that **you** or **your Subsidiary** provides indemnification for such individual for services rendered in the same manner as if those services were rendered by an employee of **yours** or **your Subsidiary**; and

(8) the heirs, executors, administrators, assigns or legal representatives of each of the above **Insureds** in the event of their death, incapacity or bankruptcy.

However, no person or organization is an **Insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a **Named Insured** in the Declarations.

F. **Named Insured** means the individual, partnership or corporation designated in the Declarations.

G. **Policy Period** means the period from the Policy Inception Date and hour to the Policy Expiration Date and hour stated in the Declarations or the earlier cancellation date of the Policy, if any.

H. **Related Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

I. **Subsidiary** means any entity in which, and only for the period of time that, more than 50% of the outstanding securities or voting rights representing the present right to vote for the election of directors of such entity are owned by **you** directly or through one or more of **your Subsidiaries**, if such entity:

(1) was so owned at the Policy Inception Date; or

(2) becomes so owned after the Policy Inception Date provided the provisions of Section IX. C. (2) are fulfilled.

J. **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **Insured** in connection with any:

(1) wrongful dismissal, discharge or termination in employment, whether actual or constructive;

(2) wrongful failure to hire or promote;

(3) wrongful discipline or demotion;

(4) wrongful failure to create, apply or enforce any employment-related policy or procedure;

(5) wrongful failure to grant tenure;

(6) employment-related misrepresentation or defamation;

(7) employment-related invasion of privacy;

(8) employment-related infliction of emotional distress;

(9) employment-related unlawful discrimination, including, but not limited to, discrimination based upon age, gender, sex, pregnancy, race, color, national origin, religion, sexual orientation, sexual preference, marital status, disability or any other class of persons protected under any federal, state, municipal or local law;

(10) employment-related unlawful sexual harassment or other form of workplace harassment, including hostile work environment and quid pro quo harassment, prohibited by any federal, state, municipal or local law;

(11) employment-related unlawful retaliation against a past, present or future employee of **yours** or any **Subsidiary** of **yours**, prohibited by any federal, state, municipal or local law;

(12) violation of the Family and Medical Leave Act, as amended;

(13) negligent hiring, evaluation, retention or supervision related to any of the above actual or alleged acts only;

provided that the actual or alleged **Wrongful Act** is directed against a past, present or future employee (whether supervisory, co-worker, subordinate, part-time, seasonal and/or temporary, leased or loaned) of **yours** or any **Subsidiary** of **yours**, or an applicant for employment with **you** or **your Subsidiary**.

**Exhibit 1 - 000153**

## III. EXCLUSIONS

This coverage form shall not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

A. in fact any dishonest, fraudulent, criminal, or malicious act or omission committed by or at the direction of the **Insured**;

provided, however, the dishonest, fraudulent, criminal, or malicious act or omission of one **Insured** shall not be imputed to any other **Insured** or to **your** strictly vicarious liability for the purpose of determining the applicability of this exclusion;

B. any act, incident or omission which has been the subject of any notice of circumstance or notice of claim given under any policy or coverage of which this coverage form is a renewal or replacement, or any policy or coverage with an inception date which precedes the inception date stated in the Declarations;

C. any actual or alleged violation of the responsibilities, obligations or duties imposed by the Fair Labor Standards Act (other than the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the Immigration and Nationality Act, Title IX of the Education Amendments of 1972, the Immigration Reform and Control Act or any statute relating to the benefits, compensation or employment of veterans; or any amendment to any of the foregoing statutes, any rules or regulations promulgated under the foregoing statutes or any other similar law;

D. the **Insured's** activities and or capacity as:

(1) an officer, director, partner, trustee or employee of a business enterprise not named in the Declarations;

(2) an officer, director, partner, trustee or employee of a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust; or

(3) a fiduciary under the Employment Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto, or any other pension, welfare, retirement or other employee benefit plan or trust sponsored, established or maintained in whole or in part for the benefit of any of **your** employees or the employees of **your Subsidiary**;

whether or not such activities were at the request of any other **Insured**;

E. bodily injury to or sickness, disease or death of any person, damage to or destruction of tangible property, including loss of use thereof, assault or battery; provided, that this exclusion shall not apply to employment-related infliction of emotional distress;

F. the failure of the **Insured** to comply with any law governing worker's compensation, unemployment insurance, social security, disability benefits or any similar law;

G. a lockout, strike, picket line, replacement or any other action resulting from or related to organized labor disputes or labor negotiations;

H. damages, costs or expenses incurred by an **Insured** in making physical changes, modifications, alterations or improvements as a part of an accommodation of any disabled person pursuant to the Americans With Disabilities Act of 1990 (ADA), the rules and regulations promulgated thereunder, or any similar federal, state or local law, as amended;

I. any actual or alleged breach of contract, whether oral, written, express or implied.

J. Any injury or damage arising from:

(1) The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Exhibit 1 - 000154**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

## IV. DISCOVERY CLAUSE

If during the **Policy Period** or the **Extended Reporting Period**, if purchased, any **Insured** first becomes aware of a specific **Wrongful Act**, and if the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased, gives written notice to **us** of:

A. the specific **Wrongful Act**;

B. the **Damages** which have or may result from such **Wrongful Act**; and

C. the circumstances by which the **Insured** first became aware of such **Wrongful Act**,

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this insurance to have been made on the date on which written notice was given to **us.**

## V. EXTENDED REPORTING PERIOD

Subject to provisions A. through E. below, if this policy is canceled or non-renewed other than for non-payment of premium, **you** shall have the right to purchase an extended period to report **Claims** under this coverage form for any **Claim** first made during the period of time set forth in the Supplemented Extended Reporting Period Endorsement, and following the effective date of such cancellation or nonrenewal and reported in writing during such period or within 60 days thereafter, but only with respect to any **Wrongful Act** which takes place prior to the effective date of such cancellation or nonrenewal.

A. The **Extended Reporting Period** shall be effective only upon the payment of an additional premium. The additional premium will be 200% of the annual advance premium for this coverage. At the commencement of the **Extended Reporting Period**, the entire premium therefor shall be deemed fully earned and non-refundable.

B. The quotation of a different premium or deductible or limit of liability for renewal is not a cancellation or refusal to renew for the purposes of this provision.

C. **You** shall have no right to purchase the **Extended Reporting Period**, unless **you** have satisfied all conditions of the coverage form and all premiums and Deductibles outstanding have been paid.

D. **Your** right to purchase the **Extended Reporting Period** shall terminate unless written notice together with full payment of the premium for the **Extended Reporting Period** is given to **us** no later than 60 days following the effective date of cancellation or nonrenewal.

E. The fact that the period of time to report **Claims** is extended by virtue of the **Extended Reporting Period** shall not increase or reinstate the Limit of Liability stated in the Declarations, shall not extend the **Policy Period** or change the scope of coverage provided.

## VI. COVERAGE TERRITORY

The insurance afforded by this coverage form applies worldwide, provided that the **Claim** is made and any legal action is pursued within the United States of America, its territories, possessions or commonwealths, or Canada.

## VII. LIMIT OF LIABILITY AND DEDUCTIBLE

A. **We** will pay all **Damages** and **Claim Expenses** resulting from each **Claim** in excess of the Deductible the Declarations, subject to Sections VII B. through VII G.

B. The maximum **we** will pay for each **Claim** is the Each Claim Limit of Liability stated in the Declarations, subject to the Annual Aggregate Limit of Liability the Declarations.

C. The maximum **we** will pay for all **Claims** under this Coverage Part is the Annual Aggregate Limit of Liability stated in the Declarations, regardless of the number of **Claims**.

D. **Claim Expenses** shall be part of and not in addition to the Limit of Liability and payments of **Claim Expenses** and **Damages** shall reduce the Limit of Liability.

E. If the applicable Limit of Liability is exhausted by:

(1) payment of **Damages**;

(2) payment of **Claim Expenses**, or

(3) any combination of the above,

all of **our** obligations under the this Coverage Part with respect to any **Claim**, including the duty to defend, shall terminate immediately.

F. Deductible

(1) The Deductible stated in the Declarations shall be paid by **you**, shall apply to each **Claim** and shall include **Damages** and **Claim Expenses**.

(2) **We** may from time to time advance payments for **Damages** and **Claim Expenses** within the Deductible. Any amounts within the Deductible shall, upon written demand by **us**, be paid by **you** within 30 days.

**Exhibit 1 - 000155**

G. Multiple Insureds, **Claims** and Claimants

(1) Two or more **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be treated as a single **Claim** and shall be considered first made at the earlier of the following times:

(a) The time at which the earliest **Claim** involving the same **Wrongful Act** or **Related Wrongful Act** is first made, or

(b) The time at which the **Claim** involving the same **Wrongful Act** or **Related Wrongful Act** is deemed to have been first made pursuant to Section IV.

(2) The inclusion of more than one **Insured** in the making of a single **Claim**, the bringing of more than one **Claim** regarding the same **Wrongful Act** or **Related Wrongful Acts** or the making of a **Claim** by more than one person or organization shall not increase the Limit of Liability.

The Limit of Liability for this coverage form applies separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Liability.

## VIII.DUTIES IN THE EVENT OF CLAIM

As a condition precedent to any coverage provided by this insurance and any obligations of **ours** under this coverage form, the **Insured** must comply with each of the following duties in the Event of a **Claim**.

A. Notice of **Claim**

(1) The **Insured** shall provide **us** with written notice of any **Claim** as soon as practicable, but in no event later than 60 days after the end of the **Policy Period** or the **Extended Reporting Period**, if purchased.

(2) The **Insured** must include with any notice of **Claim** a description of the **Claim**, the nature of the alleged **Wrongful Act**, a summary of the facts upon which the **Claim** is based, the nature of the alleged damage, the names of the claimants, the names of the **Insureds** against whom the **Claim** has been made, the manner in which the **Insured** first became aware of the **Claim** and any documents received directly by the **Insured** or by the **Insured's** representatives in connection with the making and handling of the **Claim**, such as any letters, demands, or summonses.

B. Assistance and Cooperation of the Insured

(1) The **Insured** shall fully assist and cooperate with **us** in the investigation, settlement and defense of all **Claims** and upon our request shall authorize the release of records and other information, secure and give evidence, attend hearings and trials and obtain the location of and cooperation of witnesses.

(2) The **Insured** shall not, except at the **Insured's** own cost, voluntarily make any payment, assume any obligation, incur any expenses, or admit any liability in connection with any **Claim**, incur any **Claim Expenses**, or settle any **Claim** without **our** written consent. The **Insured** further agrees not to take any action which may increase **our** exposure under this coverage form.

C. Subrogation

(1) In the event of any payment under this coverage form, **we** shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver all instruments and papers required and do whatever else is necessary to secure and preserve such rights and to enable **us** to effectively bring suit in our name. The **Insured** shall do nothing to prejudice such rights and shall provide all assistance and cooperation which **we** may reasonably require.

(2) **We** shall not exercise any such right against any persons, firms or corporations included in the definition of **Insured**. Notwithstanding the foregoing, **we** reserve the right to exercise any rights of subrogation against an **Insured** with respect to any **Claim** brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of such **Insured**.

D. False or Fraudulent Claims

If any **Insured** commits any false or fraudulent act in connection with the submission of a **Claim** under this coverage form, this insurance shall be rendered null and void as to that **Insured** from the date such fraudulent **Claim** is received by **us**.

**Exhibit 1 - 000156**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

## IX. CONDITIONS

A. Application

In granting coverage under this coverage form, **we** have relied on the representations in the **Application**. All such representations are the basis of coverage under this insurance.

By acceptance of this Policy, the **Insured** agrees that with respect to the statements in the **Application**:

(1) that the statements in the **Application** are the true and correct representations of the **Insured**, each shall be deemed material to the acceptance of the risk or the hazard assumed by **us** under this insurance, and this coverage form is issued in reliance upon the truth and accuracy of such representations;

(2) that in the event the **Application** contains misrepresentations or fails to state facts which materially affect either the acceptance of the risk or the hazard assumed by **us** under this coverage form, this insurance in its entirety shall be void and of no effect whatsoever, and

(3) that this coverage form shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual insurance contracts with each **Insured**.

B. Other Insurance

This insurance shall apply in excess of the amount of the Deductible and any other valid and collectible insurance available to the **Insured**, whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance specifically applies as excess insurance over the Limit of Liability provided herein.

C. Changes in Exposure

(1) If after the Inception Date of this Policy:

(a) **you** merge into or consolidate with another organization such that the other organization is the surviving organization;

(b) another organization or person or group of organizations and/or persons acting in concert acquires all or substantially all of **your** assets;

(c) another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by such other organization or person or group of organizations or persons of more than 50% of the outstanding securities

representing the present right to vote for the election of **your** directors; or

(d) **you** experience a cumulative change of 50% or more of the persons occupying positions on **your** Board of Directors,

then coverage under this coverage form shall continue to apply to the **Insured**, but only with respect to any **Claims** first made during the **Policy Period** or the **Extended Reporting Period**, if purchased, for **Wrongful Acts** committed or allegedly committed prior to the effective date of such merger, consolidation, acquisition or change in positions and only if the following conditions are met:

(i) the **Insured** provides written notice of such event or transaction to **us** within 30 days of the effective date of such event or transaction;

(ii) the **Insured** provides **us** with such information in connection therewith as **we** may deem necessary; and

(iii) the **Insured** accepts any special terms, conditions, or exclusions or pays additional premium charge as may be required.

(2) If after the Inception Date of this Policy, the **Insured** merges or consolidates with another entity such that the **Insured** is the surviving entity, acquires another entity or substantially all of the assets of another entity or creates or acquires a **Subsidiary** as defined in Section II. I., no coverage shall be afforded under this coverage form for any **Claim** involving the assets acquired, the entity which is merged or consolidated with or acquired, the **Subsidiary**, or any of the assets, liabilities, directors, officers or employees of such entity or such **Subsidiary** unless:

(a) the **Insured** provides written notice of such merger, consolidation, creation or acquisition to **us** within 30 days after the effective date of such merger, consolidation, creation or acquisition;

(b) the **Insured** provides **us** with such information in connection therewith as **we** may deem necessary;

(c) the **Insured** accepts any special terms, conditions, or exclusions or pays additional premium charge as may be required; and

**Exhibit 1 - 000157**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

(d) **we**, at **our** sole discretion, agree to provide such coverage.

(3) In the event of sale or dissolution of any **Subsidiary** of **yours** after the Inception Date of this Policy, the Coverage Part shall continue to apply to such **Subsidiary** and to the partners, executive officers, directors, stockholders and employees of such **Subsidiary**, but only with respect to any **Claim** first made during the **Policy Period** or the **Extended Reporting Period**, if purchased, for **Wrongful Acts** committed or allegedly committed prior to the effective date of sale or dissolution.

D. Action Against **Us**

No action shall lie against **us** unless, as a condition precedent thereto, the **Insured** has fully complied with all the terms of this insurance and both the **Insured's** liability and the amount of the **Insured's** obligation to pay have been fully and finally determined either by judgment against the **Insured** or by written agreement between the **Insured**, the claimant and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this coverage form to the extent of the insurance afforded by this coverage form. Nothing contained in this coverage form shall give any person or organization any right to join **us** as a party to any **Claim**. The **Insured** or any of its legal representatives shall not implead **us** in any **Claim**.

E. Bankruptcy or Insolvency

Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve **us** of any of our obligations under this Coverage Part.

F. Authorization

By acceptance of this Policy, the **Insureds** agree that **you** shall act on behalf of all **Insureds** with respect to the purchase and negotiation of this Policy, the giving and receiving of all notices as provided herein, the cancellation of this Policy, the payment of premiums and Deductibles, the receiving of any return premiums that may become due and the purchase of the **Extended Reporting Period.**

G. When We Do Not Renew

If **we** decide not to renew this coverage, **we** will mail or deliver to the first **Named Insured** shown in

the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## X - NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)

A. This policy does not apply:

(1) To any **damages:**

(a) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) Resulting from **the hazardous properties** of **nuclear material** and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(2) To any **damages** resulting from the **hazardous properties** of **nuclear material,** if:

(a) The **nuclear material** (i) is at any **nuclear facility** owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom;

(b) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) The **damages** arise out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any **nuclear facility.**

2. As used in this exclusion:

**Hazardous properties** include radioactive, toxic or explosive properties;

**Exhibit 1 - 000158**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

**Nuclear material** means **source material, special nuclear material** or **by-product material;**

**Source material, special nuclear material,** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

**Waste** means any waste material (1) containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (2) resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility. Nuclear facility** means:

(a) Any **nuclear reactor;**

(b) Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing **spent fuel,** or (iii) handling, processing or packaging **waste;**

(c) Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste;**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Damages** include all forms of radioactive contamination of property.

**Exhibit 1 - 000159**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

1. (Section) **IX. CONDITIONS**

   The following Condition is added:

   **Your Right To Claim And Occurrence Information**

   a. Subject to paragraph **e.** below, we will provide the first Named Insured shown in the Declarations, quarterly or at the same time as any notice of cancellation or nonrenewal, the following claim and "occurrence" information relating to claim-made Coverage parts we have issued to you within the latest three years:

      (1) Information concerning closed claims limited to the date and descriptions of "occurrence" and total amount of payments, if any;

      (2) Information concerning open claims limited to the date and description of "occurrence," total amount of payments and total reserves, if any; and

      (3) Information concerning "occurrences" not included in subparagraphs **(1)** and **(2)** above limited to the date and description of "occurrence" and total reserves, if any.

   b. Subject to paragraph **e.** below, we will provide the first Named Insured shown in the Declarations, within twenty (20) days after receipt of written request by the Named Insured, detailed claim and "occurrence" information in addition to that provided under paragraph **a.** above and including specific reserve amounts.

   c. Amounts reserved are based on our judgment.  They are subject to change and should not be regarded as ultimate settlement values.

   d. We compile claim and "occurrence" information for our own business purpose and exercise reasonable care in doing so. In providing this information to the first named Insured we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.  Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

   e. We will not provide the information included in paragraphs **a**. and **b.** above, if this policy has been canceled for nonpayment of premium, material misrepresentations or fraud on the part of the insured.

2. (Section) **V. EXTENDED REPORTING PERIODS**

   a. The first paragraph is replaced by the following:

      Subject to provisions A. through E. below, if this policy is cancelled or non-renewed, **you** shall have the right to purchase an extended period to report **Claims** under this coverage form for any **Claim** first made during the period of time set forth in the Supplemental Extended Reporting Period Endorsement, and following the effective date of such cancellation or nonrenewal and reported in writing during such period or within 60 days thereafter, but only with respect to any **Wrongful Act** which takes place prior to the effective date of such cancellation or nonrenewal

**Form SS 09 09 06 01**

© 2001, The Hartford
(Includes copyrighted material of Insurance Services Office
with its permission.  Copyright, Insurance Services Office, 1994)

Exhibit 1 – 000160

**b.** Paragraph **E.** is replaced by the following:

If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

The supplemental aggregate limits of insurance will be equal to the aggregate limit shown in the Declarations in effect at the end of the policy period.

Paragraph **B** of **LIMIT OF LIABILITY AND DECUTIBLE** (Section VII) will be amended accordingly.

The Each Claim Limit and Deductible Limit - Each Claim will then continue to apply.

**3.** (Section) **VIII. DUTIES IN THE EVENT OF CLAIM**

The following is added:

**1.** Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT PRACTICES - EXCLUSION - PRIOR ACTS

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE FORM**

Section **I INSURING AGREEMENT** is changed to add the following paragraph:

**I.   INSURING AGREEMENT**

    **F.**  This insurance applies only if the **claim** is for a **wrongful act** that did not occur before the Retroactive Date set forth in the Declarations, or after the end of the policy period.

       A **wrongful act** occurs at the moment such **wrongful act** first takes place.

© 1999, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES - CANCELLATION

This endorsement modifies insurance provided under the following:

**COMMON POLICY CONDITIONS**

Paragraphs **1.**, **2.** and **5.** of the CANCELLATION Common Policy Condition are replaced by the following:

**1.**  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

**2.**  We or our authorized agent may cancel this policy by mailing or delivering to the first Named Insured, with postage fully prepaid, written notice of cancellation at least:

    **a.**  10 days before the effective date of cancellation if we cancel for  nonpayment of premium;

        or

    **b.**  30 days before the effective date of cancellation if we cancel for any other reason.

**5.**  If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due.  The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**Form SS 10 02 03 97**    Printed in U.S.A.  (NS)

**Exhibit 1 – 000163**

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON

This endorsement modifies insurance provided under the policy to which it is attached.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

Copyright, Hartford Fire Insurance Company, 1992



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# STRETCH PLUS FOR BUSINESS SERVICES

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A.** The following changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

**1. Accounts Receivable**

The following Additional Coverage is added:

We will pay up to $100,000 as a Limit of Insurance to apply at each described premises to cover direct physical loss of or damage to your records of accounts receivable. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Accounts Receivable, Form SS 04 39, with the exception of the Limit of Insurance provision contained in that form. Accounts Receivable, Form SS 04 39 is made a part of this policy whether or not Accounts Receivable coverage is indicated in the Declarations.

**2. Back Up of Sewer or Drain Water Damage.**

The following Additional Coverage is added:

We will pay for loss or damage to Covered Property solely caused by water that backs up from a sewer or drain.

This coverage is included within the Covered Property Limits of Insurance.

**THIS IS NOT FLOOD INSURANCE**

We will not pay for water or other materials that back up from any sewer or drain when it is caused by any flood.  This applies regardless of the proximity to the flood.  Flood means the overflow

of surface water, streams or other bodies of water, or their spray, all whether driven by wind or not.

**3. Brands and Labels**

The following Additional Coverage is added:

In the event of covered loss or damage to merchandise that is branded or labeled, we will take all or part of the damaged property at an agreed or appraised value and we will pay for:

**a.** Expenses you incur to:

**(1)** Stamp salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(2)** Remove the brands or labels, if doing so will not physically damage the merchandise.  You must relabel the merchandise and its containers to comply with the law.

**b.** Any reduction in the salvage value of the damaged merchandise as the result of the removal of the brand or label.

This Additional Coverage is included within the Business Personal Property Limit of Insurance.

**4. Claim Expenses**

The following Additional Coverage is added:

In the event of covered loss or damage we will pay up to $5,000 as an additional Limit of Insurance to cover reasonable expenses incurred by you at our specific request to assist us in:

**a.** The investigation of a claim or suit; or

**b.** The determination of the amount of loss, such as taking inventory, or auditing business records.

© 2001, The Hartford

**Exhibit 1 – 000165**

c. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

## 5. Computers and Media

The following Additional Coverage is added:

We will pay up to $50,000 as a Limit of Insurance to apply anywhere in the Coverage Territory to cover direct physical loss of or damage to your computer systems. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Computers and Media, Form SS 04 41, with the exception of the Limit of Insurance provision contained in that form. Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

## 6. Consequential Loss to Stock

The following Additional Coverage is added:

If pairs or sets of stock are damaged by a Covered Cause of Loss, we will pay any reduction in value of the undamaged parts of such damaged pairs or sets.

As used in this Additional Coverage, the term stock means merchandise held in storage or for sale, raw materials, and goods in-process or finished.

This coverage is included within the Business Personal Property Limit of Insurance.

## 7. Debris Removal

The following Additional Coverage is added:

In Limits of Insurance, **C.4.b.**, the additional limit of insurance for the Debris Removal Additional Coverage is increased to $25,000. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

## 8. Employee Dishonesty (including ERISA)

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to cover loss from employee dishonesty. This includes ERISA coverage. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Employee Dishonesty Coverage, Form SS 04 42, with the exception of the Limit of Insurance provision contained in that form. Employee Dishonesty Coverage, Form SS 04 42 is made a part of this policy whether or not Employee Dishonesty Coverage is indicated in the Declarations.

## 9. Fine Arts

The following Additional Coverage is added:

We will pay up to $50,000 as an additional Limit of Insurance at each described premises to extend the insurance that applies to Business Personal Property to apply to Fine Arts that are:

a. Your property; or

b. The property of others that is in your care, custody or control.

As used in this Additional Coverage, **Fine Arts** means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, and similar property, of rarity, historical value or artistic merit.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

The value of Fine Arts will be the market value at the time of loss or damage.

## 10. Forgery

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to cover loss from forgery or alteration. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Forgery Coverage. Form SS 04 86, with the exception of the Limit of Insurance provision contained in that form. Forgery Coverage, Form SS 04 86 is made a part of this policy, whether or not Forgery Coverage is indicated in the Declarations.

## 11. Ordinance or Law

The following Additional Coverage is added:

If a covered Cause of Loss occurs to covered Building property, we will pay the following at each described premises that are caused by enforcement of any ordinance or law:

a. For loss to the undamaged portion of the Building, within the Building Limit of Insurance;

b. Up to $25,000 as a Limit of Insurance to cover demolition costs; and

**Exhibit 1 - 000166**

**c.** Up to $25,000 as a Limit of Insurance to cover increased costs.

This additional coverage is subject to the provisions of Ordinance or Law, Form SS 04 15, which is attached to this policy.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**12. Off-Premises Utility Services - Direct Damage**

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to apply at each described premises to cover direct physical loss or damage to Covered Property caused by the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Off-Premises Utility Services - Direct Damage, Form SS 40 18, with the exception of the Utility Services Limit of Insurance contained in that form. Off-Premises Utility Services – Direct Damage, Form SS 40 18 is made a part of this policy, whether or not Off-Premises Utility Services – Direct Damage coverage is indicated in the Declarations.

**13. Outdoor Signs**

The following Additional Coverage is added and supercedes any other coverage for signs in this policy:

We will pay up to full value of outdoor signs at each described premises to cover direct physical loss or damage to outdoor signs.

This Additional Coverage is subject to the provisions of Outdoor Signs, Form SS 04 44, which is attached to this policy.

This Additional Coverage is in addition to any recoverable Limits of Insurance applicable to Building or Business Personal Property.

**14. Personal Effects**

The following Additional Coverage is added:

We will pay up to $50,000 as an additional Limit of Insurance to apply at each described premises to extend coverage that applies to Business Personal Property to cover personal effects owned by you, your officers, your partners, or your employees. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**15. Personal Property of Others**

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance at each described premises to apply to personal property of others that is in your care, custody or control. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Personal Property of Others, Form SS 04 45, with the exception of the statement concerning Limit of Insurance applicable to Personal Property of Others shown in the Declarations, contained in that form. Personal Property of Others, Form SS 04 45 is made a part of this policy whether or not Personal Property of Others coverage is indicated in the Declarations.

**16. Property at Other Premises**

The following Additional Coverage is added:

We will pay up to $50,000 to extend Business Personal Property and Valuable Papers and Records to apply at any premises not described in the Declarations.

This includes property that you have sold under an installation agreement and your responsibility continues until the property is accepted by the customer.

This Extension does not apply to:

**a.** Property in the care, custody or control of your salespersons; or

**b.** Property at any fair or exhibition.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**17. Salespersons' Samples**

The following Additional Coverage is added:

We will pay up to $5,000 as an additional Limit of Insurance to extend Business Personal Property to cover:

**a.** Samples of your stock in trade (including containers); and

**b.** Similar property of others;

but only while such property is in: **(1)** your custody while acting as a sales representative or **(2)** in the custody of your sales representatives or agents. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

Form SS 40 05 09 01

**Exhibit 1 - 000167**
Page 3 of 5

### 18. Temperature Change

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to apply at each described premises to cover direct physical loss of or damage to perishable stock caused by a change of temperature or contamination by a refrigerant. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Temperature Change, Form SS 04 46, with the exception of the Limit of Insurance provision contained in that form. Temperature Change, Form SS 04 46 is made a part of this policy whether or not Temperature Change coverage is indicated in the Declarations.

This Temperature Change coverage is for direct damage only and does not apply to any loss due to interruption of business.

### 19. Transit Coverage

This Additional Coverage is added only if your policy includes the Special Property Coverage Form.

We will pay up to $25,000 as a Limit of Insurance to apply to direct physical loss of or damage to property while in transit at your risk. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Transit Coverage, Form SS 04 30, with the exception of the Limit of Insurance provision contained in that form. Transit Coverage, Form SS 04 30 is made a part of this policy whether or not Transit Coverage is indicated in the Declarations.

### 20. Valuable Papers and Records

The following Additional Coverage is added:

We will pay up to $100,000 as a Limit of Insurance to apply at each described premises to cover direct physical loss of or damage to your valuable papers and records. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Valuable Papers and Records Coverage, Form SS 04 47, with the exception of the Limit of Insurance provision contained in that form. Valuable Papers and Records Coverage, Form SS 04 47 is made a part of this policy whether or not Valuable Papers coverage is indicated in the Declarations.

### 21. Valuation Changes

The following are added to the Loss Payment Property Loss Condition **E.5.d.**:

#### a. Commodity Stock

We will determine the value of merchandise and raw materials that are bought and sold at an established market exchange. We will determine the value at:

**(1)** The posted market price as of the time and place of loss;

**(2)** Less discounts and expenses you otherwise would have had.

#### b. Manufactured Goods

We will determine the value of goods that you have manufactured at the selling price less discounts and expenses you otherwise would have had.

#### c. Mercantile Stock - Sold

We will determine the value of goods you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

### 22. Underground Water Seepage

**a.** We will pay up to $10,000 at each described premises for loss or damage caused by or resulting from water under the ground surface pressing on, or flowing or seeping through;

**(1)** Foundations, walls, floors or paved surfaces;

**(2)** Basements, whether paved or not; or

**(3)** Doors, windows or other openings.

**b.** This Cause of Loss does not apply to the Property at Other Premises Extension.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**B.** The following changes apply to the Standard Property Coverage Form, Coverage Extensions, **A.5.**, or to the Special Property Coverage Form, Coverage Extensions, **A.6.**:

### 1. Fire Department Service Charge

In the Fire Department Service Charge Additional coverage **A.5.d.**, the most we will pay is increased to $25,000.

**Exhibit 1 - 000168**

**2. Newly Acquired or Constructed Property**

The following changes are made to Newly Acquired or Constructed Property:

**a. Building**

The most we will pay in subparagraph **(1)** is increased to $1,000,000 at each premises.

**b. Business Personal Property**

The most we will pay in subparagraph **(2)** is increased to $500,000 at each premises.

**3. Outdoor Property**

In the Outdoor Property Coverage Extension, the most we will pay is increased to $25,000, but not more than $1,000 for any one tree, shrub or plant.

**4. Property Off Premises**

The following changes are made to subparagraph **c.(2)** of Property Off Premises:

**a.** The most we will pay is increased to $50,000.

**C.** The following changes apply only if Business Income and Extra Expenses are covered under this policy.    These changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

**1. Business Income at Newly Acquired Premises**

The following Additional Coverage is added:

**Business Income at Newly Acquired Premises**

We will pay up to $250,000 as a Limit of Insurance to apply to Business Income and Extra Expense to cover at any location you acquire, other than fairs or exhibitions. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**a.** This policy expires;

**b.** 90 days expire after you acquire or begin to construct the property, or

**c.** You report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

**2. Business Income Extended Time Period**

In the Extended Business Income Additional Coverage, the 30 day time period is increased to 120 days

**3. Business Income Extension for Off-Premises Utility Services**

The following Additional Coverage is added:

We will pay up to $50,000 as a Limit of Insurance to apply at each described premises to cover loss of Business Income and Extra Expense caused by the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Business Income Extension For Off-Premises Utility Services, Form SS 04 19, with the exception of the Limit of Insurance provision contained in that form.    Business Income Extension For Off Premises Utility Services, Form SS 04 19 is made a part of this policy whether or not Business Income Extension For Off-Premises Utility Services coverage is indicated in the Declarations.

**4. Dependent Properties - Anchor Stores and Major Suppliers**

The following Additional Coverage is added:

We will pay up to $50,000 as a Limit of Insurance to apply loss of Business Income and Extra Expense due to direct physical damage at property of others you depend on. This Limit of Insurance is in addition to any other Limit shown in the Declarations for specific Dependent Properties.

This additional coverage is subject to the provisions of Dependent Properties - Anchor Stores/Major Suppliers, Form SS 04 78, with the exception of the Limit of Insurance provision contained in that form.    Anchor Stores/Major Suppliers, Form SS 04 78 is made a part of this policy whether or not Anchor Stores/Major Suppliers coverage is indicated in the Declarations.

There is no requirement for Dependent Properties to be scheduled for the coverages provided by this STRETCH endorsement to apply.

**D.** The following change applies only to the Special Property Coverage Form:

**Precious Metal Theft Payment Changes**

The following changes apply to Limitation **A.4.e.**:

**1.** In subparagraph **(2)**, the most we will pay for loss or damage by theft of bullion, gold, silver, platinum and other precious alloys and metals is increased to $25,000.

**2.** In subparagraph **(3)**, the most we will pay for loss or damage by theft of patterns, dies, molds, and forms, is changed to be included within the Business Personal Property Limit of Insurance.

**Exhibit 1 - 000169**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OFF-PREMISES UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. DIRECT DAMAGE EXTENSION FOR OFF-PREMISES UTILITY SERVICES**

This Coverage Extension applies only to the described premises shown in the Declarations with a Utility Services Limit of Insurance. The Utility Services Limit of Insurance is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the Covered Property.

We will pay for loss of or damage to Covered Property described in the Declarations caused by the interruption of utility service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises:

1. "Water Supply Services";

2. "Communication Supply Services"; or

3. "Power Supply Services".

**B. ADDITIONAL DEFINITIONS**

1. **"Water Supply Services"**, meaning the following types of property supplying water to the describes premises:

   **a.** Pumping stations; and

   **b.** Water mains.

2. **"Communication Supply Services"**, meaning property supplying communication services, including telephone, radio, microwave or television services, including overhead transmission lines to the described premises, such as:

   **a.** Communication transmission lines, including optic fiber transmission lines;

   **b.** Coaxial cables; and

   **c.** Microwave radio relays except satellites.

3. **"Power Supply Services"**, meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the described premises:

   **a.** Utility generating plants;

   **b.** Switching stations;

   **c.** Substations;

   **d.** Transformers; and

   **e.** Transmission Lines.

© 2000, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM
STANDARD PROPERTY COVERAGE FORM
PERSONAL PROPERTY OF OTHERS
COMPUTERS AND MEDIA COVERAGE**

**A. Fungi, Bacteria or Virus Exclusions**

1. Paragraph **A.5.i.(5).** of the Increased Cost of Construction Additional Coverage of the Special Property Coverage Form is replaced by the following:

    **(5)** Under this Additional Coverage, we will not pay for:

    **(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling, or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, bacteria or virus; or

    **(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet or dry rot, bacteria or virus.

2. The following exclusion is added to Paragraph **B.1.** Exclusions of the Standard Property Coverage Form and the Special Property Coverage Form; Paragraph **F.,** Additional Exclusions of Computers and Media, form **SS 04 41**, and to form **SS 04 45**, Personal Property of Others:

    **i.  "Fungi", Wet Rot, Dry Rot, Bacteria And Virus**

    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

    **(1)** Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

    **(2)** But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".

    This exclusion does not apply:

    **(1)** When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or

    **(2)** To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.

    This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**B.** The following **Additional Coverage** is added to Paragraph **A.4.** of the Standard Property Coverage Form or Paragraph **A.5.** of the Special Property Coverage Form, and applies to the optional coverage form **SS 04 41**, Computers and Media and **SS 04 45**, Personal Property of Others and form:

© 2002, The Hartford

1. **Limited Coverage For "Fungi", Wet Rot, Dry Rot, Bacteria and Virus**

   a. The coverage described in **1.b.** below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

      (1) A "specified cause of loss" other than fire or lightning;

      (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises; or

   b. We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:

      (1) Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;

      (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and

      (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot, dry rot, bacteria or virus are present.

   c. Unless a higher Limit of Insurance is shown in the Declarations for Limited "Fungi", Bacteria or Virus Coverage, the coverage described under this Limited Coverage is no more than the Limit of Insurance stated in the Declarations for Building and Business Personal Property, but not greater than $50,000. If form **SS 04 41**, Computers and Media, and form **SS 04 45**, Personal Property of Others, are made a part of this policy, then the Limits of Insurance for Computers and Media, and Personal Property of Others is included within this coverage limit. This coverage is made applicable to separate "scheduled premises" as described in the

   Declarations. Regardless of the number of claims, this limit is the most we will pay per "scheduled premises" for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Equipment Breakdown Accident that occurs to Equipment Breakdown Property which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet or dry rot, bacteria or virus, we will not pay more than the total of $50,000 unless a higher Limit of Insurance is shown in the Declarations even if the "fungi", wet or dry rot, bacteria, or virus continues to be present or active, or recurs, in a later policy period.

   d. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot, dry rot, bacteria or virus, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot, dry rot, bacteria or virus, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot, bacteria or virus causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

   e. The terms of this Limited Coverage do not increase or reduce the coverage for Water Damage provided under provision **B.1.h., Exclusion – Water Damage** of the Standard Property Coverage Form or Additional Coverage provision **A.5.n., Water Damage, Other Liquid, Powder or Molten Material Damage** of the Special Property Coverage Form.

   f. The following applies only if Business Income and/or Extra Expense Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

© 2002, The Hartford

**(1)** If the loss which resulted in "fungi", wet or dry rot, bacteria or virus does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot, bacteria or virus, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days unless another number of days in indicated in the Declarations. The days need not be consecutive.

**(2)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet or dry rot, bacteria or virus, but remediation of "fungi", wet or dry rot, bacteria or virus prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay

**(3)** (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive.

**C. Fungi Definition**

**1.** **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

Exhibit 1 - 000173   Page 3 of 3

© 2002, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under the Standard Property Coverage Form and the Special Property Coverage Form, and to any endorsements modifying those forms, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Exhibit 1 - 000174   Page 1  of 1

© 2003, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

**A.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© 2003, The Hartford

**POLICY NUMBER:** 35 SBA PG4092



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

| SCHEDULE |
|---|
| **Terrorism Premium (Certified Acts):**<br><br>$ |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

**Exhibit 1 - 000176**



# NOTICE TO MICHIGAN POLICYHOLDERS

**This policy or bond is exempt from the filing requirements of section 2236, 2401 and 2601 of the insurance code of 1956, 1956 PA 218, MCL 500.2236.**

© 2003, The Hartford

Exhibit 1 - 000177 of 1



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UMBRELLA LIABILITY PROVISIONS

This supplemental contract modifies insurance provided under the policy to which it is attached.

In this policy the words "you" and "your" refer to the Named Insured first shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy.  "We", "us" and "our" refer to the stock insurance company member of The Hartford Financial Services Group Inc. shown in the Declarations.

Other words and phrases that appear in quotation marks also have special meanings.  Refer to DEFINITIONS (Section VII).

IN RETURN FOR THE PAYMENT OF THE PREMIUM, in reliance upon the statements in the Declarations made a part hereof and subject to all of the terms of this policy, we agree with you as follows:

## SECTION I - COVERAGES

### INSURING AGREEMENTS

**A.  Umbrella Liability Insurance**

We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance", or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies caused by an "occurrence".

**B.  Exclusions**

This policy does not apply to:

**1.  Pollution**

To any obligation:

**a.** To pay for the cost of investigation, defense or settlement of any claim or "suit" against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard; or

**b.** To pay any "damages", judgments, settlements, loss, costs or expenses that may be awarded or incurred:

**i.** By reason of any such claim or "suit" or any such injury or damage; or

**ii.** In complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion, pollution hazard means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal:

**a.** Pollutants;

**b.** Contaminants;

**c.** Irritants; or

**d.** Toxic substances;

Including:

Smoke;

Vapors;

Soot;

Fumes;

Acids;

Alkalis;

Chemicals, and

Waste materials consisting of or containing any of the foregoing.  Waste includes materials to be recycled, reconditioned or reclaimed.

**EXCEPTION**

This exclusion does not apply:

**a.** To "bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

**b.** To injury or damage as to which valid and collectible "underlying insurance" with at least the minimum limits shown in the Schedule of

**Exhibit 1 – 000178** Page 8 of 12

© 2001, The Hartford

**UMBRELLA LIABILITY PROVISIONS**

Underlying Insurance Policies is in force and applicable to the "occurrence". In such event, any coverage afforded by this policy for the "occurrence" will be subject to the pollution exclusions of the "underlying insurance" and to the conditions, limits and other provisions of this policy. In the event that "underlying insurance" is not maintained with limits of liability as set forth in the Extension Schedule of Underlying Insurance Policies, coverage under any of the provisions of this exception does not apply.

Exception **b.** does not apply to:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(1)** That are, or that are contained in any property that is:

    **a.** Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

    **b.** Otherwise in the course of transit by or on behalf of the "insured"; or

    **c.** Being stored, disposed of, treated or processed in or upon any "auto";

**(2)** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

**(3)** After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **(1)** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

**(a)** The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(b)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b** and **6.c.** of the definition of "mobile equipment".

Paragraphs **(2)** and **(3)** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**2. Workers Compensation and Similar Laws**

To any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law, except for liability of others assumed by the "insured" under any contract or agreement.

**3. Contractual Liability**

To liability assumed by the "insured" under any contract or agreement with respect to an "occurrence" taking place before the contract or agreement is executed.

**4. Personal and Advertising Injury**

This policy does not apply to "personal and advertising injury".

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

**5. Underlying Insurance**

To any injury or damage:

    **a.** Covered by "underlying insurance" but for any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

    **b.** For which "damages" would have been payable by "underlying insurance" but for the actual or alleged insolvency or financial impairment of an underlying insurer.

**6. Aircraft**

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any aircraft:

    **a.** Owned by any "insured"; or

    **b.** Chartered or loaned to any "insured".

**Exhibit 1 – 000179**

Form SX 80 02 04 01

**UMBRELLA LIABILITY PROVISIONS**

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any aircraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to aircraft that is:

**a.** Hired, chartered or loaned with a paid crew; but

**b.** Not owned by any "insured".

This exclusion does not apply to "bodily injury" to any of your "employees" arising out of and in the course of their employment by you.

**7. Watercraft**

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any watercraft.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any watercraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to:

**a.** Watercraft you do not own that is:

    **i.** Less than 51 feet long; and

    **ii.** Not being used to carry persons for a charge;

**b.** "Bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

**c.** Any watercraft while ashore on premises owned by, rented to or controlled by you.

**8. War**

To "bodily injury" or "property damage" due to war (whether war be declared or not). War includes invasion, act of foreign power, hostilities, civil war, rebellion, revolution, riot, riot attending a strike, civil commotion, insurrection or military power.

This exclusion applies only to "occurrences" which take place outside the United States of America, its territories or possessions, Puerto Rico or Canada.

**9. Damage to Property**

To "property damage" to property you own.

**10. Damage to Your Product**

To "property damage" to "your product" arising out of it or any part of it.

**11. Damage to Your Work**

To "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**12. Damage to Impaired Property or Property Not Physically Injured**

To "property damage" to "impaired property" or property that has not been physically injured arising out of:

**1.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**2.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**13. Recall of Products, Work or Impaired Property**

To "damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

**b.** "Your work"; or

**c.** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**14. Employer Liability**

With respect to coverage afforded any of your employees to "bodily injury" or "personal and advertising injury":

**a.** To other "employees" arising out of and in the course of their employment;

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of such "bodily injury" to that "employee";

**UMBRELLA LIABILITY PROVISIONS**

c. To you, or any of your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company); or

d. Arising out of the providing or failing to provide professional health care services.

**EXCEPTION**

Subparagraphs **a.** and **b.** of this exclusion apply:

a. Whether the "insured" may be liable as an employer or in any other capacity; and

b. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

Subparagraphs **a.** and **b.** of this exclusion do not apply if "underlying insurance" is maintained providing coverage for such liability with minimum underlying limits, as described in the Schedule of Underlying Insurance Polices.

**15. Property Damage to Employee's Property**

With respect to coverage afforded any of your "employees" to "property damage" to property owned or occupied by or rented or loaned to:

a. That "employee";

b. Any of your other "employees";

c. Any of your partners or members (if you are a partnership or joint venture);

d. Any of your members (if you are a limited liability company);

**16. Uninsured or Underinsured Motorists**

To any claim for:

a. Uninsured or Underinsured Motorists Coverage;

b. Personal injury protection;

c. Property protection; or

d. Any similar no-fault coverage by whatever name called;

unless this policy is endorsed to provide such coverage.

**17. Employment Practices Liability**

For any injury or damage to:

1. A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person, as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

i. Whether the "insured" may be liable as an employer or in any other capacity; and

ii. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

**18. Expected or Intended**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**SECTION II - INVESTIGATION, DEFENSE, SETTLEMENT**

A. With respect to "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies (whether or not the "self-insured retention" applies) and

1. For which no coverage is provided under any "underlying insurance"; or

2. For which the underlying limits of any "underlying insurance" policy have been exhausted solely by payments of "damages" because of "occurrences" during the "policy period",

We:

1. Will have the right and the duty to defend any "suit" against the "insured" seeking "damages" on account thereof, even if such "suit" is groundless, false or fraudulent; but our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under coverages afforded by this policy;

2. May make such investigation and settlement of any claim or "suit" as we deem expedient;

3. Will pay all expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the entire amount of any judgment therein which accrues after the entry of the judgment and before we have paid or tendered or deposited in court that part of the judgment which does not exceed the applicable limit of insurance;

**Exhibit 1 – 000181**

**UMBRELLA LIABILITY PROVISIONS**

4. Will pay all premiums on appeal bonds required in any such "suit", premiums on bonds to release attachments in any such "suit" for an amount not in excess of the applicable limit of insurance, and the cost of bail bonds required of the "insured" because of an accident or traffic law violation arising out of the operation of any vehicle to which this policy applies, but we will have no obligation to apply for or furnish any such bonds;

5. Will pay all reasonable expenses incurred by the "insured" at our request in assisting us in the investigation or defense of any claim or "suit", including actual loss of earnings not to exceed $500 per day per "insured";

and the amounts so incurred, except settlement of claims and "suits", are not subject to the "self-insured retention" and are payable in addition to any applicable limit of insurance.

The "Insured" agrees to reimburse us promptly for amounts paid in settlement of claims or "suits" to the extent that such amounts are within the "self-insured retention".

B. You agree to arrange for the investigation, defense or settlement of any claim or "suit" in any country where we may be prevented by law from carrying out this agreement. We will pay defense expenses incurred with our written consent in connection with any such claim or "suit" in addition to any applicable limit of insurance. We will also promptly reimburse you for our proper share, but subject to the applicable limit of insurance, of any settlement above the "self-insured retention" made with our written consent.

C. If a judgment is rendered in excess of the limits of "underlying insurance" and we are willing to contribute to it but the underlying insurers elect to appeal it:

1. The cost and the duty of obtaining an appeal bond with respect to liability in excess of the limits of "underlying insurance"; and

2. The taxable costs, disbursements and additional interest incidental to such appeal;

shall be borne by the "Insured" and its underlying insurers.

D. We will have the right to associate at our expense with the "insured" or any underlying insurer in the investigation, defense or settlement of any claim or "suit" which in our opinion may require payment hereunder. In no event, however, will we contribute to the cost and expenses incurred by any underlying insurer.

**SECTION III - WHO IS AN INSURED**

A. If you are doing business as:

1. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

3. A limited liability company, you are an "insured". Your members are also "insureds", but with only respect to the conduct of your business.  Your managers are "insureds", but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors.  Your stockholders are also "insureds", but only with respect to their liability as stockholders.

5. A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts:

   a. Within the scope of their employment by you or while performing duties related to the conduct of your business; and

   b. Only if such "employees" are insureds in the "underlying insurance" with limits of liability at least as high as set forth in the Extension Schedule of Underlying Insurance Policies, subject to all the limitations upon coverage and all other policy terms and conditions of such "underlying insurance" and this policy.

2. Any person or organization with whom you agreed, because of a written contract, agreement or permit, to provide insurance, such as is afforded under this supplemental contract, but only with respect to your operations, "your work" or facilities owned or used by you.  This provision does not apply unless the written contract or agreement has been executed, or the permit has been issued prior to the "bodily injury", "property damage", or "personal and advertising injury".

3. Any person or organization having proper temporary custody of your property if you die, but only:

**Exhibit 1 - 000182**

**UMBRELLA LIABILITY PROVISIONS**

    **a.** With respect to liability arising out of the maintenance or use of that property; and

    **b.** Until your legal representative has been appointed.

  **4.** Your legal representative if you die, but only with respect to his or her duties as such. That representative will have all your rights and duties under this policy.

**C.** With respect to any "auto", any "insured" in the "underlying insurance" is an "insured" under this insurance policy, subject to all the limitations of such "underlying insurance".

**D.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

  **1.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

  **2.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**E.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will be deemed to be an "insured" if there is no other similar insurance available to that organization.

However:

  **1.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

  **2.** This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **3.** This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**F.** Each person or organization, not included as an "insured" in Paragraphs **A., B., C., D.,** or **E.,** who is an "insured" in the "underlying insurance" is an "insured" under this insurance subject to all the limitations, other than the limits of the underlying insurer's liability, of such "underlying insurance".

No person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

With respect to any person or organization who is not an "insured" under "underlying insurance", coverage under this policy shall apply only to loss in excess of the amount of the "underlying insurance" or "self-insured retention" applicable to you.

**SECTION IV - LIMITS OF INSURANCE**

**A.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **1.** "Insureds";

  **2.** Claims made or "suits" brought; or

  **3.** Persons or organizations making claims or bringing "suits".

**B.** The Limit of Insurance stated as the General Aggregate Limit is the most we will pay for the sum of "damages", other than "damages":

  **1.** Because of injury or damage included within the "products-completed operations hazard";

  **2.** Because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you; and

  **3.** Because of "bodily injury" and "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any "auto".

**C.** The Limit of Insurance stated as the Products Completed Operations Aggregate Limit is the most we will pay for "damages" because of injury or damage included within the "products-completed operations hazard".

**D.** The Limit of Insurance stated as the Bodily Injury By Disease Aggregate Limit is the most we will pay for "damages" because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you.

**E.** Subject to **B., C.,** or **D.** above, whichever applies, the Each Occurrence Limit is the most we will pay for "damages" because of all "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

**F.** Our obligations under this insurance end when the applicable Limit of Insurance available is used up. If we pay any amounts for "damages" in excess of that Limit of Insurance, you agree to reimburse us for such amounts.

**Exhibit 1 - 000183**

Form SX 80 02 04 01

**G.** The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations. However, if the "policy period" is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

## SECTION V - NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)

**A.** The insurance does not apply:

1. To "bodily injury" or "property damage":

    **a.** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

    **a.** The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    **c.** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the

United States of America, its territories or possessions or Canada, this exclusion (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

**B.** As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**Exhibit 1 - 000184**

**UMBRELLA LIABILITY PROVISIONS**

## SECTION VI - CONDITIONS

### A. Premium

All premiums for this policy shall be computed in accordance with the Premium Section of the Declarations. The premium stated as such in the Declarations is a deposit premium only which shall be credited to the amount of any earned premium. At the close of each "policy period", the earned premium shall be computed for such period, and upon notice thereof to the Named Insured first shown in the Declarations shall become due and payable by such Named Insured. If the total earned premium for the "policy period" is less than the premium previously paid and more than the minimum premium, we shall return to such Named Insured the unearned portion paid by such Named Insured.

The Named insured first shown in the Declarations shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the "policy period" and at such times during the "policy period" as we may direct.

### B. Inspection and Audit

We shall be permitted but not obligated to inspect your property and operations at any time. Neither our right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on your behalf or for your benefit or that of others to determine or warrant that such property or operations are:

1. Safe;

2. Healthful; or

3. In compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the "policy period" and extensions thereof and within three years after the final termination of this policy, insofar as they relate to the subject matter of this policy.

### C. Duties In The Event Of Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim under this policy. This requirement applies only when such "occurrence" is known to any of the following:

   (a) You, if you are an individual;

   (b) A partner, if an insured is a partnership;

   (c) A manager, if a limited liability company; or

   (d) An "executive officer" or insurance manager, if you are a corporation.

To the extent possible, notice should include:

   (a) How, when and where the "occurrence" took place;

   (b) The names and addresses of any injured persons and witnesses; and

   (c) The nature and location of any injury or damage arising out of the "occurrence" or "offense".

2. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us in writing as soon as practicable if the claim is likely to exceed the amount of the "self-insured retention" or "underlying insurance", whichever applies.

3. You and any other involved insured must:

   (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of any "self-insured retention" or "underlying insurance", whichever applies";

   (b) Authorize us to obtain records and other information;

   (c) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (d) Assist us, upon our request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this policy or any "underlying insurance" or "self-insured retention" may apply.

4. No insured will, except at that insured's own cost, make or agree to any settlement for a sum in excess of:

   (a) The total limits of "underlying insurance"; or

   (b) The "self-insured retention" if no "underlying insurance" applies

   without our consent.

5. No insureds will, except at that insured's own cost, make a payment, assume any obligation, or incur any expenses, other than first aid, without our consent.

### D. Assistance and Cooperation of the Insured

The "insured" shall:

1. Cooperate with us and comply with all the terms and conditions of this policy; and

**Exhibit 1 - 000185**
Form SX 80 02 04 01

**UMBRELLA LIABILITY PROVISIONS**

2. Cooperate with any of the underlying insurers as required by the terms of the "underlying insurance" and comply with all the terms and conditions thereof.

The "insured" shall enforce any right of contribution or indemnity against any person or organization who may be liable to the "insured" because of "bodily injury", "property damage" or "personal and advertising injury" with respect to this policy or any "underlying insurance".

**E. Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms and those of the "underlying insurance" have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but, we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the limit of liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**F. Appeals**

In the event the "insured" or the "insured's" underlying insurer elects not to appeal a judgment in excess of the "underlying insurance" or the "self-insured retention", we may elect to make such appeal, at our cost and expense. If we so elect, we shall be liable in addition to the applicable Limit of Insurance, for the:

1. Taxable costs;

2. Disbursements; and

3. Additional interest incidental to such appeal;

but in no event will we be liable for "damages" in excess of the applicable aggregate Limit of Insurance.

**G. Other insurance**

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible. It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1. Primary;

2. Contributing;

3. Excess; or

4. Contingent;

Provided that if such other insurance provides umbrella coverage in excess of underlying insurance or a self-insured retention, this policy shall contribute therewith with respect to "damages".

However, we shall not be liable for a greater proportion of such loss than the amount which would have been payable under this policy bears to the sum of:

1. Said amount; and

2. The amounts which would have been payable under each other umbrella policy applicable to such loss, had each such policy been the only policy so applicable.

**H. Transfer Of Rights Of Recovery Against Others To Us**

a. If the insured has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after a loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. Recoveries shall be applied to reimburse:

   (1) First, any interest (including the Named Insured) that paid any amount in excess of our limit of liability:

   (2) Second, us, along with any other insurers having a quota share interest at the same level;

   (3) Third, such interests (including the Named Insured) of whom this insurance is excess.

   However, a different apportionment may be made to effect settlement of a claim by agreement signed by all interests.

c. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

**I. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. Notice to any agent, or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this policy, or stop us from asserting any rights under the terms of this policy.

The Named Insured first shown in the Declarations is authorized on behalf of all "insureds" to agree with us on changes in the terms of this policy.

**Exhibit 1 - 000186**

**UMBRELLA LIABILITY PROVISIONS**

If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

**J. Separation Of Insureds**

Except with respect to the Limits of Liability, and any rights or duties specifically assigned in this policy to the Named Insured first shown in the declarations, this insurance applies:

**a.** As if each Named Insured were the only Named Insured: and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**K. Maintenance of Underlying Insurance**

Policies affording in total the coverage and limits stated in the Schedule of Underlying Insurance Policies shall be maintained in full effect during the currency of this policy. Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable only to the extent that we would have been liable had you complied herewith.

The Named Insured first shown in the Declarations shall give us written notice as soon as practicable of any of the following:

**1.** Any change in the coverage or in the limits of any "underlying insurance", including but not limited to a change from occurrence coverage to claims made coverage;

**2.** Termination of part or all of one or more of the policies of "underlying insurance";

**3.** Reduction or exhaustion of an aggregate limit of liability of any "underlying insurance".

The "self-insured retention" shall not apply should the "underlying insurance" be exhausted by the payment of claims or "suits" which are also covered by this policy.

**L. Cancellation**

**1.** The Named Insured first shown in the Declarations may cancel this policy by mailing or delivering to us or to any of our authorized agents advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations at the address shown in this policy, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if such Named Insured fails to pay the premium or any installment when due; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** If notice is mailed, proof of mailing will be sufficient proof of notice. Notice will state the effective date of cancellation. The "policy period" will end on that date. Delivery of such notice by the Named Insured first shown in the Declarations or by us will be equivalent to mailing.

**4.** If the Named Insured first shown in the Declarations cancels, the refund may be less than pro rata, but we will retain any minimum premium stated as such in the Declarations. If we cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**M. Nonrenewal**

**1.** If we decide not to renew, we will mail or deliver to the Named Insured first shown in the Declarations, at the address shown in this policy, written notice of nonrenewal at least 30 days before the end of the "policy period".

**2.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** If we offer to renew but such Named Insured does not accept, this policy will not be renewed at the end of the current "policy period".

**N. Workers' Compensation Agreement**

With respect to "bodily injury" to any officer or other employee arising out of and in the course of employment by you, you represent and agree that you have not abrogated and will not abrogate your common-law defenses under any Workers' Compensation Law by rejection of such law or otherwise. If at any time during the "policy period" you abrogate such defenses, the insurance for "bodily injury" to such officer or other employee automatically terminates at the same time.

**O. Bankruptcy or Insolvency**

In the event of the bankruptcy or insolvency of the "insured" or any entity comprising the "insured", we shall not be relieved of any of our obligations under this policy.

**P. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** The statements in the Extension Schedule Of Underlying Insurance Policies are accurate and complete;

**c.** The statements in a. and b. are based upon representations you made to us:

**Exhibit 1 - 000187**
Form SX 80 02 04 01

**UMBRELLA LIABILITY PROVISIONS**

**d.** We have issued this policy in reliance upon your representations; and

**e.** If unintentionally you should fail to disclose all hazards at the inception of this policy, we shall not deny coverage under this policy because of such failure.

## SECTION VII - DEFINITIONS

**Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.**

**"Accident"** includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**"Covered pollution cost or expense"** means any cost or expense arising out of:

1. Any request, demand or order; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(1)** That are, or that are contained in any property that is:

**a.** Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

**b.** Otherwise in the course of transit by or on behalf of the "insured"; or

**c.** Being stored, disposed of, treated or processed in or upon any "auto"; or

**(2)** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

**(3)** After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**"Damages"** include prejudgment interest awarded against the "insured" on that part of the judgment we pay.

"Damages" do not include:

1. Fines;

2. Penalties; or

3. Damages for which insurance is prohibited by the law applicable to the construction of this policy.

Subject to the foregoing, "damages" include damages for any of the following which result at any time from "bodily injury" to which this policy applies:

1. Death;

2. Mental anguish;

3. Shock;

4. Disability; or

5. Care and loss of services or consortium.

**"Insured"** means any person or organization qualifying as an insured in the applicable WHO IS AN INSURED provision of this policy.  The insurance afforded applies separately to each "insured" against whom claim is made or "suit" is brought, except with respect to the limit of our liability under LIMITS OF INSURANCE (SECTION IV).

**"Occurrence"** means:

1. With respect to "bodily injury" or "property damage": an

**UMBRELLA LIABILITY PROVISIONS**

accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury" or "property damage" neither expected nor intended from the standpoint of the "insured" and includes the use of reasonable force to protect persons or property; and

2.  With respect to "personal and advertising injury" an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

**"Policy period"** means the period beginning with the inception date stated as such in the Declarations and ending with the earlier of:

1.  The date of cancellation of this policy; or
2.  The expiration date stated as such in the Declarations.

**"Self-insured retention"** means the amount stated as such in the Declarations which is retained and payable by the "insured" with respect to each "occurrence".

**"Underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which

provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of "underlying insurance" includes:

1.  Any deductible amount;

2.  Any participation of any "insured"; and
3.  Any "self-insured retention" above or beneath any such policy;

Less the amount, if any, by which the aggregate limit of such insurance has been reduced by any payment relating to any act, error, omission, injury, damage or offense for which insurance is provided by this policy, including Medical Payments Coverage as described in the "underlying insurance". The coverages and limits of such policies and any such deductible amount, participation or "self-insured retention" shall be deemed to be applicable regardless of:

1.  Any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or
2.  The actual or alleged insolvency or financial impairment of any underlying insurer or any "insured".

The risk of insolvency or financial impairment of any underlying insurer or any "insured" is borne by you and not by us.

**Exhibit 1 - 000189**
Form SX 80 02 04 01



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CONDITIONS - MICHIGAN

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA SUPPLEMENTAL CONTRACT**

It is agreed that:

1. The **DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT** Condition is replaced by the following:

   **DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

   **"You"** shall notify **us** or **our** agent as soon as practicable of an **occurrence** which may result in a **claim**.  Notice to be given by **"you"** or on **your** behalf or written notice by or on behalf of the injured person or any other claimant, to any agent of **ours** with particulars sufficient to identify **"you"**, shall be considered notice to **us**.

   Notice should include:

   **a.** How, when and where the **occurrence** took place;

   **b.** The names and addresses of any injured persons and witnesses; and

   **c.** The nature and location of any injury or damage arising out of the **occurrence**.

   Notice of an **occurrence** is not notice of a **claim**.

2. The **CANCELLATION** Condition is replaced by the following:

   **CANCELLATION**

   **a.** The Named Insured first shown in the Declarations may cancel this policy by:

   **(1)** Mailing or delivering to **us** advance written notice of cancellation; or

   **(2)** Surrendering the policy to **us** or to any of **our** authorized agents.

   **b.** **We** may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations written notice of cancellation at least:

   **(1)** 10 days before the effective date of cancellation, if **we** cancel for non-payment of any premium when due or because of fraud or material misrepresentation;

   **(2)** 30 days before the effective date of cancellation, if **we** cancel for any other reason and the policy has been in effect for less than 90 days and is not a renewal with **us**; or

   **(3)** 60 days before the effective date of cancellation, if **we** cancel and the policy has been in effect for more than 90 days, but only for one of the following reasons:

   **(a)** A change in the risk which substantially increases any hazard insured against, except to the extent that **we** should have reasonably foreseen the change or contemplated the risk in writing the contract; or

   **(b)** Failure by **"you"** to comply with reasonable safety standards.

   **c.** **We** will mail or deliver **our** notice to the last mailing address known to **us** of the Named Insured first shown in the Declarations.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

   **d.** Notice of cancellation by **us** will state the effective date of cancellation.  The **"policy period"** will end on that date.

   **e.** If this policy is cancelled, **we** will send the Named Insured first shown in the Declarations any premium refund due.  If **we** cancel, the refund will be pro-rata.

   **f.** If the Named Insured cancels, **we** shall compute the return premium at 90% of the pro-rata unearned premium.  **We** shall in any event be entitled to retain any minimum retained premium stated in the Declarations.

**Form SX  02 03 06 97**  Printed in U.S.A.  (NS)

Exhibit 1 - 000190
Page 1 of 2

© 1997, The Hartford

**g.** Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**3.** The **NONRENEWAL** Condition is replaced by the following:

**NON-RENEWAL**

**a.** If **we** decide not to renew this policy, **we** will mail or deliver written notice of non-renewal to the Named Insured first shown in the Declarations at least 45 days before the end of the **"policy period."**

**b.** If notice is mailed, **we** will mail it to the last mailing address known to **us** of the Named Insured first shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**c.** If **we** offer to renew this policy and the Named Insured first shown in the Declarations does not accept **our** offer during the current **"policy period,"** this policy will expire at the end of such **"policy period."**

Form SX 02 03 06 97 Printed in U.S.A. (NS)

Exhibit 1 - 000191

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - CARE, CUSTODY OR CONTROL OF PERSONAL PROPERTY

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to "property damage" to personal property:
1.  Rented to;
2.  Used by; or
3.  In the care, custody or control;
Of any "insured" or as to which any "insured" is for any purpose exercising physical control.

**Form SX 21 04 06 97**   Printed in U.S.A.

**Exhibit 1 - 000192**

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - CARE, CUSTODY OR CONTROL OF REAL PROPERTY

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to "property damage" to real property:
   1.  Owned by;
   2.  Occupied by;
   3.  Rented to; or
   4.  In the care, custody or control;
Of any "insured" or as to which any "insured" is for any purpose exercising physical control.

**Exhibit 1 - 000193**

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - INSPECTION SERVICE(S)

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to liability arising out of:

1.  The making of or failure to make inspections of any premises or operations, by or for any "insured," for the purpose of determining or warranting that such premises or operations are:

    a.  Safe;

    b.  Healthful; or

    c.  In compliance with any laws, rules, regulations, standards or codes; or

2.  The performance of or failure to perform any administrative or regulatory function pertaining thereto.

This exclusion does not apply to liability caused directly by the person or persons conducting such inspection during the course of such inspection.

**Exhibit 1 - 000194**

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**UMBRELLA LIABILITY PROVISIONS**

**A.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Exhibit 1 -Page 195 of 1

© 2003, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - SECURITIES TRANSACTIONS

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to any liability:

1.  Imposed under the common or statutory law of any state or under any applicable federal law, including any rules or regulations adopted under such laws and any amendments thereto, involving the purchase, transfer or sale of any securities; or

2.  Imposed under the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended or the Investment Company Act of 1940, as amended, including any rules or regulations adopted under these laws and any amendments thereto.

**Form SX 21 27 06 97** Printed in U.S.A.

© 1997, The Hartford

Exhibit 1 - 000196



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE RETIREMENT INCOME SECURITY ACT

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to liability imposed on the "insured" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001-1381 (1976) (ERISA) or any changes to it.

**Form SX 21 61 06 97** Printed in U.S.A.

**Exhibit 1 – 000197**

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to any "damages," judgments, settlements, loss, costs or expenses that:

1.  May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2.  Arise out of any request, demand  or order to test for,  monitor,  clean  up,  remove,  encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of any asbestos hazard; or

3.  Arise out of any claim or "suit" for "damages" because of testing for, monitoring, cleaning up, removing,  encapsulating,  containing,  treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**Form SX 21 75 06 97**   Printed in U.S.A.   (NS)

**Exhibit 1 - 000198**

©1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - FINANCIAL SERVICES

This endorsement modifies insurance provided under the following:

SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT

This policy does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others.  For the purpose of this exclusion, financial services include but are not limited to:

1.  Planning, administering, managing or advising on:

    **a.**  any:

    **(1)**  Investment;

    **(2)**  Pension;

    **(3)**  Trust;

    **(4)**  Annuity;

    **(5)**  Savings;

    **(6)**  Checking;

    **(7)**  Individual

    **(8)**  Loan or Mortgage,

    retirement plan, fund, or account; or

    **b.**  the issuance or withdrawal of any bond, debenture, stock or other securities;

    **c.**  the trading of securities, commodities or currencies; or

    **d.**  any acquisitions or mergers;

2.  Acting as a dividend disbursing agent, exchange agent, redemption or subscription agent, warrant or scrip agent, fiscal or paying agent, tax withholding agent, escrow agent, clearing agent, or electronic funds transfer agent;

3.  Lending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities or interbank transfers;

4.  Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors;

5.  Checking or reporting of credit;

6.  Maintaining of financial accounts or records;

7.  Tax planning, tax advising or the preparation of tax returns; or

8.  Selling or issuing travelers checks, letters of credit, certified checks, bank checks or money orders.

SX 23 48 03 00

© 2000, The Hartford

Exhibit 1 - 000199



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FOLLOWING FORM ENDORSEMENT
# AUTOMOBILE LIABILITY

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to liability arising out of the:

1.  Ownership;
2.  Operation;
3.  Maintenance;
4.  Use;
5.  Entrustment to others; or
6.  Loading or unloading;

Of any "auto."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the injury or damage involved the ownership, maintenance, use, entrustment to others, or loading or unloading of any "auto".

## EXCEPTION

This exclusion does not apply if "underlying insurance" is maintained providing coverage for such "auto" with minimum underlying limits as described for Commercial Automobile Liability in the Schedule of Underlying Insurance Policies.

Condition K. - Maintenance of Underlying Insurance applies to this exception.

Form SX 24 01 04 01

**Exhibit 1 - 000200**

© 2001, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FOLLOWING FORM - LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

**LIMITATION OF COVERAGE:**

This policy applies only to "bodily injury", "property damage", or "personal and advertising" arising out of:

1.  The ownership, maintenance or use of the premises designated as covered in the Business Liability section of the "underlying insurance" policy Declarations; or
2.  Any project as designated in the policy Declarations of the "underlying insurance".

This coverage applies only if "underlying insurance" is maintained providing coverage for such liability with minimum underlying limits as described in the Schedule of Underlying Insurance.

Condition **K**. – Maintenance of Underlying Insurance applies.

**Form SX 24 52 03 00**

**Exhibit 1 – 000201** Page 1 of 1

© 2000, The Hartford